ROTHWELL FIGG ERNST & MANBECK, P.C.
Christopher Ott (CA Bar No. 235659)
cott@rothwellfigg.com
607 14th Street, N.W., Suite 800
Washington, DC 20005
(202) 783-6040

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VLAD ZAMFIR,<br><br>Plaintiff,<br><br>v.<br><br>CASPERLABS, LLC,<br><br>Defendant. | Case No. **'21CV474 GPC AHG**<br><br>**COMPLAINT FOR VIOLATION OF SECTION 43(A) OF THE LANHAM ACT, 15 U.S.C. § 1125(a), FOR FALSE DESIGNATION OF ORIGIN**<br><br>**DEMAND FOR A JURY TRIAL** |

Plaintiff Vlad Zamfir ("Mr. Zamfir"), by and through the undersigned counsel, files this Complaint and Demand for Jury Trial against Defendant, CasperLabs, LLC ("CasperLabs" or "Defendant"), and hereby alleges as follows:

## NATURE OF THE ACTION

1. Mr. Zamfir is a prominent researcher in the blockchain community and developed a seminal correct-by-construction ("CBC") proof-of-stake ("PoS") blockchain consensus protocol. Around March 2015, Mr. Zamfir adopted the name "Casper" for his research and development of the PoS protocol. On November 2, 2017, Mr. Zamfir released a first draft version of the CBC Casper PoS protocol, and by December 2018, Mr. Zamfir published the CBC Casper protocol 1.0 specification. Accordingly, Mr. Zamfir is often credited as being the "Face of Casper." In October 2019, CasperLabs released a specification for a PoS blockchain architecture based on Mr. Zamfir's original Casper CBC specification, which it called the "Highway" protocol. This action arises primarily from CasperLabs' recent activities, beginning on or about August 2020, to instead use the name "Casper" to describe its PoS protocol and for filing for federal registration of the CASPER mark. In addition, CasperLabs is about to launch its "CSPR" public token sale on March 23, 2021.

2. This is a civil action for false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and for the substantial and related claim of unfair competition under the common law of California, all arising from the Defendant's improper use of the Casper name (and related terms "Casper network," "Casper protocol," "Casper blockchain," and "CSPR") in connection with the

marketing, advertising, promotion, offering for sale, and/or sale of Defendant's PoS blockchain network.

3. Plaintiff's claims are based on Defendant's use in commerce of the Casper name, despite having no right to do so, causing confusion in the market and damage to Plaintiff.

4. Plaintiff seeks monetary and injunctive relief, and further seeks cancellation of U.S. Trademark Registration No. 6202402 and abandonment of pending U.S. Trademark Application Serial No. 88603814.

## THE PARTIES

5. Plaintiff Vlad Zamfir is an individual, residing at 79 Hemlo Cres, Ottawa, ON K2T1E1. Mr. Zamfir is a citizen of Canada.

6. Mr. Zamfir has been, and continues to be, an innovator and prominent researcher in blockchain technology. He has conducted cutting edge research and developed a novel proof-of-stake consensus protocol, enabling more secure peer-to-peer networks and solving widely-recognized issues with malicious miners. Mr. Zamfir has spent considerable time, effort, and money developing his PoS protocol and sharing his research with the crypto community.

7. Upon information and belief, Defendant CasperLabs is incorporated under the laws of Wyoming, and has a principal place of business at 11440 West Bernardo Court, Suite 300, San Diego, CA 92127.

8. Upon information and belief, Defendant CasperLabs is engaged in the development of blockchain technology and an open-sources proof-of-stake blockchain network.

## JURISDICTION AND VENUE

9. This action arises under the trademark laws of the United States, Title 15 of the United States Code. This court has jurisdiction over this action pursuant to 15

U.S.C. § 1125, 28 U.S.C. §§ 1331 and 1338(a) and (b), and pursuant to the principles of supplemental jurisdiction under 28 U.S.C. § 1367.

10. Venue is proper in this Court under 28 U.S.C. § 1391(b)(1), in that Defendant resides in this district.

11. On information and belief, Defendant CasperLabs is subject to personal jurisdiction in this district by virtue of its presence in this State, having its principal place of business in this judicial district, having conducted business in this State, having availed itself of the rights and benefits of California laws such that it should reasonably anticipate being haled into court in this judicial district, having engaged in systematic and continuous contacts with the State of California, and in particular within this judicial district, and from the receipt of substantial revenue from activities conducted in this state and in this judicial district.

