UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VLAD ZAMFIR,<br><br>Plaintiff,<br><br>v.<br><br>CASPERLABS, LLC,<br><br>Defendant. | Case No.:  21cv474-GPC(AHG)<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER**<br><br>**[ECF No. 2]** |

Before the Court is Plaintiff Vlad Zamfir's Motion for Preliminary Injunction and Temporary Restraining Order.  ECF No. 2.  Defendant CasperLabs, LLC opposes.  ECF No. 15.  On March 22, 2021, the Court held a hearing on this matter.  ECF No. 26.  For the reasons that follow, the Court DENIES Plaintiff's Motion for a Temporary Restraining Order.

## I.    Procedural History

On March 17, 2021, Plaintiff Vlad Zamfir ("Plaintiff") filed the complaint and instant Motion.  ECF Nos. 1, 2.  In his complaint, Plaintiff brings a claim for false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and for unfair competition under California common law, arising from Defendant CasperLabs, LLC ("Defendant")'s use of the name "Casper."  ECF No. 1 ¶ 2.  Plaintiff seeks monetary and injunctive relief as well as cancellation of Defendant's trademark

registration for the name Casper and abandonment of a pending trademark application for the same name.  *Id.* ¶ 4.  In the instant Motion, Plaintiff seeks a TRO or preliminary injunction preventing Defendant from further use of the name "Casper" in connection with their goods and services.  ECF No. 2-1 at 5.

On March 19, 2021, Defendant filed a response in opposition to the Motion.  ECF No. 15.  On March 22, 2021, Plaintiff filed a supplemental declaration.  ECF No. 23.  On March 22, 2021, the Court held a hearing on the Motion.  ECF No. 26.

## II.    Factual Background

This Motion revolves around the use of the name "Casper" in connection with blockchain technologies.  A blockchain is a distributed protocol that stores transactional records as a chain of "blocks," and each block cannot be retroactively altered without leaving evidence of the alteration.  ECF No. 2-3 ("Zamfir Decl.") ¶ 2.  Blockchain technology is therefore used for cryptocurrency exchanges, like Bitcoin, to enable peer-to-peer networks without relying on any single legal entity to own or administer the network.  *Id.* ¶ 3.  Blockchain-based cryptocurrencies have historically relied on a "proof of work" ("PoW") consensus mechanism to secure the network, but PoW protocols have been criticized due to their significant consumption of computational and electrical energy.  *Id.* at 4.  In recent years, researchers have begun developing an alternative to PoW protocols known as "proof-of-stake" ("PoS") protocols, which use digital resources to protect the blockchain network and thus would "eliminate the computational waste inherent to PoW" protocols.  *Id.* ¶ 5.

Plaintiff is a researcher in the field of cryptoeconomics and distributed systems.  *Id.*  ¶ 6.  Plaintiff and Vitalik Buterin are the two lead researchers of the PoS blockchain protocols known as Casper.  *Id.*  Around 2014, Plaintiff and Buterin began developing their PoS blockchain protocol design, and around 2015 Plaintiff adopted the name "Casper."  *Id.* ¶¶ 7–8.  Plaintiff and Buterin thereafter began research in two different directions, with Plaintiff's branch of this research becoming known as "CBC Casper."  *Id.* ¶ 10.  According to Plaintiff, CBC Casper is currently known and referred throughout

the industry as "Casper."  *Id.*  Plaintiff has been conducting research and development under the name Casper in the United States since at least as early as March 2015.  *Id.* ¶ 11, Exs. A, B, C.

Defendant is a company founded in October 2018 organized under the laws of the State of Wyoming, and has used the name "CasperLabs" since its inception.  ECF No. 15-1 ("Manohar Decl.") ¶¶ 5, 9; ECF No. 15-3 ("Sarkin Decl.") ¶ 4.  In December 2018, Plaintiff and Defendant discussed collaborating on the research and development of a new blockchain adopting a version of Plaintiff's CBC Casper PoS protocol.  Zamfir Decl. ¶ 17.  On February 14, 2019, Plaintiff, on behalf of himself and his company Coordination Technology, Ltd. ("CoorTech"), and Defendant's overseas affiliate CasperLabs, Ltd. entered into a Research Agreement.  *Id.* ¶ 19; Manohar Decl. ¶ 10.  On the same day, Plaintiff, again on behalf of himself and CoorTech, and Defendant entered into a License Agreement with CasperLabs, Ltd. granting Defendant limited rights to use Plaintiff's name and image.  *Id.*; Zamfir Decl. ¶ 20.  Plaintiff asserts that soon after he began working with Defendant, he became concerned that Defendant was misappropriating his name and leveraging his reputation to mislead investors.  *Id.* ¶¶ 23–24.  Defendant asserts that Plaintiff's work fell short of Defendant's expectations. Manohar Decl. ¶ 11.  On September 11, 2019, Plaintiff notified Defendant that CoorTech was terminating both the Research Agreement and License Agreement.  *Id.* ¶ 13; Zamfir Decl. ¶ 26.  The License Agreement was terminated in October 2019.  *Id.* After an extension, the Research Agreement was ultimately terminated on November 2, 2019.  *Id.* Aside from maintaining some beneficial ownership in CasperLabs, Plaintiff states he has not had any relationship with Defendant since terminating the agreements.  *Id.* ¶¶ 27–28.

On October 31, 2019, Defendant released a protocol specification.  *Id.* ¶ 32. According to Plaintiff, the product had been known as "Highway Protocol," but later Defendant started calling the product "CasperLabs Highway Protocol" and later "Casper Highway Protocol."  *Id.*  By August 2020, Defendant had begun referring to its blockchain protocol and token as "Casper."  *Id.* ¶ 33.  Defendant asserts that it had been

using the name "Casper" before August 2020.  Manohar Decl. at 5.  On August 31, 2020, Defendant announced its network launch and token sale planned for the first quarter of 2021 as "[t]he Casper public network and token sale" and referred to its blockchain network as "Casper."  Zamfir Decl. ¶ 34.  Defendant has thereafter continued to market its products[1] using the name "Casper."  *Id.* ¶¶ 35–36, 38   Plaintiff states that he never consented to Defendant's use of the name "Casper" for Defendant's PoS protocol, token, or other products, and in fact was adamant that Defendant not use the Casper name.  *Id.* ¶¶ 30–31, 37.  Defendant asserts that Plaintiff was well-aware of Defendant's intent to use the Casper name, and that its Chief Technology Officer informed Plaintiff as early as June 2019 that Defendant was "leaning towards Casper" for the name of its "token and chain."  Manohar Decl. at 5; ECF No. 15-2 ("Parlikar Decl.") ¶¶ 3–4, Ex. 1.

