UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VLAD ZAMFIR,<br><br>                         Plaintiff,<br><br>v.<br><br>CASPERLABS, LLC,<br><br>                         Defendant. | Case No.: 21-CV-474 TWR (AHG)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS**<br><br>(ECF No. 37) |

Defendant CasperLabs, LLC ("CasperLabs") has moved to dismiss Plaintiff Vlad Zamfir's Complaint. (*See generally* ECF No. 37 ("Mot. to Dismiss").) Plaintiff opposes. (*See generally* ECF No. 47 ("Opp'n").) The Court heard oral argument on October 13, 2021. (*See generally* ECF No. 48.) For the reasons set forth below, the Court **GRANTS IN PART** and **DENIES IN PART** the motion.

## BACKGROUND

This case involves the use of the name, "Casper," in connection with blockchain technologies. At its core, a blockchain is a "distributed protocol" that keeps and stores a record of transactional records as a chain of "blocks." (ECF No. 34 ("FAC") ¶ 12.) Each block is marked with a "cryptographic fingerprint" that contains information about the previous block, a timestamp, and other data. (*Id.*) Cryptocurrency like Bitcoin and Ethereum rely on blockchain technology to protect and secure peer-to-peer networks

without using an outside legal entity to oversee the network. (*Id.* ¶ 13.) Although block chain-based cryptocurrencies use a "proof of work" ("PoW") mechanism to secure the network, an alternative means has recently been used called "proof-of-stake" ("POS"). (*Id.* ¶¶ 14–15.) Since proof-of-work protocols require significant computational and electrical energy because it takes substantial amounts of electrical energy and microchip manufacturing to secure its networks, the alternative POS program aims to reduce the waste that PoW produces. (*Id.* ¶¶ 14, 15.)

Plaintiff Vlad Zamfir works in blockchain technology. (*Id.* ¶ 6.) Starting in 2014, Zamfir began developing a new POS protocol that he named "Casper." (*Id.* ¶¶ 18–19.) Zamfir uses the name, "Casper," when he talks about his POS research to investors, researchers, developers, and the general public. (*Id.* ¶¶ 22–24.) His work has received media coverage. (*Id.* ¶ 35.)

A few years later, Zamfir was approached by Defendant CasperLabs, which develops blockchain technology and POS blockchain network. (*Id.* ¶ 37.) CasperLabs wanted to collaborate on developing a new blockchain based on Zamfir's work so far. (*Id.* ¶ 37.) In return for being the lead consensus protocol architect, among other things, CasperLabs offered to provide financial support for Zamfir's blockchain research on Casper. (*Id.* ¶ 38, 40.) CasperLabs also wanted to use Zamfir's name and image to promote the collaboration. (*Id.* ¶ 40.) In 2019, Zamfir and his company, Coordination Technology, Ltd., entered into a Research and License Agreement with CasperLabs. (*Id.* ¶ 39.)

The collaboration, however, was short-lived. Within a few months, Zamfir believed that CasperLabs was doing too little to support his research. (*Id.* ¶ 41.) More critically, Zamfir grew concerned that CasperLabs was misappropriating his name and taking advantage of his reputation to mislead investors. (*Id.*) Zamfir terminated the agreement in 2019. (*Id.* ¶¶ 43-44.)

But that did not end the two parties' dispute. Although Zamfir told CasperLabs that the name "Casper" should not be used in connection with blockchain releases that were developed as a result of their collaboration, CasperLabs did so anyway. (*Id.* ¶¶ 42, 50-60.)

And beyond using the name "Casper" for marketing its own blockchain technology, CasperLabs also filed two applications with the U.S. Trademark Office, seeking ownership of the trademark, one of which was approved, while the other remains pending. (*Id.* ¶¶ 61-67.) Both the registration and application list CasperLabs as the owner. (*Id.* ¶ 68.)