## FACTS

### Blockchain Background

12. In simple terms, a blockchain is a distributed protocol that stores transactional records as a chain of "blocks." Each block contains a cryptographic fingerprint, called a hash, of the previous block, a timestamp, and other data. Once a block is recorded to the chain, it cannot be altered retroactively without leaving evidence of the alteration by breaking the hash chain.

13. Cryptocurrency protocols, like Bitcoin and Ethereum, leverage blockchain technology to secure peer-to-peer networks without relying on any single legal entity to own or administer the network.

14. Certain types of blockchain applications, such as those used for cryptocurrency exchanges, rely on consensus protocols to validate the operation of the applications. Historically, these blockchain-based cryptocurrencies have relied on a "proof of work" ("PoW") consensus mechanism to secure the network. PoW requires that "miners" run computationally intensive cryptographic programs to show

that they are devoting a lot of computational power in order to produce a "winning block," which is basically a block with low enough odds of being mined. A tremendous amount of electrical energy and microchip manufacturing has been devoted to mining in order to secure PoW protocols, because miners earn cryptocurrency in exchange for producing blocks. PoW protocols have been widely criticized for their outsized consumption of computational and electrical energy. Sustainability and workability of this consensus mechanism has been seriously questioned by the industry and general public. Therefore, much of the technical development in the blockchain industry has been devoted to the development of alternative consensus mechanism.

15. This, an alternative to PoW, called "proof-of-stake" ("PoS"), has been under research in the blockchain and cryptocurrency industry for over five years. It promises to eliminate the computational waste inherent to PoW. PoS uses digital resources as opposed to computational resources to create barriers to attacking the blockchain network.

### Mr. Zamfir's Development of the Casper Protocol

16. Mr. Zamfir is a well-known and respected researcher of cryptoeconomics and distributed systems. In particular, Mr. Zamfir is one of the two lead researchers of Casper PoS blockchain protocols. The other lead researcher associated with Casper is Vitalik Buterin, founder of Ethereum.

17. Blockchain technology is new and emergent, and consensus protocol mechanisms for blockchain-based cryptocurrencies cover a novel area of technical research. Therefore, only a few individuals are considered to be competent in this nascent field. Mr. Zamfir is recognized as one of the lead researchers in the blockchain industry. As someone with deep background and expertise in this field, Mr. Zamfir considers it his duty to steward technical research and public education in blockchain technology in a responsible manner.

18. Around 2014, Mr. Zamfir began researching and developing a new PoS blockchain protocol design in conjunction with Vitalik Buterin and the Ethereum Foundation, a non-profit organization dedicated to supporting the Ethereum open-source blockchain platform through development, research, and education.

19. Around March 2015, Mr. Zamfir adopted the name "Casper" for his research and development of a new PoS protocol, which was attempted parodied adaptation of the name of an existing protocol at that time, referred to as GHOST, for PoS with incentive mechanism design for oligopolistic markets.

20. The new PoS protocol design research conducted by Mr. Zamfir and Vitalik made it clear that there was a need to create a formal specification for a consensus protocol, and thus Mr. Zamfir and Vitalik began research into distributed systems in two separate directions. Mr. Zamfir's branch of this research became known as "CBC Casper," which refers to to correct-by-construction ("CBC") software design methodology. The branch of research conducted by Vitalik became known as "Casper the Friendly Finality Gadget" ("FFG"). Mr. Zamfir and Vitalik have been jointly conducting this research since 2015 in connection with the much-anticipated, and much-publicized slated release of the Casper PoS protocol for the Ethereum protocol mainnet. Vitalik's branch of Casper research is now marketed under the name "Ethereum 2.0." Mr. Zamfir's branch, CBC Casper, is currently known and referred to throughout the industry and consuming public as "Casper."

21. Mr. Zamfir has been conducting research and development under the Casper name around the world, and in particularl, in the United States, continuously, since at least as early as March 2015.