On September 4, 2019, Defendant filed an application with the U.S. Patent and Trademark Office ("PTO") in its own name for the mark CASPER in connection with blockchain technology.  Zamfir Decl. ¶ 43, 44.[2]  On November 17, 2020, the mark was registered.  *Id.*, Ex. M.  According to Plaintiff, Defendant had agreed to register the marks on Plaintiff's behalf and to transfer the marks to Plaintiff, but Defendant has not assigned the registration to Plaintiff.  *Id.* ¶¶ 42, 45.  Defendant denies that it ever made an agreement with Plaintiff to transfer the rights or registration of the CASPER mark.  ECF No. 15-4 ("Walker Decl.") ¶ 3; Manohar Decl. at 5–6.  Defendant's CEO states that he "understand[s] that Mr. Zamfir did ask others if CasperLabs, LLC would be willing to transfer to him any registrations we secured, and was told no."  *Id.* at 5.  According to Defendant, Plaintiff never objected to applications for trademark registration.  *Id.*

---

[1] Defendant states that an affiliated overseas entity not named in this lawsuit, Casper Association, is the entity that will conduct in the public sale commencing on March 23, 2021 of CSPR tokens to non-U.S. persons.  Sarkin Decl. ¶¶ 9–10.

[2] Another "Intent to Use" application for the mark CASPER remains pending.  Zamfir Decl, Ex. N.

Plaintiff vigorously disputes this account.  *See generally* ECF No. 23 ("Suppl. Zamfir Decl.").[3]

Plaintiff alleges that as a result of Defendant's use of the Casper name, customers mistakenly associate Plaintiff and CoorTech with Defendant.  Zamfir Decl. ¶¶ 46–47. Plaintiff asserts that this confusion harms his reputation, makes it more difficult to market the genuine products of his research, and gives the false impression that his research is being financed by a relationship with Defendant, which makes it harder for Plaintiff to secure sponsorship.  *Id.*

Defendant alleges that the names "CASPER" and "CASPERLABS" have become widely recognized on social media to refer to Defendant's network.  Sarkin Decl. ¶ 11. Defendant states that there has been $21 million in "contractual private token presales" and that according to CoinList, the platform where the public sale of its tokens will take place, over 180,000 individuals and entities have preregistered for the CSPR token sale. *Id.* ¶¶ 8–9.  Defendant states that it stands to suffer substantial financial harm if it is restrained from using the Casper name for its network.  *Id.* ¶ 12.

### III.   Legal Standard

Federal Rule of Civil Procedure 65 authorizes a court to enter a temporary restraining order ("TRO") or preliminary injunction.  Fed. R. Civ. P. 65.  The purpose of a TRO is to preserve the status quo before a preliminary injunction hearing may be held; its provisional remedial nature is designed merely to prevent irreparable loss of rights prior to judgment.  *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers*, 415 U.S. 423, 439 (1974).

The legal standard that applies to a motion for a TRO is the same as a motion for a preliminary injunction.  *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d

---

[3] Defendants filed a motion to strike the supplemental declaration filed by Plaintiff before the hearing without leave of court.  ECF No. 25.  Because the Court would find Plaintiff has failed to meet his burden even if it considers the supplemental declaration, the Court does not resolve Defendant's objections at this time.

832, 839 n.7 (9th Cir. 2001).  To obtain a TRO or preliminary injunction, the moving party must show: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm to the moving party in the absence of preliminary relief; (3) that the balance of equities tips in the moving party's favor; and (4) that an injunction is in the public interest.  *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

Under the Ninth Circuit's "sliding scale" approach, the first and third elements are to be balanced such that "serious questions" going to the merits and a balance of hardships that "tips sharply" in favor of the movant are sufficient for relief so long as the other two elements are also met.  *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134–35 (9th Cir. 2011).  A TRO or preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief," *Winter*, 555 U.S. at 22, and the moving party bears the burden of meeting all four *Winter* prongs.  *See Cottrell*, 632 F.3d at 1135; *DISH Network Corp. v. FCC*, 653 F.3d 771, 776-77 (9th Cir. 2011).

## IV.   Discussion

Plaintiff seeks a TRO or preliminary injunction enjoining Defendant "from further unauthorized use of the mark 'CASPER' (and related terms 'Casper network,' 'Casper protocol,' 'Casper blockchain,' and 'CSPR') in connection with the marketing, advertising, promotion, offering for sale, and/or sale of Defendant's proof-of-stake blockchain network."  ECF No. 2-1 at 4.  Defendant argues that Plaintiff is not likely to succeed on the merits and has otherwise not met the requirements for a TRO.