Zamfir sued CasperLabs, asserting several claims. (*See generally* ECF No. 1.) First, he asserts a claim under 15 U.S.C § 1125(a) for false designation of origin, alleging that CasperLabs' use of the name "Casper" is likely to deceive consumers about the relationship between CasperLabs' products and Zamfir, thereby creating a false affiliation. (*Id.* ¶ 84.) More specifically, the use of the name "Casper" may lead the public to believe that Zamfir authorizes, endorses, or sponsors CasperLabs' products, when that is not the case. (*Id.*) The same allegations give rise to the second claim under 15 U.S.C. § 1125(a) for unfair competition and trademark infringement. (*Id.* ¶¶ 91–98.) Here, Zamfir alleges that using the name "Casper" is likely to lead consumers to believe that CasperLabs' blockchain technology is affiliated with him in some way, when it is not. (*Id.* ¶ 93.) Next, Zamfir asserts two claims under California common law for trademark infringement and unfair competition based on the same allegations. Lastly, Zamir seeks to cancel two registered trademarks by CasperLabs, arguing that he used the trademark "Casper" in commerce before CasperLabs used such name and that CasperLabs' use of the name is likely to lead consumers to believe that CasperLabs' products are affiliated with him in some way. (*Id.* ¶¶ 108–20.)

CasperLabs moved to dismiss Zamfir's original complaint, (*see generally* ECF No. 32), following which Zamfir filed the operative First Amended Complaint. (*See generally* ECF No. 34.) The First Amended Complaint asserts the same six causes of action as Zamfir's original complaint. (*Compare* ECF No. 1, *with* ECF No. 34.) Presently before the Court is CasperLabs' Motion to Dismiss Zamfir's First Amended Complaint.

## LEGAL STANDARD

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'"

*Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). "A district court's dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is proper if there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" *Id.* at 1242 (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)).

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In other words, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2)).

"If a complaint is dismissed for failure to state a claim, leave to amend should be granted 'unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'" *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)). "A district court does not err in

denying leave to amend where the amendment would be futile." *Id.* (citing *Reddy v. Litton Indus.*, 912 F.2d 291, 296 (9th Cir. 1990), *cert. denied*, 502 U.S. 921 (1991)).

## ANALYSIS

CasperLabs moves to dismiss each of the claims asserted by Zamfir. The Court addresses each claim in turn.

### I. Counts 2 and 3: Trademark Infringement under 15 U.S.C. § 1125(a) and California Common Law

Zamfir asserts a trademark infringement claim under both federal and state law. (*See* FAC ¶¶ 91–98, 100–02.) "Under 15 U.S.C. § 1125(a), a defendant is liable in a civil action if he/she/it uses in commerce, in connection with goods or services, any word, term, name, symbol, or device, or any false designation of origin or false or misleading description or representation of fact, which is likely to cause confusion or mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities." *Free Kick Master LLC v. Apple Inc.*, 140 F. Supp. 3d 975, 979 (N.D. Cal. 2015). Here, CasperLabs argues that Zamfir has failed to satisfy the "use in commerce" element. (*See* ECF No. 37-1 ("Mem.") at 7.) "Use in commerce" means "the bona fide use of a mark in the ordinary course of trade," 15 U.S.C. § 1127, and "a mark is deemed to be used in commerce when it is 'placed in any manner on [ ] goods' and 'the goods are sold or transported in commerce.'" *BMW of N. Am., LLC v. Win.It Am., Inc.*, No. CV178826PSGMRWX, 2018 WL 7458525, at *2 (C.D. Cal. Mar. 14, 2018) (alteration in original).