22. For example, from 2015 to present day, Mr. Zamfir has used and continues to use the Casper name when communicating and advocating for the adoption of his PoS blockchain research with technical professionals, investors, and

fellow researchers and developers within the Ethereum and blockchain communities around the globe.

23. Mr. Zamfir uses the Casper name exclusively when communicating his work to the wider public via Twitter, Github, and his personal blogs.

24. Mr. Zamfir's Casper name is distinctive to both the consuming public and his tradecraft.

25. Mr. Zamfir's Casper name and his research on proof-of-stake protocols offered thereunder have received significant coverage in various media, including at least the following:

   a. A 2017 Bloomberg piece ("And one man, Vlad Zamfir, has a plan to fix it. This week, Bloomberg's Matthew Leising and Brad Stone speak to Zamfir about his big dreams for Ethereum and how his project (codenamed **Casper**) could pave the way for masses of ordinary internet users to join in the craze.") (emphasis added).
   b. Recognition in a 2018 article in The New Yorker ("Zamfir is the lead developer of one strand of **Casper**, an ongoing software upgrade designed to make Ethereum scale better and work more securely.") (emphasis added).
   c. He was named one of the 100 Most Influential People in Crypto, 2020 Edition, by CryptoWeekly for his work on proof-of-stake.
   d. Blockchain community blogsite, Blockgeeks, has stated "Vlad Zamfir is often credited as being the '**Face of Casper**.'" (emphasis added)

26. As a result of his work, the Casper name has come to signify the high quality and singular nature of Mr. Zamfir's research, development, and design of the blockchain PoS consensus protocol designated by the Casper name. The Casper name has acquired irreplaceable distinction, reputation, and goodwill.

### Mr. Zamfir and CasperLabs

27. Around November or December of 2018, Mr. Zamfir was approached by CasperLabs about collaborating on the research and development of a new blockchain. The proposal centered on the adoption of a version of his CBC Casper PoS protocol, which at that time was implemented as a fork of RChain (a "fork" is a separate derivative software repository with independent administration), which he was made to expect would honour RChain's token holders with a genesis token distributions.

28. As part of this proposed collaboration, Mr. Zamfir understood that he would have two roles at CasperLabs: (1) as lead consensus protocol architect; and (2) to serve on the governance committee and to speak with outside investors and present the protocol. In return for his fulfillment of these roles and duties, CasperLabs promised to financially sponsor much of his blockchain research on Casper.

29. On February 14, 2019, on behalf of himself and his company, Coordination Technology, Ltd. (CoorTech), Mr. Zamfir entered into a Research Agreement with CasperLabs, setting forth specific terms by which he would provide research, analysis, and advice relating to CBC Casper to CasperLabs to integrate into its proposed blockchain. The Research Agreement acknowledges that Mr. Zamfir is "a highly recognized thought leader in the world-wide blockchain community with an expertise in blockchain consensus protocols, sharding and governance," and that he had been and was "presently doing work related to a family of proof-of-stake consensus protocols, known as 'CBC Casper' and Casper compliant composite sharding."

30. CasperLabs was also interested in using Mr. Zamfir's name and image to promote the collaboration, and in connection with CasperLabs' business, products, and services. On the same day, February 14, 2019, on behalf of his company CoorTech, Mr. Zamfir entered into a Licensing Agreement with CasperLabs, Ltd.,

granting CasperLabs limited rights in the use of his name and image. As part of the Licensing Agreement, CasperLabs agreed to provide fundraising services and to source and close donations from third parties, free of charge, to fund Mr. Zamfir's work on CBC Casper.

31. Within just a few months of the start of their working engagement, it became apparent to Mr. Zamfir that CasperLabs was acting in violation of the terms of the contract. CasperLabs acted too much in leveraging his name and image in branding their company and too little to fund the CBC Casper research agenda.

32. Specifically, Mr. Zamfir became concerned that CasperLabs was misappropriating his name and falsely asserting affiliations with him in a manner that was misleading CasperLabs' investors and for the purpose of taking advantage of Mr. Zamfir and his reputation.

33. Already in a strained relationship with CasperLabs, Mr. Zamfir decided to end his relationship with CasperLabs after yet another press release was published without his prior consent, and in light of the complete lack of fundraising actvitiy for technical research for CBC Casper, putting Mr. Zamfir's operation at risk.