### A. Likelihood of Success on the Merits

Plaintiff contends that he is likely to succeed on his claim for false designation of origin under Section 43(a) of the Lanham Act because Defendant's use of the name "Casper" falsely associates their products with Plaintiff and his research.  Defendant opposes, arguing that Defendant is the registered trademark owner and that Plaintiff has

failed to demonstrate that he has rights to the "Casper" mark, and that Plaintiff cannot show a likelihood of confusion.[4]

The protections of the Lanham Act seek to guard against deceptive practices in the marketplace and prohibit conduct that will create a likelihood of confusion. *See New West Corp. v. N.Y.M. Co. of California*, 595 F.2d 1194, 1201 (9th Cir. 1979); 15 U.S.C. § 1127. "Section 1125(a) creates two distinct bases of liability: false association, § 1125(a)(1)(A), and false advertising, § 1125(a)(1)(B)." *Lexmark Intl, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 122. To prevail on a claim of false association or false designation of origin,[5] a plaintiff must show that "(1) defendant uses a designation (any word, term, name, device, or any combination thereof) or false designation of origin; (2) the use was in interstate commerce; (3) the use was in connection with goods or services; (4) the designation or false designation is likely to cause confusion, mistake, or deception as to (a) the affiliation, connection, or association of defendant with another person, or (b) as to the origin, sponsorship, or approval of defendant's goods, services, or commercial activities by another person; and (5) the plaintiff has been or is likely to be damaged by these acts." *United Tactical Sys., LLC v. Real Action Paintball, Inc.*, 143 F. Supp. 3d 982, 1015 (N.D. Cal. 2015) (citing *Summit Tech., Inc. v. High-Line Med. Instruments, Co.*, 933 F. Supp. 918, 928 (C.D. Cal. 1996)); *see also Freecycle Network, Inc. v. Oey*, 505 F.3d 898, 902 (9th Cir. 2007) (citing 15 U.S.C. § 1125); *Phillip Morris USA Inc. v. Shalabi*, 352 F. Supp. 2d 1067, 1072 n. 6 (C.D. Cal. 2004) (citing *Brookfield Comm'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1046 n.6 (9th Cir. 1999)). The Court will consider Plaintiff's likelihood of success

---

[4] Defendant also raises arguments regarding nominative fair use, which the Court declines to reach at this stage.

[5] Courts have recognized that a false designation and false association claim are essentially synonymous. *See, e.g.*, *Belmora LLC v. Bayer Consumer Care AG*, 819 F.3d 697, 705 n.4 (4th Cir. 2016); *Choon's Design, LLC v. ContextLogic Inc.*, No. 19-CV-05300-HSG, 2020 WL 6891824, at *2 (N.D. Cal. Nov. 24, 2020).

on these elements before considering Defendant's arguments regarding its ownership of the registered trademark.

  1. Designation, Use in Interstate Commerce, and Connection with Goods or Services

The first three factors—whether Defendant used a designation in interstate commerce in connection with goods or services—appear easily met based on facts undisputed by the parties.  The statute provides that the use of "any word, term, name, symbol, or device" can form the basis of a claim under Section 43(a), and the alleged violation here is the use of the word or name "Casper."  15 U.S.C. § 1125.  There can also be no question that Defendant's use of the designation, namely through promoting to consumers their network and token under the name "Casper," at the very least affects interstate commerce.  *See Thompson Tank & Mfg. Co. v. Thompson*, 693 F.2d 991, 993 (9th Cir. 1982); *cf. Telegram Messenger, Inc. v. Lantah, LLC*, 782 F. App'x 528, 530 (9th Cir. 2019) (finding entry into contracts for sale of cryptocurrency qualified as "use in commerce").  Defendant's use of the term Casper is in connection with "goods or services" because it used the name to describe its product offerings.

  2. Likelihood of Confusion

The Ninth Circuit has stated the following factors, first articulated in *AMF Inc. v. Sleekcraft*, are relevant to determining the likelihood of confusion in a false designation of origin claim: (1) "strength of the plaintiff's mark; (2) "relatedness of the goods;" (3) "similarity of the marks;" (4) "evidence of actual confusion;" (5) "marketing channels used;" (6) "likely degree of purchaser care;" (7) "defendant's intent in selecting the mark;" and (8) "likelihood of expansion of the product lines."  *Toho Co. v. Sears, Roebuck & Co.*, 645 F.2d 788, 790 (9th Cir. 1981) (citing *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348–49 (9th Cir. 1979), *abrogated on other grounds by Mattel, Inc. v. Walking Mountain Prod.*, 353 F.3d 792, 810 n. 19 (9th Cir. 2003)).  "The factors are non-exhaustive and applied flexibly; the *Sleekcraft* factors are not intended to be a 'rote checklist.'" *JL Beverage Co., LLC v. Jim Beam Brands Co.*, 828 F.3d 1098, 1106 (9th

Cir. 2016) (quoting *Rearden LLC v. Rearden Com., Inc.*, 683 F.3d 1190, 1209 (9th Cir. 2012)).

Several of the *Sleekcraft* factors weigh in favor of Plaintiff.  The marks are identical and used in connection with blockchain technology.  Plaintiff need not be a market competitor with Defendant to demonstrate a likelihood of confusion; the fact that Defendant's product purportedly built on the CBC Casper protocol confirms that consumers may see the "products"—Plaintiff's research and Defendant's token and network—as related.  *Cf. Stone Brewing Co., LLC v. MillerCoors LLC*, 445 F. Supp. 3d 1113, 1132 (S.D. Cal. 2020) (citing *American Int'l Group, Inc. v. Am. Int'l Bank*, 926 F.2d 829, 832 (9th Cir. 1991)) (noting that direct competition is not necessary to show relatedness of the goods).  As to the fourth factor, evidence of actual confusion, Plaintiff provides evidence from an online forum and a newspaper article suggesting that some in the blockchain community mistakenly believe he is associated with Defendant's network and token launch.  Zamfir Decl., Exs. O, P; *see Rearden*, 683 F.3d at 1218 (noting that trade publications and news articles can support a showing of likelihood of confusion).  But on the other hand, at least some of the confusion may stem from Plaintiff's past affiliation with Defendant that was known to the public, not solely because of Defendant's use of the Casper mark.  *See* Zamfir Decl. ¶ 22 (noting that Plaintiff was previously listed on Defendant's "CasperLabs Team" landing page).

As to the strength of the mark, a strong showing on this prong requires both conceptual strength and commercial strength.  *Stone Creek, Inc. v. Omnia Italian Design, Inc.*, 875 F.3d 426, 432 (9th Cir. 2017).  Casper is conceptually strong because it is likely arbitrary, rather than descriptive, of any research or product.[6]  *See Entrepreneur Media,*

_____

[6] Although more likely arbitrary, the Court notes the possibility that "Casper" may be suggestive, as it is a reference to another protocol known as GHOST, Zamfir Decl. ¶ 9, and thus consumers must use a "type of multistage reasoning to understand the mark's significance."  *See Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1142 (9th Cir. 2002) (citing *Kendall–Jackson Winery, Ltd. v. E. & J. Gallo Winery*, 150 F.3d 1042, 1047 n.8 (9th Cir. 1998)).