But "evidence of actual sales, or lack thereof, is not dispositive in determining whether a party has established 'use in commerce,'" *Rearden LLC v. Rearden Com., Inc.*, 683 F.3d 1190, 1205 (9th Cir. 2012), and the court must examine the "totality of the circumstances" to determine whether a service mark falls within "the protection of the

Lanham Act." *Chance v. Pac-Tel Teletrac Inc.*, 242 F.3d 1151, 1159 (9th Cir. 2001).[1] Rather, "'trademark rights can vest even before any goods or services are actually sold' if, looking at the totality of the actions taken, the mark has been used 'in a way sufficiently public to identify or distinguish the marked goods . . . as those of the adopter of the mark.'" *Starbuzz Tobacco, Inc. v. Fantasia Distrib., Inc.*, No. SACV121328JVSJPRX, 2012 WL 12892505, at *6 (C.D. Cal. Dec. 5, 2012). According to the Ninth Circuit, "'[u]se in commerce' is simply a jurisdictional predicate to any law passed by Congress under the Commerce Clause," and the real inquiry is whether the trademark was used "in connection with a sale of goods or services." *Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672, 677 (9th Cir. 2005).

CasperLabs argues that since Zamfir never had a finished good or service called "Casper," he does not have a viable trademark infringement claim. That argument misses the point. To be sure, Zamfir does not seem to dispute that his product was never complete, and CasperLabs devotes a substantial part of its motion citing authority and discussing why prototypes are not entitled to trademark protection. (*See* Mem. at 7–11.) For example, Zamfir claims that he used the name, "Casper," for his research and prototypes, (*see* FAC ¶¶ 21–36), and posted them on "Twitter, Github, and his personal blogs." (*Id.* ¶ 23.) In response, CasperLabs cites several cases that suggest prototypes do not enjoy trademark protection. *See, e.g., Levy v. adidas AG*, No. CV186542PSGMAAX, 2020 WL 1934977, at *3 (C.D. Cal. Mar. 24, 2020) ("[N]either putting a mark 'on a prototype displayed to a potential buyer' nor engaging in 'limited e-mail correspondence with lawyers and a few

---

[1] The Court considers factors like the "genuineness and commercial character of the activity, the determination of whether the mark was sufficiently public to identify or distinguish the marked service in an appropriate segment of the public mind as those of the holder of the mark, the scope of the non-sales activity relative to what would be a commercially reasonable attempt to market the service, the degree of ongoing activity of the holder to conduct the business using the mark, [and] the amount of business transacted." *Chance*, 242 F.3d at 1159. Since "non-sales activities such as solicitation of potential customers may be taken into account as part of the 'totality of the circumstances' inquiry, the initial sale of a service may not establish "prior use of the contested mark" based on the opponent's "prior non-sales activities." *Rearden*, 683 F.3d at 1205–06.

customers' is sufficient 'to establish trademark rights.'"); *Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1052 (9th Cir. 1999) ("West Coast fails to meet this standard. Its purported 'use' is akin to putting one's mark 'on a business office door sign, letterheads, architectural drawings, etc.' or on a prototype displayed to a potential buyer, both of which have been held to be insufficient to establish trademark rights.").

But even if "Casper" was a prototype and not a final product, Zamfir has alleged enough to show that he used "Casper" for his consulting *services*. In particular, the First Amended Complaint provides that "since at least 2015," Zamfir has "provided blockchain technology consulting services using the Casper trademark in the United States." (FAC ¶ 31.) Zamfir goes on to say that he used the Casper trademark in connection with the "sale or advertising of consulting services to support implementation of the Casper CBC protocol in commercial products and services offered in the United States." (*Id.*) CasperLabs disputes this, citing a string of cases to argue that Zamfir's paid consulting "did not involve distribution of a product or service named 'Casper.'" (*See* ECF No. 47 ("Reply") at 3.) In other words, CasperLabs argues, "Casper" was merely an idea and not the name of an actual service. That argument, however, makes no difference. Whether the service is called "Casper" is not the question since the "real inquiry is whether the trademark was used '*in connection* with a sale of goods or services.'" *Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672, 677 (9th Cir. 2005) (emphasis added). Here, that appears to be the case. Zamfir alleges that he used the name "Casper" in connection with the "sale or advertising of consulting services," namely, as noted above, to "support the implementation of the Casper CBC protocol in commercial products and services offered in the United States." (*See* FAC ¶ 31.) So, it was not just an idea but something that was directly related to his consulting.