34. On September 11, 2019, Mr. Zamfir sent notice to CasperLabs that CoorTech was terminating both the Research Agreement and the License Agreement. He terminated the License Agreement in October 2019. Per CasperLabs' request, Mr. Zamfir agreed to extend the Research Agreement until November 2, 2019 to buy time for a negotiation and clarification of terms. But when that process proved to be unfruitful, Mr. Zamfir did not extend the Research Agreement further.

35. Since terminating the License Agreement in October 2019 and the Research Agreement in November 2019, Mr. Zamfir has not had any research or business relationship with CasperLabs, its affiliated entities, nor has he worked on any of CasperLabs' products or services.

36. While Mr. Zamfir still maintains some beneficial ownership in CasperLabs due to a lack of credible selling opportunities, he has no control of the company or their actions.

37. There has been irreparable harm and damage to the Casper name and to Mr. Zamfir's and the broader blockchain research ecosystem due to CasperLabs' misappropriation and misuse of the Casper name.

## CasperLabs' Misappropriation of the Casper Name

38. Throughout the duration of the collaboration, CasperLabs did not have a name for its PoS protocol. CasperLabs had, on several occasions, asked for Mr. Zamfir's permission to use the name "Casper" for its protocol "mainnet" and token, but Mr. Zamfir refused to give his consent.

39. Mr. Zamfir made clear to CasperLabs that the "Casper" name should not be used to describe any of CasperLabs' planned blockchain releases that were developed as a result of the collaboration, but instead should be used technically to refer only to his PoS consensus protocol research. For example, when Mr. Zamfir objected to calling the token "Casper," CasperLabs used "CLX" as a placeholder for the name of the token (the "CL" for CasperLabs and the "X" for indicating an exchange), with ongoing discussions about a new name.

40. On October 31, 2019, CasperLabs released a protocol specification, which was initially conceptualized and developed during the course of the collaboration and which is an extension of CBC Casper with a module for "liveness." Initially, when Mr. Zamfir was working with CasperLabs, the extension was called

"Highway Protocol." CasperLabs later started calling this product "CasperLabs Highway Protocol," and then "Casper Highway Protocol."

41.  By August 2020, however, in anticipation of its upcoming network launch and coin sale scheduled for March 23, 2021, CasperLabs began referring to its blockchain protocol, and token in general, as "Casper."

42.  For instance, on August 31, 2020, CasperLabs' website announced the network launch and token sale, referring to its offering as "[t]he Casper public network and token sale," and referring to its blockchain network as simply "Casper."

43.  As the date of sale approaches, CasperLabs has only increased its efforts at rebranding its project misappropriating the "Casper" name, either alone or in combination with other terms, such as "Casper network," "Casper protocol," "Casper Highway Protocol," and "Casper blockchain" to advertise and promote its project.

44.  For instance, on its homepage, casperlabs.io, CasperLabs currently claims to "develop[] and maintain[] Casper," and encourages website visitors to "[m]eet Casper" through an introductory video or to "learn more about Casper" on it developer page. In each instance, "Casper" is used in reference to its blockchain product and service offerings.

45.  As part of its strategic, wholesale rebranding in August 2020, CasperLabs also developed a webpage designated to the network itself, using "Casper" logos and the acronym "CSPR" to refer to the token coins which will soon be offered for sale on the cryptocurrency platform. There have been numerous instances of people confusing the upcoming launch with Mr. Zamfir, questioning whether or not he is involved.

46.  In addition to using the Casper name in its marketing and advertising of its blockchain technology without Mr. Zamfir's consent, CasperLabs has gone several steps further and improperly sought to obtain ownership of the trademark with a registration of the mark CASPER in its own name, despite the fact that in the

industry, it is still used almost exclusively to refer to Mr. Zamfir's PoS consensus protocol research.

47. During the summer of 2019, Mr. Zamfir had several discussions with CasperLabs concerning its use and registration of the CASPER mark. He was not willing to compromise on his refusal to allow "Casper" to be used as a name for CasperLabs' blockchain network.