*Inc. v. Smith*, 279 F.3d 1135, 1141–42 (9th Cir. 2002).  It is also "inherently distinctive" because it is a federally registered trademark.  *Network Automation Inc. v. Advanced Systems Concepts, Inc.*, 638 F.3d 1137, 1150 (9th Cir. 2011).  The commercial strength of a mark depends on "actual market place recognition." *Id.* at 1149.  This factor weighs less clearly towards Plaintiff, because while Plaintiff has shown that he is associated with the Casper mark in the community of blockchain enthusiasts, he has not clearly established either that he has used the mark in a commercial manner, or that the mark is strongly associated with him among potential cryptocurrency consumers, which may be broader than those who are familiar with the underlying technology.[7]

Regarding Defendant's intent, the Ninth Circuit has stated that "[f]actor seven favors the plaintiff 'where the alleged infringer adopted his mark with knowledge, actual or constructive, that it was another's trademark.'" *JL Beverage*, 828 F.3d at 1111.  This factor could go both ways.  Although Defendant appears to have chosen the name Casper to suggest an association with the CBC Casper protocol, Defendant also used the name "CasperLabs" throughout its working relationship with Plaintiff without objection and obtained the trademark registration for the name "Casper" allegedly pursuant to an agreement with Plaintiff.  Plaintiff maintains that Defendant agreed to transfer the rights to Plaintiff after obtaining trademark registration, Zamfir Decl. ¶ 42, but it is difficult for the Court to conclude, based on the sparse record regarding the purported agreement, that Defendant agreed to transfer the trademark to Plaintiff without any expectation that it would retain any right to use the Casper name at all.  These unresolved factual questions complicate the issue of Defendant's intent in choosing the mark.

_____

[7] As explored further below, the fact that Defendant is the one that actually registered and used the mark commercially also undermines Plaintiff's showing on this factor.

1    Accordingly, although Plaintiff has shown some possibility that he would succeed

2 on the likelihood of confusion element of his Lanham Act claim, the evidence not

3 decisive.[8]

4    3.   Existence of a Registered Mark

5    Defendant's primary argument in response to Plaintiff's Motion is that Plaintiff has

6 not established that he is the owner of the mark "Casper" by showing a priority of use in

7 commerce, a prerequisite to his success on his Lanham Act claim.  ECF No. 15 at 17.  At

8 the hearing, Plaintiff argued that ownership of a mark is not a requirement to bring a false

9 designation of origin claim.

10    The Court finds Defendant's arguments relevant, but misplaced.  Plaintiff does not

11 bring a claim for trademark infringement.  Although previous case law may have

12 suggested that ownership of a mark, through use of the mark in commerce in the United

13 States, or a similar cognizable interest in the mark is necessary to bring a claim under

14 Section 43(a), *see, e.g.*, *Brookfield*, 174 F.3d at 1046 n.6, the Supreme Court has since

15 clarified in the context of a Section 43(a) false advertising claim that the Lanham Act's

16 protections extend to plaintiffs "whose interests fall within the zone of interests protected

17 by the law invoked" and whose injuries are proximately caused by the violation.

18 *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 129, 132 (2014)

19 (citation omitted).  The Court then concluded that any plaintiff that alleges "injury to a

20 commercial interest in reputation or sales" falls within the zone of interests for a Section

21 43(a) false advertising claim.  *Id* at 131–132. This decision casts doubt on previous cases

22 that conflate false designation with trademark infringement and require a showing of

23 prior use in commerce of the mark.  *Cf. Choon's Design, LLC v. ContextLogic Inc.*, No.

24 19-CV-05300-HSG, 2020 WL 6891824, at *3 (N.D. Cal. Nov. 24, 2020) (citing *Jack*

25 *Russell Terrier Network of N. Ca. v. Am. Kennel Club, Inc.*, 407 F.3d 1027, 1037 (9th

26

27

28
_____

[8] Given that the Court addresses Plaintiff's likelihood of damage at length in the section below on irreparable harm, the Court does not reach this factor here.

21cv474-GPC(AHG)

Cir. 2005)) (noting that the Ninth Circuit has suggested that existence of a protectable mark is necessary for a false designation claim, but has not spoken directly to the issue). As Plaintiff noted at the hearing, the Fourth Circuit has applied *Lexmark* to a false association claim and concluded that a plaintiff that had not established use of the mark in commerce in the United States could survive a motion to dismiss brought by the defendant, a registered trademark holder. *Belmora LLC v. Bayer Consumer Care AG*, 819 F.3d 697, 708–09 (4th Cir. 2016). Therefore, Plaintiff's failure to establish ownership of the mark is not necessarily fatal to his claim for false designation of origin.[9] *See* 5 McCarthy on Trademarks and Unfair Competition §§ 27:13, 27:30 (5th ed.) (summarizing legal developments on this issue).

While Plaintiff may be correct that a plaintiff's ownership of the disputed mark is not a prerequisite for a Section 43(a) claim, it does not follow that a defendant's unrebutted ownership of a registered trademark mark is irrelevant to the plaintiff's likelihood of success. As even the Fourth Circuit in *Belmora* recognized, in reversing the district court's dismissal, even a plaintiff that meets the standing requirements laid out in that case may have difficulty proving a cognizable injury under Section 43(a). *Belmora*, 819 F.3d at 710 n.8. Although a registered trademark does not necessarily shield a defendant from liability for false designation of origin, it does provide a defendant with prima facie evidence of its ownership of the mark and its exclusive right to use the mark in commerce. *See* 15 U.S.C. § 1057(b). Admittedly, the effect of a defendant's registered trademark, and its evidentiary significance, in a false designation case is unclear from existing case law. The Court identified few cases in which courts were confronted with a claim styled as false designation under 43(a), rather than a claim for

---

[9] The Court notes that even in false designation cases, courts have suggested that a plaintiff will satisfy the "zone of interests" inquiry necessary to bring a claim under the Lanham Act when they make a showing of harm to commercial interests. *See Obesity Rsch. Inst., LLC v. Fiber Rsch. Int'l, LLC*, 165 F. Supp. 3d 937, 946–47 (S.D. Cal. 2016); *Belmora*, 819 F.3d at 711 (referencing Bayer's commercial losses).

unregistered trademark infringement, brought against a registered trademark holder. However, those that did reference this issue appear to have presumed that the defendant's unchallenged ownership of a valid registered trademark would preclude the plaintiff's false designation of origin claim.