Further, none of the cases that CasperLabs cites apply. Neither *In re Universal Oil Products Company*, 476 F.2d 653 (C.C.P.A. 1973), nor *In re DSM Pharmaceuticals, Inc.*, 87 U.S.P.Q.2d 1623 (T.T.A.B. 2008), involved the "use in commerce" element of federal trademark law. In *In re DSM Pharmaceuticals*, the Trademark Trial and Appeal Board

stated that "[w]here the mark is used in advertising the services, the specimen must show a direct association between the proposed mark and the services for which registration is sought," 87 U.S.P.Q.2d, at *1, and here Zamfir alleges that he used the Casper trademark "in connection with the sale or advertising of consulting services to support implementation of the Casper CBC protocol in commercial products and *services* offered in the United States." (*See* FAC ¶ 31 (emphasis added).) This is not a case where the trademark bears "no reference to, or association with" the consulting service at issue. *See In re DSM Pharms.*, 87 U.S.P.Q.2d, at *1. Defendant's motion to dismiss the trademark infringement claims is therefore **DENIED**.

## II.     Counts 5 and 6: Cancellation of CasperLabs' Trademarks

Next, Zamfir asks that this Court cancel CasperLabs' two trademark registrations. (*See* FAC ¶¶ 108–20.) Zamfir claims that since he used the name "Casper" before CasperLabs, the latter's use of the trademarked name is likely to cause confusion and "falsely suggest[] a connection with Zamfir in violation of 15 U.S.C. 1052(a)." (*See* FAC ¶¶ 109–11; Opp'n at 22.) In response, CasperLabs argues that Zamfir has not used the name "Casper" as his name or identity. (*See* Mem. at 12.)

Under Section 2(a) of the Lanham Act, 15 U.S.C. § 1052(a), a person or entity may "challenge a trademark filing where it falsely suggests a connection with another person, corporation or institution." *See Patagonia, Inc. v. Anheuser-Busch, LLC*, No. 2:19-CV-02702-VAP-JEMx, 2019 WL 8754735, at *6 (C.D. Cal. Sept. 3, 2019). The moving party bears the burden of showing four elements:

(1)   that the defendant's mark is the same or a close approximation of plaintiff's previously used name or identity;

(2)   that the mark would be recognized as such;

(3)   that the plaintiff is not connected with the activities performed by the defendant under the mark; and

(4) that the plaintiff's name or identity is of sufficient fame or reputation that when the defendant's mark is used on its goods or services, a connection with the plaintiff would be presumed.

*Id.* CasperLabs argues that Zamfir fails to allege the first three required elements. (*See* Mem. at 12–14.) First, CasperLabs argues that Zamfir has not shown that he used "Casper" as his name or identity and, based on a string of cases from the Trademark Trial and Appeal Board, claims that the use of "Casper" to refer to a "business, product or research" is not enough. (*See id.* at 12.) Second, CasperLabs argues that the First Amended Complaint fails to allege enough facts to show that the name "Casper" points "uniquely and unmistakably" to Zamfir. (*See id.* at 13.) Rather, CasperLabs argues that Zamfir used the name "Casper" as a parody of an existing protocol at the time, "GHOST," and that his former research partner, Vitalik Buterin, also called his research "Casper the Friendly Finality Gadget." (*See id.*) According to CasperLabs, this shows that the name, "Casper," does not trace back to Zamfir "uniquely and unmistakably." (*See id.*)