48. In order to secure exclusive protection over the name Casper and to preclude others from using the name, CasperLabs and Mr. Zamfir decided to seek federal trademark registration on Mr. Zamfir's behalf and assign that registration (or registrations) to Mr. Zamfir's company CoorTech. CasperLabs therefore agreed to register the trademarks, and agreed that they would then transfer those trademarks to Mr. Zamfir.

49. On September 4, 2019, CasperLabs, LLC filed U.S. Trademark Application Serial No. 88/979132 in its own name for the trademark CASPER in connection with "Technological consulting in the field of cryptocurrency; Design and development of computer software for decentralized computing using blockchain technology; Providing on-line non-downloadable computer software for use as a cryptocurrency wallet; Cryptocurrency services, namely, providing on-line non-downloadable computer software for use as a cryptocurrency wallet comprising a digital currency or digital token, incorporating cryptographic protocols, used to operate and build applications and blockchains on a decentralized computer platform and as a method of payment for goods and services; Data mining, namely, coordinating efforts of a decentralized data scientist network; Providing online non-downloadable computer software for coordinating the data gathering and analyzing efforts of a decentralized data scientist network and for enabling a decentralized data marketplace" in International Class 042. The trademark was registered as

1 Registration No. 6202402 on November 17, 2020 and bears a date of first use of
2 September 4, 2019 and a date of first use in commerce of August 12, 2020.
3     50.   On September 4, 2019, CasperLabs, LLC filed U.S. Trademark
4 Application Serial No. 88603814 for the mark CASPER in connection with
5 "Downloadable computer software for managing cryptocurrency transactions using
6 blockchain technology; Downloadable computer software platforms for developing,
7 building, and operating distributed applications; Downloadable computer software
8 platforms for blockchains; Downloadable computer software for use as a
9 cryptocurrency wallet" in International Class 009 and "Financial services, namely,
10 providing a decentralized and open source cryptocurrency on a global computer
11 network utilizing blockchain technology; Financial services, namely, providing a
12 decentralized and open source cryptocurrency on a global computer network utilizing
13 blockchain technology for use in staking protocols on blockchains; Enabling a
14 decentralized data marketplace, namely, cryptocurrency exchange services and
15 financial brokerage services for cryptocurrency trading" in International Class 036.
16 This application is an intent-to-use application and was filed on September 4, 2019.
17 This application is still pending.
18     51.   As of the date of this declaration, CasperLabs has not assigned either
19 U.S. Trademark Registration No. 6202402 or U.S. Trademark Application Serial No.
20 88603814 to either Mr. Zamfir or CoorTech, despite their prior agreement. Both the
21 registration and the pending application currently list CasperLabs, LLC as the owner.

## Confusion and Irreparable Harm

23     52.   CasperLabs' use of the Casper name to advertise and market its own
24 blockchain technology products and services, and to promote its upcoming launch of
25 its blockchain network and coin sale scheduled for March 23, 2021, are causing and
26 will continue to cause confusion as to the source of the products and services, leading
27 customers to mistakenly believe CasperLabs' products and services are somehow Mr.

Zamfir's work or are otherwise associated with him or his company CoorTech. Furthermore, this interferes with the use of the Casper name in research and development, because it requires resolving ambiguity and phrasing communications in order to avoid unintentionally promoting CasperLabs, and thereby making it harder for Mr. Zamfir to market the genuine products of his research.

53. Mr. Zamfir's name has already been associated with CasperLabs in a way that has been harmful to his reputation. Mr. Zamfir is regularly contacted by people who are confused about his participation in the CasperLabs token sale and mainnet launch. Furthermore, people falsely assume that Mr. Zamfir's ongoing Casper research is for CasperLabs instead of being independent or for Ethereum. Finally, they are given a false impression that Mr. Zamfir's research is being financed by some relationship with CasperLabs and that the fundamental research for the ecosystem that CBC Casper represents is funded, making it harder for him to secure sponsorship.

54. Even the CasperLabs team recognized that using the Casper name to refer to the CasperLabs blockchain technology would create confusion with Mr. Zamfir's prior work. For instance, in a February 18, 2019 Telegram message discussing use of the Casper name, a member of the CasperLabs team noted that using "Casper for the name of the protocol seems like it will lead to confusion or at least be hard to explain in the long run." Another team member responded "*I agree, the name carries so much significance today. Vlad is the POS architect after all*." (emphasis added).