In one case out of the Eastern District of California, the plaintiff and defendant were formerly associated entities that appeared to have transferred, whether properly or fraudulently, the disputed registered trademarks between one another prior to the initiation of the suit and filing of the motion for a preliminary injunction. *Dahon N. Am. Inc. v. Hon*, No. 2:11-CV-5835-ODW-JCGx, 2012 WL 13012476, at *2 (C.D. Cal. Mar. 19, 2012). The court recognized that although a plaintiff need not prove its own trademark ownership to prevail on a false designation of origin claim, it must prove that the defendant's use of the designation constitutes a false designation of origin. *See id.* at *4. That court found the plaintiff had not done so, as it was possible that defendants had rights in the mark by virtue of the previous trademark assignment which plaintiff had not challenged with evidence, and thus found the plaintiff had not shown a likelihood of success on its false designation of origin claim. *Id.* ("If Defendants are the rightful owner, then there cannot be a false designation of origin.").

In *United Tactical Systems*, the parties likewise disputed the validity (or existence) of an assignment of the trademark at issue. *United Tactical Sys.*, 143 F. Supp. 3d at 1015–16. On a motion to dismiss, the counter-defendants argued that the counterclaim for false designation of origin failed to state a claim because they were the registered and true owner of the mark by virtue of the assignment. *Id.* at 1015. The Northern District of California rejected this argument because the counter-claimant *alleged* that counter-defendants had not lawfully acquired the trademark, pointing to the lack of registration of the purported assignment with the PTO. *Id.* at 1015–16. This suggests that in order to ultimately succeed on the merits of the counterclaim, the counter-plaintiff would have had to demonstrate that the counter-defendants had not been lawfully assigned the mark.

Another California district court confronted a somewhat similar issue in considering the effect of a defendant's valid license to use a mark.  *See City-Core Hosp., LLC v. Palmer*, No. 17-CV-05544-CRB, 2018 WL 398257, at *3 (N.D. Cal. Jan. 12, 2018).  That court, in finding that an exclusive licensee of a mark may not sue another valid licensee of the same mark for false designation of origin, reasoned that "[p]arties that have a valid license to use a mark and that use the mark in accordance with the license are merely exercising rights that have been granted by the licensor[,] [s]o they do not falsely designate the source of the mark's goodwill in using the mark."  *Id.*; *cf. Varsity News Network, Inc. v. Carty Web Strategies, Inc.*, No. CV 17-2574 PSG (EX), 2017 WL 7156278, at *3 (C.D. Cal. Nov. 21, 2017) (noting that if agreement had granted counter-defendant the right to use the mark, counter-plaintiff's claim for false designation of origin would be precluded).  The Court recognizes that unlike a license, the registration of a trademark itself does not grant the registrant the right to use the mark, but rather confers "prima facie evidence . . . of the owner's exclusive right to use the registered mark."  15 U.S.C. § 1057; *see Matal v. Tam*, 137 S. Ct. 1744, 1751–53 (2017) (recognizing that although federal law does not create trademarks, federal registration "confers important legal rights and benefits on trademark owners who register their marks," including prima facie evidence of the right to use in commerce in connection with specific goods or services) (citation omitted).  However, if one accepts the prima facie evidence of a trademark registrant's right to use the mark, *City-Core*'s observation—that a party using a mark that they are lawfully permitted to use cannot make a false designation by using that mark in a permitted manner—appears equally applicable.

These cases lead the Court to conclude, for the purposes of this Motion, that in the absence of evidence tending to rebut a registered trademark holder's right to use the mark, the registrant's use of the mark in connection with the goods or services referenced in the registration is unlikely to be found a false designation of origin.  This is not to say that a plaintiff would not be able to overcome the prima facie evidence conferred by the

registration.  *See Sengoku Works Ltd. v. RMC Int'l, Ltd.*, 96 F.3d 1217, 1220 (9th Cir.), *as modified*, 97 F.3d 1460 (9th Cir. 1996).  However, in this case, Plaintiff has not presented any legal argument or evidence in connection with his Motion to challenge Defendant's registration, ownership, or right to use the mark.[10]

The Court recognizes that this scenario does not track easily with the elements of a false designation cause of action.  As the other district courts cited above suggested, the existence of a valid registered trademark or other unchallenged right to use the mark undermines a plaintiff's claim that the defendant has used a "false designation" at all. *See Dahon N. Am. Inc. v. Hon*, 2012 WL 13012476, at *4; *City-Core*, 2018 WL 398257 at *3.  This may seem somewhat inconsistent with the Lanham Act's language, which suggests either "a false designation of origin" or "*any* word, term, name, symbol, or device" is actionable.  11 U.S.C. § 1125(a) (emphasis added).  However, the subsection as a whole suggests that the use must be deceptive or misleading; that is, the use must be wrongful in some way.  Otherwise, a person with an unchallenged lawful right to use a mark could be subject to suit, merely because of potential confusion.  *Cf. Paleteria La Michoacana, Inc. v. Productos Lacteos Tocumbo S.A. DE C.V.*, 188 F. Supp. 3d 22, 110 (D.D.C. 2016), aff'd, 743 F. App'x 457 (D.C. Cir. 2018) ("The Court does not read the Fourth Circuit's analysis [in *Belmora*] to suggest that an infringing junior user of a mark in the United States can pursue a false association claim against a mark's senior user based on consumer confusion resulting from the infringing use."); *Rescue v. Walters*, No. C20-5700JLR, 2021 WL 22591, at *8 (W.D. Wash. Jan. 4, 2021) (citing *Waits v. Frito-*