The first ground is sufficient to dismiss this claim. The First Amended Complaint does not set forth enough facts to show that "Casper" has become associated with Zamfir's name and identity. Here, Zamfir alleges that he has used the Casper trademark "in connection with the sale or advertising of consulting services." (*See* FAC ¶ 31.) Zamfir also alleges that he "uses the CBC Casper and Casper name exclusively when communicating his work" to the "wider public." (*See id.* ¶ 23.) Zamfir's own allegations therefore suggest that "Casper" refers to his consulting services, not his personal name and identity. *See Cavern City Tours Ltd v. Hard Rock Cafe Int'l (USA), Inc.*, No. 6:12-CV-1410-ORL31DAB, 2014 WL 12609871 (M.D. Fla. Oct. 31, 2014) (finding that the evidence submitted by plaintiff, including articles and book excerpts, "provide very little, if any, support" for the claim that the trademarked name was the plaintiff's identity or persona). At best, Zamfir cites a blockchain community blogsite called "Blockgeeks" that states, "Vlad Zamfir is often credited as being the 'Face of Casper,'" (*see* FAC ¶ 35), but one post on one blogsite is not enough to suggest that "Casper" has become Zamfir's name

and identity. In fact, the rest of the articles he cites uses "Casper" to refer to his work. (*See id.*) As a result, this claim cannot survive CasperLabs' Motion to Dismiss.

### III. Counts 1 and 4: False Association Under Lanham Act § 43(a) and Unfair Competition

Lastly, CasperLabs moves to dismiss Zamfir's claims for false association and unfair competition. (*See* Mem. at 14–24.) To state a claim for false association, which is sometimes called false designation of origin, Zamfir must allege the following five elements:

(1) defendant uses a designation (any word, term, name, device, or any combination thereof) or false designation of origin;

(2) the use was in interstate commerce;

(3) the use was in connection with goods or services;

(4) the designation or false designation is likely to cause confusion, mistake, or deception as to (a) the affiliation, connection, or association of defendant with another person[;] or (b) as to the origin, sponsorship, or approval of defendant's goods, services, or commercial activities by another person; and

(5) the plaintiff has been or is likely to be damaged by these acts.

*United Tactical Sys., LLC v. Real Action Paintball, Inc.*, 143 F. Supp. 3d 982, 1015 (N.D. Cal. 2015).

CasperLabs moves to dismiss based on the last two elements. (*See* Mem. at 15–24.) In particular, CasperLabs argues that Zamfir's claims should be dismissed because: (1) Zamfir fails to allege whether the confusion was caused by CasperLabs's use of the trademarked name or their actual association together; (2) CasperLabs owns a trademark registration in the Casper mark, so its use cannot constitute false association; and (3) Zamfir does not allege any harm. (*See id.*) The Court agrees that Zamfir has failed to sufficiently allege he suffered a cognizable harm.

/ / /

### A. Likelihood of Confusion

CasperLabs argues that the resulting confusion from the use of the name "Casper" does not stem from Zamfir's products and services but rather the previous association that they shared as business partners. (*See* Mem. at 15–17.) That argument is unconvincing.

The First Amended Complaint adequately alleges that CasperLabs' use of the name "Casper" has caused confusion and association with Zamfir—independent of his work with CasperLabs. For example, Zamfir provides several tweets that suggest public confusion due to CasperLabs' use of the name "Casper." (*See* FAC ¶ 71.) In particular, Zamfir points to tweets that state CasperLabs should try to "distinguish themselves and perhaps change their names, it just confuses people" and another stating that he had seen emails from CoinList and "was planning to start research for the sale *solely* because it's called CasperLabs and I assumed you [Zamfir] were running it." (*See id.* (emphasis added).) These tweets suggest that use of the name "Casper" has caused confusion—not any work that Zamfir did with CasperLabs.

In any case, even if some tweets may suggest, as CasperLabs argues, that the confusion may stem from their previous relationship, at this stage the Court must view all facts and draw all inferences in favor of Zamfir. *See, e.g.*, *Knevelbaard Dairies v. Kraft Foods, Inc.*, 232 F.3d 979, 984 (9th Cir. 2000) ("In ruling on [a Rule 12(b)(6)] motion, 'the court must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party.'" (quoting *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987))). Here, these tweets set forth a plausible claim that CasperLabs' use of the name "Casper" has led to confusion. Thus, the cases that CasperLabs cites, namely *Varsity News Network, Inc. v. Carty Web Strategies, Inc.*, No. CV 17-2574 PSG (EX), 2018 WL 6137189 (C.D. Cal. Feb. 13, 2018), and *Archi's Acres, Inc. v. Whole Foods Market Service, Inc.*, No. 19-CV-2478 JLS (MSB), 2021 WL 424286, at *4 (S.D. Cal. Feb. 8, 2021), are inapposite. In those cases, the court found that the allegations themselves linked the confusion to the previous association between the plaintiff and defendants. Here, that is not the case.