55. Barring intervention, CasperLabs' use of the Casper name will continue to cause damage and immediate irreparable harm to Mr. Zamfir and to his reputation and goodwill within the crypto community and with the consuming public at large. This goodwill, accumulated through years of research and development advancing

1  blockchain technology for the benefit of the cryptocurrency market, is critical for his
2  work.
3      56.   Investors, fellow researchers and developers within the Ethereum and
4  global blockchain communities recognize the Casper name and associate it with the
5  high quality design of Mr. Zamfir's CBC PoS protocol.
6      57.   Mr. Zamfir has no control over the products released by CasperLabs. He
7  has no confidence that the products of CasperLabs will meet his technical standards
8  in PoS economics or in distributed system performance and correct-by-construction
9  design.
10     58.   If CasperLabs launches its blockchain network and cryptocurrency using
11 the Casper name for a token and blockchain that Mr. Zamfir does not affiliate with
12 nor can endorse, buyers and investors will believe these products to be associated
13 with him and his work, and will continue to confound the use of the name Casper in
14 PoS blockchain research.
15     59.   The majority of Casper research remains underpublicized because of Mr.
16 Zamfir's commitment to hold it back until he is convinced that it won't fall under the
17 scope of blockchain immutability. When the products of Casper research are set to
18 displace blockchain immutability, they will be scheduled for a release under faithful
19 use of the Casper name. If CasperLabs does not immediately cease in their improper
20 use of the Casper name, their improper association with Mr. Zamfir's Casper release
21 will put it at risk.

## COUNT 1

**(False Designation of Origin under 15 U.S.C. § 1125(a))**

22
23
24     60.   Plaintiff repeats and re-alleges the allegations of Paragraphs 1-59 above,
25 as if fully set forth herein.
26     61.   Defendant's use in commerce of the Casper name as alleged herein is
27 likely to deceive consumers as to the origin, source, sponsorship, or affiliation of
28

Defendant's PoS blockchain network, and is likely to cause consumers to believe, contrary to fact, that Defendant's proof-of-stake blockchain network is sold, authorized, endorsed, or sponsored by Plaintiff, or that Defendant is in some way affiliated with or sponsored by Plaintiff.

62. Defendant's acts set forth above constitute false designation of origin in violation of Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

63. Defendant's conduct as alleged herein is willful and is intended to cause confusion, mistake, or deception, as to the affiliation, connection, or association of Defendant with Plaintiff.

64. Defendant's conduct as alleged herein is causing immediate and irreparable harm and injury to Plaintiff, and to Plaintiff's goodwill and reputation, and will continue to both damage Plaintiff and confuse the public unless enjoined by this court.  There is no adequate remedy at law for the harm caused by the wrongful acts alleged herein.

65. Plaintiff is entitled to, among other relief, injunctive relief and an award of actual damages, Defendant's profits, enhanced damages and profits, reasonable

attorneys' fees, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117.

66. Defendant's acts set forth have been deliberate, willful and wanton, making this an exceptional case within the meaning of 15 U.S.C. § 1117.

67. Wherefore, Plaintiff prays for the relief requested below.

## COUNT 2

### (Unfair Competition under California Common Law)

68. Plaintiffs repeat and re-allege the allegations of Paragraphs 1-67 above, as if fully set forth herein.

69. Defendant's unlawful use of the CASPER trademark described above constitutes unfair competition resulting in damage to Plaintiffs in violation of the Common Law of the State of California.

70. Plaintiffs have been, are now and will be irreparably harmed by Defendant's aforementioned wrongful acts, unless enjoined by this Court.

71. Wherefore, Plaintiff prays for the relief requested below.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court enter judgment as follows:

A. That Defendant's use of CASPER has violated the Lanham Act, 15 U.S.C. § 1125(a) through its false designation of origin.

B. That Defendant has engaged in unfair competition under the Common Law of the State of California.

C. A Declaration that Defendant is not the owner of the CASPER trademark and any rights in the CASPER mark by Defendants are *void ab initio*.