---

[10] The Ninth Circuit has not been wholly consistent as to whether the prima facie evidence of ownership bestowed by a registered trademark shifts the burden of persuasion, requiring a challenger to overcome the presumption of ownership by a preponderance of the evidence, or the burden of production, requiring a challenger only to put forth evidence to rebut the validity of the registration.  *Compare Sengoku*, 96 F.3d at 1219 (describing standard as requiring challenger to show ownership by preponderance of the evidence) *with Tie Tech, Inc. v. Kinedyne Corp.*, 296 F.3d 778, 783 (9th Cir. 2002) ("[A]ssuming the [challenger] can demonstrate through law, undisputed facts, or a combination thereof that the mark is invalid, the [registration's] evidentiary bubble bursts.").  The Court need not decide this issue at this juncture because Plaintiff has not put forth evidence on this issue.

*Lay, Inc.*, 978 F.2d 1093, 1109 n.9 (9th Cir. 1992)) (noting that false association requires *misuse* of a trademark or other distinguishing device).

Even if the defendant's unchallenged ownership of a registered trademark was not an absolute obstacle to proving a false designation, the existence of the registration at least would factor into the likelihood of confusion. The prima facie evidence of ownership weakens the commercial strength of the mark in connection to Plaintiff and, given the agreement (albeit allegedly violated) that Defendant seek federal registration of the trademark, it also complicates the question of Defendant's intent in choosing the mark. Further, as the Ninth Circuit stated when noting the flexibility and non-exhaustive nature of the *Sleekcraft* factors, "other variables besides the enumerated factors should also be taken into account based on the particular circumstances." *Rearden*, 683 F.3d at 1209. The absence of evidence that anyone other Defendant, as the registered owner of the mark, has the right to use the Casper mark in commerce in connection with the specified goods and services in the United States, could serve as an independent reason to find Plaintiff has not shown a likelihood of confusion in this case.

Ultimately, given the Lanham Act's intent to provide some modest protections to holders of registered trademarks, *see Matal*, 137 S. Ct. at 1753; 15 U.S.C.A. § 1127, the Court finds that Plaintiff would only be likely to succeed on his false designation of origin claim were he to overcome Defendant's prima facie evidence that it has the right to use the mark, whether by showing that the mark was fraudulently registered, that Plaintiff is the owner of the mark, or otherwise demonstrating the trademark registration is invalid or that Defendant lacks the right to use the trademark. In his Motion, Plaintiff has not done so. In Plaintiff's own telling, he and Defendant agreed that Defendant should seek trademark protection for the name "Casper." Although Plaintiff also asserts that Defendant had agreed to transfer the registration to Plaintiff, he provides only minimal

evidence of such an agreement and no indication of what the precise terms were.[11] Because the Motion does not provide argument or evidence sufficient to challenge the prima facie evidence of ownership of, and right to use, the Casper designation conferred by Defendant's trademark registration, the Court concludes that Plaintiff has not met his burden of showing he is likely to succeed on his false designation of origin claim.

However, the Court presumes for the sake of argument that Plaintiff has presented "serious questions" as to the merits potentially sufficient for application of the "sliding scale" approach. *See Alliance for the Wild Rockies*, 632 F.3d at 1134–35.

**Likelihood of Irreparable Harm**

A party seeking a TRO must present evidence that irreparable harm is likely in the absence of an injunction. In the case *Herb Reed Enterprises, LLC v. Fla. Ent. Mgmt., Inc.*, 736 F.3d 1239 (9th Cir. 2013), the Ninth Circuit had previously held that a plaintiff must put forth actual evidence of irreparable harm in a Lanham Act case, noting that "[g]one are the days when '[o]nce the plaintiff in an infringement action has established a likelihood of confusion, it is ordinarily presumed that the plaintiff will suffer irreparable harm if injunctive relief does not issue.'" *Herb Reed*, 736 F.3d at 1250 (quoting *Rodeo Collection, Ltd. v. W. Seventh*, 812 F.2d 1215, 1220 (9th Cir. 1987)). Raised for the first time at the hearing was the potential effect of 15 U.S.C. § 1116(a), which was amended by the Consolidated Appropriations Act of 2021. See Pub. L. 116-260, § 226, 134 Stat. 1182, 2208 (2020). The amendment provides that "[a] plaintiff seeking any injunction shall be entitled to a rebuttable presumption of irreparable harm . . . upon a finding of likelihood of success on the merits for a violation" of specific portions of the Lanham Act. 15 U.S.C. § 1116(a). At the hearing, Plaintiff contended that this amendment

---

[11] For instance, Plaintiff does not specify what Defendant was to receive in consideration for registering the mark on Plaintiff's behalf. From Plaintiff's telling, Defendant essentially agreed to register the mark for Plaintiff without requiring, in exchange, that Plaintiff allow Defendant to retain any right to use the name Casper. While this may be accurate, without more information as to the details of this agreement, it is difficult for the Court to ascertain how the agreement affects the validity of Defendant's registration or continued use of the mark.

21cv474-GPC(AHG)

entitles him to a presumption of irreparable harm.  Defendant countered that Plaintiff cannot take advantage of this subsection because he has not shown a likelihood of success on the merits, and alternatively that the effective date of the provision has not yet passed.

At least one district court in the Ninth Circuit has found that 15 U.S.C. § 1116(a)'s amendment, which added a presumption of irreparable harm upon demonstrating a likelihood of success on the merits, is already in effect.  *Suzie's Brewery Co. v. Anheuser-Busch Companies*, LLC, No. 3:21-CV-178-SI, 2021 WL 472915, at *12 n.12 (D. Or. Feb. 9, 2021).  However, the Court need not delve into the question of the effective date because the Court concludes that Plaintiff has not established a likelihood of success on the merits.  By its terms, the presumption only applies "upon a finding of likelihood of success," and thus would not seem to apply to a situation in which a plaintiff raises merely "serious questions" as to the merits under the Ninth Circuit's sliding scale approach.  The Court therefore presumes that *Herb Reed* still applies to a case in which the plaintiff fails to show a likelihood of success on the merits.