### B.     Damages

Ultimately, Zamfir fails to allege the final element - damages. As relevant here, CasperLabs argues that because Zamfir fails to allege a commercial injury, like lost sales or actual damage to his brand, his false designation of origin claim fails. (*See* Mem. at 21–24.) Due to the false association, Zamfir describes his damages as (1) having to take extra caution with using the name "Casper" to avoid unintentionally promoting CasperLabs, which makes it harder to "market the genuine products of his research;" (2) reputational harm related to his blockchain work; and (3) having trouble obtaining funding due to the "false association" between him and CasperLabs. (*See* FAC ¶¶ 69–70.)

None of these adequately alleges damages. To begin, the Parties dispute whether commercial damages must be alleged; however, that makes no difference here. Either way, as Judge Curiel noted, "Plaintiff points to no specific instance in which he had difficulty seeking funding as a result of the purported affiliation with Defendant, nor does he identify any present impact on the credibility of his research in anything other than generalized terms." *See Zamfir v. Casperlabs, LLC*, No. 21CV474-GPC(AHG), 2021 WL 1164985, at *10 (S.D. Cal. Mar. 26, 2021). Contrary to Zamfir's claims, this is not about a factual dispute regarding the harms that he has suffered, but whether he has alleged sufficient facts to proceed to discovery.

Zamfir cites *Ullah v. Linkenauger*, No. 120CV00634AJTJFA, 2020 WL 9459338, at *4 (E.D. Va. Oct. 2, 2020), to argue that, like the plaintiff there, he has sufficiently commercialized the trademark and that CasperLabs' use of the trademarked name is impeding his work. (*See* Opp'n at 20–21.) But that argument misses the point. In *Ullah*, the court noted that the plaintiff had "alleged facts from which to draw a reasonable inference that he has sufficiently commercialized his name and image to establish a market presence and that his opportunities to independently market his image and name has been adversely affected by the false association created by Defendants' conduct." *See* 2020 WL 9459338, at *6. This discussion took place in the context of whether, in the Fourth Circuit, the plaintiff must allege celebrity status to assert a Section 43 false association claim. Here,

the issue is not whether Zamfir has sufficiently alleged his presence in the market, but rather the harm that he is suffering. Zamfir also cites *Homeland Housewares, LLC v. Sharkninja Operating LLC*, No. CV1403954DDPMANX, 2016 WL 4154676, at *2 (C.D. Cal. Aug. 2, 2016), in which the court found that reputation injury had been sufficiently established, but that was on a motion for summary judgment, where the court had *evidence* of injury before it. Here, on a motion to dismiss, Zamfir must provide sufficient factual allegations to support his alleged harm. He has not done so. As a result, the Court **DISMISSES** Zamfir's first and fourth causes of action.

## CONCLUSION

For the reasons set forth above, the Court **DENIES** CasperLabs' Motion to Dismiss as it relates to Zamfir's second and third causes of action for trademark infringement and **GRANTS** the Motion to Dismiss as to Zamfir's remaining claims. Zamfir **MAY FILE** an amended complaint curing the above-identified deficiencies within twenty-one (21) days of the electronic docketing of this Order. *Should Zamfir decline to file an amended complaint within the time provided, this action will proceed as to Zamfir's surviving causes of action.*

**IT IS SO ORDERED.**

Dated: February 15, 2022

_____
Honorable Todd W. Robinson
United States District Judge