D. Granting an injunction temporarily, preliminarily, and permanently enjoining the Defendant, its employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries, and assigns, and all of those in active concert and

participation with any of the foregoing persons and entities who receive actual notice of the Court's order by personal service or otherwise from:

    a. engaging in any activity constituting unfair competition with Plaintiff;

    b. making or displaying any statement, representation, or depiction that is likely to lead the public or the trade to believe that Defendant's proof-of-stake blockchain network is in any manner approved, endorsed, licensed, sponsored, authorized, or franchised by or associated, affiliated, or otherwise connected with Plaintiff;

    c. using or authorizing any third party to use in connection with any business, goods, or services any false description, false representation, or false designation of origin, or any marks, names, words, symbols, devices, or trade dress that falsely associate such business, goods and/or services with Plaintiff or tend to do so;

    d. registering or applying to register any trademark, service mark, domain name, trade name, or other source identifier or symbol of origin consisting of or incorporating the mark CASPER or any other mark that is likely to be confused with Plaintiff's CASPER mark, or any goods or services of Plaintiff, or Plaintiff as their source; and

    e. aiding, assisting, or abetting any other individual or entity in doing any act prohibited by sub-paragraphs (a) through (d).

    E. Granting such other and further relief as the Court may deem proper to prevent the public and trade from deriving the false impression that any goods or services manufactured, sold, distributed, licensed, marketed, advertised, promoted, or otherwise offered or circulated by Defendant are in any way approved, endorsed, licensed, sponsored, authorized, or franchised by or associated, affiliated, or

otherwise connected with Plaintiff or constitute or are connected with Plaintiff's proof-of-stake blockchain protocol.

F. Directing Defendant to formally abandon with prejudice any and all of its U.S. applications to register the mark CASPER or any mark consisting of, incorporating, or containing Plaintiff's CASPER mark or any counterfeit, copy, confusingly similar variation, or colorable imitation thereof on any state or federal trademark registry.

G. Directing Defendant to cancel with prejudice any and all of its U.S. registrations for the mark CASPER or any mark consisting of, incorporating, or containing Plaintiff's CASPER mark or any counterfeit, copy, confusingly similar variation, or colorable imitation thereof on any state or federal trademark registry.

H. Directing, pursuant to Section 37 of the Lanham Act, 15 U.S.C. § 1119, the cancellation of U.S. Trademark Registration Nos. 6202402 and any and all other federal registrations for the mark CASPER or any mark consisting of, incorporating, or containing Plaintiff's CASPER mark or any counterfeit, copy, confusingly similar variation, or colorable imitation thereof owned or controlled by Defendant.

I. Directing, pursuant to Section 35(a) of the Lanham Act, 15 U.S.C. § 1116(a), Defendant to file with the court and serve upon Plaintiff's counsel within thirty (30) days after service on Defendant of an injunction in this action, or such extended period as the court may direct, a report in writing under oath, setting forth in detail the manner and form in which Defendant has complied therewith.

J. Awarding Plaintiff damages for the claims arising under 15 U.S.C. § 1125(a) as well damages for the claim brought under California common law;

K. Awarding Plaintiff an amount up to three times the amount of its actual damages, in accordance with Section 35(a) of the Lanham Act, 15 U.S.C. § 1117(a).

L. Directing that Defendant account to and pay over to Plaintiff all profits realized by its wrongful acts in accordance with Section 35(a) of the Lanham Act, 15

U.S.C. § 1117(a), enhanced as appropriate to compensate Plaintiff for the damages caused thereby.

      M.    Awarding Plaintiff punitive and exemplary damages as the court finds appropriate to deter any future willful infringement.

      N.    Declaring that this is an exceptional case pursuant to Section 35(a) of the Lanham Act and awarding Plaintiff its costs and reasonable attorneys' fees thereunder (15 U.S.C. § 1117(a)).

      O.    Awarding Plaintiff interest, including prejudgment and post-judgment interest, on the foregoing sums.

      P.    Awarding such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: March 17, 2021        By: */s/ Christopher Ott*
                                           Christopher Ott (CA Bar No. 235659)
                                           ROTHWELL, FIGG, ERNST & MANBECK, P.C.
                                           607 14th Street, NW; Suite 800
                                           Washington, DC  20005
                                           202-783-6040

                                           *Attorneys for Plaintiff Vlad Zamfir*