"A plaintiff must present case-specific evidence of irreparable harm, rather than relying on generic factors that are present whenever a trademark is infringed."  *Clark Material Handling Co. v. Zoomlion Heavy Indus. Sci. & Tech. Co.*, No. 18-CV-5853-CBM-E, 2018 WL 6252463, at *1–2 (C.D. Cal. Oct. 11, 2018) (noting that plaintiff had only made "general platitudes" regarding loss of control over business reputation and thus denying motion for preliminary injunction).

Here, Plaintiff points to several people commenting about their confusion online, an article that mistakenly suggests Plaintiff is associated with Defendant, and a page from Defendant's website that arguably suggests his research is somehow financed by Defendant.  Zamfir Decl. ¶¶ 46–48 (citing Exs. O, P, & Q).  This evidence supports Plaintiff's argument regarding the likelihood of confusion, but does little to demonstrate any actual or threatened damage to his business reputation, difficulty marketing the products of his research, or difficulty securing sponsoring for his research.  *Cf. Herb*

*Reed*, 736 F.3d at 1250 (noting that evidence of customer confusion is insufficient). Some district courts have found that following *Herb Reed*, a plaintiff's declaration that association with the defendant would be harmful to plaintiff's reputation, without any corroborating evidence to that effect, is insufficient to show a likelihood of irreparable harm. *See, e.g.*, *TPW Mgmt., LLC v. Yelp Inc.*, No. 16-CV-03063-YGR, 2016 WL 6216879, at *12 (N.D. Cal. Oct. 25, 2016) (finding declaration of loss of control over mark not sufficient to show irreparable harm under *Herb Reed*); *Cafe Found., Inc. v. Seeley*, No. 16-CV-00628-JST, 2016 WL 1258624, at *7 (N.D. Cal. Mar. 31, 2016) (declaration anticipating loss of goodwill not sufficient); *Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc.*, No. C 12-3856 PJH, 2014 WL 4312021, at *10 (N.D. Cal. Aug. 28, 2014) ("*Herb Reed* requires evidence that the loss of control is likely to cause *harm* to the trademark holder."); *Puma SE v. Forever 21, Inc.*, No. CV17-2523 PSG E, 2017 WL 4771003, at *4 (C.D. Cal. June 2, 2017) ("[B]ecause Puma has adduced no evidence that its brand value has been diminished or that monetary damages are insufficient, and because it relies solely on [its brand director's] unsupported and largely speculative assertions of harm, Puma has failed to meet its burden of showing that it will likely suffer irreparable harm if a preliminary injunction is not issued.").

Plaintiff's lack of extrinsic evidence would be more understandable had Defendant's alleged wrongful use of the Casper mark not been occurring for months or even years. Plaintiff points to no specific instance in which he had difficulty seeking funding as a result of the purported affiliation with Defendant, nor does he identify any present impact on the credibility of his research in anything other than generalized terms. *See* Zamfir Decl. ¶¶ 46–48. Although the "potential loss of goodwill or loss of control over one's reputation cannot be measured precisely," *TPW Mgmt.*, 2016 WL 6216879 at *11, demonstrating a likelihood—rather than a mere possibility—of irreparable harm requires more than a bare allegation that reputational harm is likely because a plaintiff's inability to control defendant's use of the mark. In any case alleging trademark infringement, the owner of the mark necessarily will lack the ability to control the

infringer's use of the mark absent an injunction, but *Herb Reed* made clear that more is needed to show irreparable harm.  *See Herb Reed*, 736 F.3d at 1250 (warning against "collaps[ing] the likelihood of success and the irreparable harm factors"); *Wells Fargo*, 2014 WL 4312021, at *10 (declarant's assertions of reputational harm "would apply in any case where a trademark holder had established a likelihood of success on a claim of infringement, and thus, do not constitute the type of evidence required by *Herb Reed*").

The Court recognizes that other district courts have found that a plaintiff's declaration that she is likely to lose control over her reputation, standing alone, is sufficient to establish a likelihood of reputational harm.  *E.g.*, *Brooklyn Brewery Corp. v. Black Ops Brewing, Inc.*, 156 F. Supp. 3d 1173, 1185 (E.D. Cal. 2016) (finding declaration regarding potential for loss of control of reputation sufficient to establish likelihood of irreparable harm); *Traeger Pellet Grills, LLC v. Dansons US, LLC*, 421 F. Supp. 3d 876, 889 (D. Ariz. 2019), *appeal dismissed*, No. 19-17211, 2020 WL 470307 (9th Cir. Jan. 8, 2020) (finding loss of control of reputation sufficient to show irreparable harm).  However, the Court finds that these decisions, as well as the pre-*Herb Reed* decisions cited by Plaintiff, appear inconsistent with *Herb Reed*'s rejection of conclusory statements and platitudes, or mere evidence of consumer confusion, as bases for finding irreparable harm.  *See Herb Reed*, 736 F.3d at 1250; *cf. adidas Am., Inc. v. Skechers USA, Inc.*, 890 F.3d 747, 759–61 (9th Cir. 2018) (reiterating need for "concrete evidence" beyond testimony of plaintiff's employees to establish that confusion will cause irreparable harm).  Although the question is close, the Court is doubtful that Plaintiff's declaration alone, generally alluding to potential reputational effects, suffices to establish that he will experience irreparable harm absent an injunction.

Further, an unjustified delay in seeking an injunction may undermine a movant's argument that she will suffer irreparable harm in the absence of a TRO.  *E.g.*, *Garcia v. Google, Inc.*, 786 F.3d 733, 746 (9th Cir. 2015) ("Garcia waited months to seek an injunction after [the film] was uploaded . . .; she did not seek emergency relief when the film first surfaced on the Internet. The district court did not abuse its discretion by finding

this delay undercut Garcia's claim of irreparable harm."); *Oakland Tribune, Inc. v. Chronicle Publ'g Co.*, 762 F.2d 1374, 1377 (9th Cir. 1985) ("Plaintiff's long delay before seeking a preliminary injunction implies a lack of urgency and irreparable harm."). But "delay is but a single factor to consider in evaluating irreparable injury; [and] courts are 'loath to withhold relief solely on that ground.'" *Arc of California v. Douglas*, 757 F.3d 975, 990 (9th Cir. 2014) (quoting *Lydo Enters., Inc. v. City of Las Vegas*, 745 F.2d 1211, 1214 (9th Cir. 1984)); *Cuviello v. City of Vallejo*, 944 F.3d 816, 833 (9th Cir. 2019) (quoting *Aguayo ex rel. N.L.R.B. v. Tomco Carburetor Co.*, 853 F.2d 744, 750 (9th Cir. 1988) ("[D]elay by itself is not a determinative factor in whether the grant of interim relief is just and proper.").

Although not decisive, Plaintiff's delay in bringing this motion—waiting until less than a week before Defendant's network launch and its affiliate's token sale are set to begin—bolsters the Court's conclusion that Plaintiff has not shown he is likely to suffer irreparable harm. "[U]nreasonable delay in a trademark infringement case is measured from when the plaintiff knew or should have known about its potential cause of action." *SunEarth, Inc. v. Sun Earth Solar Power Co.*, 846 F. Supp. 2d 1063, 1083 (N.D. Cal. 2012). Unlike in cases where "the magnitude of the potential harm becomes apparent gradually, undermining any inference that the plaintiff was sleeping on its rights," *Arc of California*, 757 F.3d at 990–91 (citation and internal quotation marks omitted), Plaintiff has been on notice of Defendant's intent to use the Casper name in connection with the network and token launch planned for "Q1 2021" for at least seven months, Zamfir Decl. ¶¶ 33, 34. Plaintiff has also known about Defendant's intent to trademark the name Casper, even if the parties dispute what agreement was or was not made, since the time of their collaboration. At the hearing, Plaintiff's counsel represented that although he would have been aware of Defendant's intent to use the name Casper at least as early as Defendant's August 2020 announcements, Plaintiff had hoped that Defendant would not ultimately use the name. This explanation does little to ease the Court's concerns about Plaintiff's delay in bringing suit. *Cf. Boldface Licensing %8F Branding v. By Lee Tillett,*

*Inc.*, 940 F. Supp. 2d 1178, 1197 (C.D. Cal. 2013) (finding delay not unreasonable because parties were engaged in settlement negotiations, movant needed time to find local counsel, and then reasonably waited until preliminary injunction motion in related case was resolved).

The Court therefore finds that Plaintiff has failed to show he is likely to suffer irreparable harm in the absence of the TRO.

## B. Balance of Equities and the Public Interest

Plaintiff has not shown that he is likely to succeed on the merits of his Lanham Act claim, but even if he raises "serious questions" regarding the merits, the balance of the equities does not tip so sharply in his favor to justify the issuance of a TRO. *See Alliance for the Wild Rockies*, 632 F.3d at 1134–35. The Court recognizes that, assuming Plaintiff were to ultimately succeed on his Lanham Act claim, the absence of an injunction would permit Defendant to continue capitalizing on the Casper name and its association with Plaintiff as it continues its rollout of the tokens and network. At that point, some of the Casper branding may be difficult to reverse, potentially depriving Plaintiff of the ability to control use of the Casper name and affecting his reputation. However, Defendant also faces the prospect of significant harm were it to be enjoined from using the Casper name just days before[12] or after its network and its affiliate's token launch, given that it has publicly used the name for months. Had Plaintiff brought this action months ago, this hardship would have been greatly reduced.[13] Accordingly, in large part because Plaintiff unreasonably delayed bringing this motion despite being on notice of Defendant's activities, the equities do not tip sharply in favor of Plaintiff. *Cf. Khan v. Addy's BBQ*

---

[12] As noted at the hearing, the launch of the token may have already occurred at the time of the hearing, as the March 23, 2021 launch date was apparently based on a different time zone. The time zone issue was not raised in the briefing.

[13] To the extent Plaintiff argues employees of Defendant have disclaimed any hardship from having to change the name by telling users of a messaging app that the case is a "nothingburger," Suppl. Zamfir Decl. ¶ 13, the Court does not find that this glib statement significantly minimizes Defendant's credible claim that they would suffer harm from changing the name of their products at the last minute.

*LLC*, 419 F. Supp. 3d 538, 563 (E.D.N.Y. 2019) (citing *Benisek v. Lamone*, 138 S. Ct. 1942, 1944 (2018)) ("[I]n considering the balance of equities, an unreasonable delay in seeking injunctive relief may weigh against the party seeking such relief.").

As for the public interest, "[t]he usual public concern in trademark cases [is] avoiding confusion to consumers." *Internet Specialties West, Inc. v. Milion–DiGiorgio Enterprises, Inc.*, 559 F.3d 985, 991 (9th Cir. 2009). In this case, this factor is closely tied to who is likely to succeed on the merits. Thus, because Plaintiff has not demonstrated that Defendant lacks the right to use the mark, the Court need not determine where the public interest ultimately lies. *See Dep't of Parks & Recreation for State of California v. Bazaar Del Mundo Inc.*, 448 F.3d 1118, 1124 (9th Cir. 2006). Regardless, it is not clear that restraining Defendant from using the Casper name at this stage would lessen consumer confusion by clarifying that Defendant is no longer associated with Plaintiff, or heighten consumer confusion by preventing Defendant from using a mark which it is entitled to use and has, in fact, used for months to market, and begin selling, its products.

Thus, the Court finds that the remaining factors do not weigh in favor of emergency injunctive relief, even if Plaintiff raises "serious questions" on the merits.

## V.   Conclusion

For the reasons set forth above, the Court **DENIES** Plaintiff's motion for a temporary restraining order.

The Court further **DENIES** as moot Defendant's Motion to Strike (ECF No. 25).

**IT IS SO ORDERED.**

Dated:  March 26, 2021

Hon. Gonzalo P. Curiel
United States District Judge

21cv474-GPC(AHG)