1   Jennifer A. Golinveaux (SBN 203056)     ROTHWELL FIGG ERNST &
    jgolinveaux@winston.com                 MANBECK P.C.
2   Thomas J. Kearney (SBN 267087)          Christopher Ott (SBN 235659)
    tkearney@winston.com                    cott@rothwellfigg.com
3   Irina V. Lyapis (SBN 298723)            16501 Los Barbos
    ilyapis@winston.com                     Rancho Santa Fe, CA 92067
4   WINSTON & STRAWN LLP                    (202) 783-6040
    101 California Street, 35th Floor
5   San Francisco, CA  94111-5840           Leo M. Loughlin (*pro hac vice*)
    Telephone:   (415) 591-1000             (DC Bar No. 474963)
6   Facsimile:   (415) 591-1400             (lloughlin@rfem.com)
                                            Jennifer Maisel (*pro hac vice*)
7   David Enzminger (SBN 137065)            (DC Bar No. 1025637)
    denzminger@winston.com                  (jmaisel@rfem.com)
8   WINSTON & STRAWN LLP                    Rachel Echols (pro hac vice)
    333 South Grand Avenue, 38th Floor      (DC Bar No. 991630)
9   Los Angeles, CA  90071-1543             (rechols@rfem.com)
    Telephone:   (213) 615-1700
10  Facsimile:   (213) 615-1750

11  *Attorneys for Plaintiff*

12

13                  **UNITED STATES DISTRICT COURT**

14                  **SOUTHERN DISTRICT OF CALIFORNIA**

15

16   VLAD ZAMFIR,                          Case No. 3:21-cv-00474-TWR-AHG

17              Plaintiff,                  **PLAINTIFF'S OPPOSITION TO**
                                            **DEFENDANT'S MOTION TO DISMISS**
18        v.                                **SECOND AMENDED COMPLAINT**

19   CASPERLABS, LLC,                       **Complaint filed: March 17, 2021**

20              Defendant.
                                            Hearing Date: Aug. 18, 2022
21                                          Time: 1:30 p.m.
                                            Courtroom:  3A
22                                          Judge: Hon. Todd W. Robinson
23

24                                          Original Complaint Filed: March 17, 2021
25                                          Trial Date: Not Yet Set

26

27

28

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ............................................................................................1

II.  THE SAC'S ALLEGATIONS.........................................................................2

  A.   Zamfir's Adoption and Use of the Casper Mark Since 2015 ...................2

  B.   CLL's Misappropriation of the Casper Mark .............................................3

  C.   Consumer Confusion and Damages............................................................4

III. ARGUMENT AND AUTHORITIES ...........................................................5

  A.   The SAC (Still) Adequately Alleges Infringement of Zamfir's
       Casper Mark (Counts 2 and 3) .................................................................5

    1.   CLL's Motion to Dismiss Zamfir's Trademark Infringement
         Claims Is Barred by the Law of the Case ......................................6

    2.   CLL's Repackaged Arguments Are an Improper Request for
         Reconsideration of the Court's Prior Order....................................6

    3.   CLL's "New" Arguments Lack Merit ............................................7

  B.   The SAC's Claims for Cancellation of CLL's Trademark
       Registrations (Counts 5 and 6) Are Well Pleaded .................................10

  C.   The SAC's False Association Claims Are Well Pleaded
       (Counts 1, 4)............................................................................................11

    1.   The SAC Adequately Alleges CLL's Ongoing Use of a False
         Designation of Origin ...................................................................12

    2.   The SAC Adequately Alleges Concrete and Particularized Harm
         Caused by the False Association ...................................................13

  D.   The SAC Adequately Pleads a Violation of California's Unfair
       Competition Law, Bus. & Prof. C. § 17200 *et seq.* ("UCL")
       (Count 7) .................................................................................................15

    1.   The SAC Readily Meets the UCL's Territoriality Requirement...15

    2.   The SAC Adequately Alleges Damages Under the UCL..............17

  E.   The SAC Adequately Pleads Fraud (Count 8)........................................19

    1.   Zamfir Has Standing to Bring His Fraud Claim...........................19

    2.   The SAC Meets the Legal Standard for Pleading Fraud ..............20

      (a) The SAC Adequately Alleges CLL's Knowledge .....................20

      (b) The SAC Adequately Alleges CLL's Deceit ............................21

      (c) The SAC Adequately Alleges Zamfir's Justifiable Reliance on
          CLL's Misrepresentations ...........................................................23

i

(d) The SAC Adequately Alleges Damages ......................................25

**IV.    CONCLUSION ....................................................................................25**

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*AllChem Performance Prods., Inc. v. Oreq Corp.*,
  2013 WL 12131737 (C.D. Cal. Nov. 5, 2013) ................................................... 15

*Alliance Mortgage Co. v. Rothwell*,
  10 Cal. 4th 1226 (1995) .................................................................................... 25

*Am. Soc'y of Anesthesiologists v. BevMD, LLC*,
  2016 WL 4257448 (S.D. Cal. Mar. 31, 2016) ................................................... 18

*U.S. ex rel. Anita Silingo v. WellPoint, Inc.*,
  904 F.3d 667 (9th Cir. 2018) ............................................................................. 20

*Archi's Acres, Inc. v. Whole Foods Mkt. Serv., Inc.*,
  2021 WL 424286 (S.D. Cal. Feb. 8, 2021) ........................................................ 13

*Ashcroft v. Iqbal*,
  556 US 662 (2009) ............................................................................................. 20

*B&B Hardware, Inc. v. Hargis Indus., Inc.*,
  135 S. Ct. 1293 (2015) ....................................................................................... 11

*Beach v. Briganti*,
  2014 WL 5141651 (Cal. App. Oct. 14, 2014) ................................................... 20

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................................. 5

*Black v. Shearson, Hammill & Co.*,
  266 Cal. App. 2d 362 (1968) ............................................................................. 21

*Bosley Med. Inst., Inc. v. Kremer*,
  403 F.3d 672 (9th Cir. 2005) ............................................................................... 8

*Central Mfg. Co. v. Brett*,
  2005 WL 2445898 (N.D. Ill. Sept. 30, 2005), *aff'd*, 492 F.3d 876 (7th
  Cir. 2007) ........................................................................................................... 11

*Churchill Village, L.L.C. v. General Elec. Co.*,
  169 F. Supp. 2d 1119 (N.D. Cal. 2000) ..................................................... 16, 17

*Cooper v. Pickett*,
  137 F. 3d 616 (9th Cir. 1997) ..................................................................... 21

*Dep't of Parks & Rec. for State of Cal. v. Bazaar Del Mundo Inc.*,
  448 F.3d 1118 (9th Cir. 2006) ...................................................................... 9

*In re DSM Pharmaceuticals*,
  87 U.S.P.Q.2d 1623 (T.T.A.B. 2008) ............................................................ 8

*Engalla v. Permanente Med. Grp., Inc.*,
  15 Cal. 4th 951 (1997) ............................................................................... 22

*In re Ferrero Litig.*,
  794 F. Supp. 2d 1107 (S.D. Cal. 2011) ....................................................... 23

*Franklin Fueling Sys. v. Veeder–Root Co.*,
  2009 WL 2462505 (E.D. Cal. 2009) ........................................................... 23

*Grossman v. Norvell*,
  120 F.3d 1112 (10th Cir. 1997) .................................................................. 23

*Henderson v. Lindland*,
  13 WL 1181957 (C.D. Cal. Mar. 21, 2013) ............................................... 11

*Hinojos v. Kohl's Corp.*,
  718 F.3d 1098 (9th Cir. 2013) ............................................................... 18, 19

*In re iPhone 4S Consumer Litig.*,
  2013 WL 3829653 (N.D. Cal. July 23, 2013) ............................................. 16

*Jack Russell Terrier Network of N. Ca. v. Am. Kennel Club, Inc.*,
  407 F. 3d 1027, 1037 (9th Cir. 2005) ......................................................... 15

*Jerome's Furniture Warehouse v. Ashley Furniture Indus., Inc.*,
  2021 WL 1541649 (S.D. Cal. Apr. 20, 2021) ............................................. 18

*Jolley v. Chase Home Fin., LLC*,
  213 Cal. App. 4th 872 (2013) ............................................................... 22, 23

*KnowledgePlex, Inc. v. Placebase, Inc.*,
  2008 WL 5245484 (N.D. Cal. Dec. 17, 2008) ............................................ 20

*Kwikset Corp. v. Sup. Ct.*,
  51 Cal. 4th 310 (2011)..........................................................................17, 18, 19

*Lazar v. Superior Ct.*,
  12 Cal. 4th 631 (1996)................................................................................21, 22

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
  572 U.S. 118 (2014)...........................................................................................14

*Maine Springs, LLC v. Nestle Waters N. Am., Inc.*,
  2015 WL 1241571 (D. Maine Mar. 18, 2015) ............................................14, 15

*Marco Bicego S.P.A. v. Kantis*,
  2017 WL 2651985 (N.D. Cal. June 20, 2017) ...................................................15

*In re Mattel, Inc.*,
  588 F. Supp. 2d 1111 (C.D. Cal. 2008).........................................................16, 17

*Max. Availability Ltd. v. Vision Sols., Inc.*,
  2010 WL 11508471 (C.D. Cal. Sept. 20, 2010)..................................................19

*Millennium Dental Techs. Inc. v. Terry*,
  2018 WL 5094965 (C.D. Cal. July 16, 2018) ....................................................18

*Monster Daddy, LLC v. Monster Cable Prods., Inc.*,
  2011 WL 494626 (D.S.C. Feb. 7, 2011) .............................................................11

*In re Moody's Investor Service Inc.*,
  13 U.S.P.Q.2d 2043 (T.T.A.B. 1989)....................................................................9

*Mystique, Inc. v. 138 Intern., Inc.*,
  601 F. Supp. 2d 1320 (S.D. Fla. 2009)................................................................11

*In re Nicklaus Co. LLC*,
  2010 WL 2513869 (T.T.A.B. 2010)......................................................................9

*Nw. Mortgage, Inc. v. Sup. Ct.*,
  72 Cal. App. 4th 214 (1999) ...............................................................................16

*Obesity Rsch. Inst., LLC v. Fiber Rsch. Int'l, LLC*,
  165 F. Supp. 3d 937 (S.D. Cal. 2016) ................................................................12

*Oregon Pub. Empl. Ret. Fund v. Apollo Group*,
  774 F.3d 598 (9th Cir. 2014) ..............................................................................23

v

*Parks v. Eastwood Ins. Servs., Inc.*,
  2002 WL 34370244 (C.D. Cal. July 29, 2002) ........................................... 16, 17

*Pinkette Clothing, Inc. v. Cosmetic Warriors Ltd.*,
  894 F.3d 1015 (9th Cir. 2018) ...................................................................... 10

*Prouty v. Gores Tech. Grp.*,
  121 Cal. App. 4th 1225 (2004) ...................................................................... 20

*In re Qualcomm Litig.*,
  2017 WL 5985598 (S.D. Cal. Nov. 8, 2017) .................................................. 18

*Rise Basketball Skill Dev., LLC v. K Mart Corp.*,
  2017 WL 2775030 (N.D. Cal. June 27, 2017) ................................................ 18

*Small v. Fritz Cos., Inc.*,
  30 Cal. 4th 167 (2003) ................................................................................... 24

*Stahl Law Firm v. Judicate West*,
  2013 WL 6200245 (N.D. Cal. Nov. 27, 2013) ............................................... 14

*Storm Mfg. Grp. Inc. v. Weather Tec Corp.*,
  2013 WL 5352698 (C.D. Cal. Sept. 23, 2013) ............................................... 18

*Sutter v. Gen. Petroleum Corp.*,
  28 Cal. 2d 525 (1946) .................................................................................... 20

*Swift Harvest USA, LLC v. Boley Int'l HK Ltd.*,
  2020 WL 7380148 (C.D. Cal. Sept. 22, 2020) ............................................... 14

*Ticketmaster L.L.C. v. Prestige Ent. W., Inc.*,
  315 F. Supp. 3d 1147 (C.D. Cal. 2018) ........................................................... 6

*Tidenberg v. Bidz.com, Inc.*,
  2009 WL 605249 (C.D. Cal. Mar. 4, 2009) ................................................ 16, 17

*United States v. Lummi Indian Tribe*,
  235 F.3d 443 (9th Cir. 2000) ........................................................................... 6

*United States v. Manion*,
  339 F.3d 1153 (9th Cir. 2003) ....................................................................... 22

*United Tactical Sys., LLC v. Real Action Paintball, Inc.*,
  143 F. Supp. 3d 982 (N.D. Cal. 2015) ........................................................... 12

*In re Universal Oil Prods. Co.*,
  476 F.2d 653 (C.C.P.A. 1973) ............................................................................. 8

*Upper Deck Co. v. Panini Am., Inc.*,
  469 F. Supp. 3d 963 (S.D. Cal. 2020) .................................................................. 5

*Van Steenwyk v. Van Steenwyk*,
  2021 WL 4815212 (C.D. Cal. Mar. 23, 2021) ................................................... 19

*Varsity News Network, Inc. v. Carty Web Strategies, Inc.*,
  2018 WL 6137189 (C.D. Cal. Feb. 13, 2018) .................................................... 13

*Walker v. USAA Cas. Ins. Co.*,
  474 F. Supp. 2d 1168 (E.D. Cal. 2007) ........................................................ 18, 19

*Willson v. Municipal Bond Co.*,
  7 Cal. 2d 144 (1936) ........................................................................................... 23

*Zamfir v. CasperLabs, LLC*,
  2021 WL 1164985 (S.D. Cal. Mar. 26, 2021) ................................................... 12

**Statutes**

15 U.S.C. 1052(d) ............................................................................... 1, 10, 11

15 U.S.C. § 1052(a) .................................................................................... 10

15 U.S.C. §1060(a)(1) ................................................................................ 25

15 U.S.C. § 1064 ........................................................................................ 10

15 U.S.C. § 1119 ........................................................................................ 10

15 U.S.C. § 1125 ........................................................................................ 14

15 U.S.C. § 1125(a)(1)(A) ..................................................................... 14, 16

15 U.S.C. § 1125(a)(1)(B) ........................................................................ 15

15 U.S.C. § 1127 .......................................................................................... 8

Cal. Bus. & Prof. C. § 17200 *et seq.* ..................................................*passim*

Cal. Bus. & Prof. C. § 17203 .................................................................... 19

Cal. Bus. & Prof. C. § 17204 ................................................................17, 19

Cal. Civ. C. § 1709 ......................................................................................22

Cal. Civ. C. § 1710 (1)................................................................................22

Cal. Civ. C. § 1710 (2)................................................................................22

CivLR 7.1.i.1 ...........................................................................................6, 7

**Other Authorities**

5 Witkin, Summary 11th Torts § 894 (2022) ............................................22

Fed. R. Civ. P. 9(b) ..............................................................19, 20, 21, 22

Fed. R. Civ. P. 11(b)(1) ...............................................................................7

Fed. R. Civ. P. 12(b)(6) ...............................................................................5

3 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair
Competition* § 20:53 ............................................................................11

U.S. Const. art. III ......................................................................................14

# I.     INTRODUCTION

On February 15, 2022, the Court issued an Order denying-in-part CLL's motion to dismiss Plaintiff Zamfir's First Amended Complaint ("FAC"). The Court held that Zamfir's trademark infringement claims (Counts 2 and 3) were well pled and declined to dismiss them. And while the Court's Order dismissed Zamfir's false association and unfair competition claims (Counts 1 and 4) without prejudice, it did so *solely* on the issue of damages, after holding that Zamfir "adequately allege[d] that CasperLabs' use of the name 'Casper' has caused confusion and association with Zamfir—independent of his work with CasperLabs[.]" ECF 50 ("Order") at 11.

The Court granted Zamfir leave to amend to cure the identified deficiencies, Order at 13, and to add additional, related claims, ECF 62. Notwithstanding the Court's clear ruling establishing the adequacy of Zamfir's allegations, CLL then moved to dismiss *all* the SAC's claims, *including* both surviving trademark infringement claims, *and* the "confusion and association" allegations that the Court had expressly held were adequate. The Motion cites no new arguments, facts, or authority regarding these claims: instead, it simply reiterates arguments the Court has already rejected. CLL's Motion is flatly contrary to the law of the case established by the Court's previous Order, and the latest in a series of efforts to delay this case—which was filed more than a year ago on March 17, 2021—from moving forward. At best, it is a thinly veiled attempt—procedurally improper and substantively lacking—to seek reconsideration. Rather than reward CLL's delay tactics, the Court should deny the Motion in its entirety.

The Motion should also be denied on the merits. As the Court instructed, the SAC addresses the "identified deficiencies" with specific allegations, including allegations of lost business opportunities due to the false association created by CLL's use of Casper. With respect to Counts 5 and 6 for cancellation of CLL's fraudulently obtained trademarks—which the Court also granted leave to amend, Order at 13—the SAC clarifies that Zamfir's claims are based on his prior use in commerce of the Casper marks under 15 U.S.C. § 1052(d). Counts 5 and 6 thus mirror Zamfir's trademark

infringement claims (Counts 2 and 3), for which the Court has already held Zamfir adequately pleads prior use in commerce: as such, Counts 5 and 6 are adequately pled.

CLL's Motion should also be denied with respect to new claim 7 (violation of California's Unfair Competition Law, or "UCL") and claim 8 (fraud by intentional misrepresentation). CLL's specious arguments against Zamfir's standing for these claims, its argument that Zamfir fails to sufficiently allege UCL damages, *and* its claim that Zamfir must allege CLL's knowledge for purposes of fraud "with particularity," are all based on misstatements of the applicable legal standards, and fatally flawed. The SAC adequately alleges each challenged element of its UCL and fraud claims.

The factual and legal flaws of CLL's Motion are numerous and glaring, and it is devoid of substantive merit. The Court should deny it.

## II.   THE SAC'S ALLEGATIONS

### A.   Zamfir's Adoption and Use of the Casper Mark Since 2015

In or around March 2015, Zamfir coined the name "Casper" for a new "security-deposit based economic consensus protocol" for use in blockchain systems. SAC ¶¶ 18-19, Ex. A at 2. The name Casper "was a…parodied adaptation of the name of an existing protocol at that time, referred to as GHOST." *Id.* ¶ 19. Since then, Zamfir has continuously promoted, developed, distributed, and sold blockchain proof-of-stake (PoS) protocol products and services in connection with the Casper mark throughout the blockchain industry. *Id.* ¶¶ 20, 31-32, 69, 76. For example, Zamfir used the Casper mark in connection with consulting services to support implementation of the CBC Casper protocol. *Id.* ¶ 31. Zamfir also provided blockchain services in connection with the Casper mark to the Ethereum Foundation and RChain Cooperative. *Id.* ¶ 32; Exs. K-L. More recently, Zamfir provided such services to CLL to implement the CBC Casper protocol in another blockchain. Indeed, the Research Agreement between Zamfir's company and CLL's parent company describes Zamfir's work as "related to a family of proof-of-stake consensus protocols, ***known as 'CBC Casper' and Casper compliant composite sharding***." *Id.* ¶ 39 (emphasis added). In addition to promoting

his consulting services in connection with the Casper mark to blockchain industry leaders, since 2017 Zamfir has prominently distributed software in connection with the Casper mark through GitHub, a "global platform … that allows developers and companies to build, ship, and maintain software [and] currently has over 65 million developers, 200 million repositories, and is widely accessible to consumers in the United States." *Id*. ¶¶ 26-27.

The consuming public strongly associates Zamfir's products and services with the Casper mark, viewing Zamfir as the "Face of Casper" and "the lead developer of one strand of Casper," and remarking how his "project (codenamed Casper) could pave the way for masses of ordinary internet users to join in the craze." *Id*. ¶ 35. Zamfir's Casper branded services and software have earned him a spot as one of the "100 Most Influential People in Crypto" and mention in numerous media outlets. *Id*.

### B.   CLL's Misappropriation of the Casper Mark

In late 2018, after Zamfir had spent years continuously and openly using the Casper name and mark, CLL approached Zamfir about collaborating on research and development of a new blockchain centered on the adoption of Zamfir's CBC Casper PoS protocol. SAC ¶ 37. In February 2019, Zamfir and CLL entered into research and licensing agreements. *Id*. ¶¶ 38-40. The agreements did not contemplate CLL's use of the Casper mark. On several occasions CLL asked Zamfir's permission to use "Casper" for its products, but Zamfir refused and made clear to CLL that the name should not be used to brand any of CLL's planned blockchain releases. *Id*. ¶¶ 49-50.

In July 2019, CLL acknowledged Zamfir's objections to its use of the Casper mark, and represented to Zamfir that it would try to secure the Casper mark for him. SAC ¶¶ 60, 61. CLL intended that Zamfir would rely on its representations in light of their business relationship; Zamfir predictably and reasonably did so. *Id.* ¶¶138, 140. Contrary to its representations, CLL then proceeded to register the Casper mark in its own name and use the mark for its own benefit, harming Zamfir by, *inter alia*, depriving him of his exclusive ownership rights to the mark. SAC ¶¶ 65, 66. CLL's

representations were false at the time the communication was made, including because it misrepresented to Zamfir that it would be "very tough" to trademark Casper, even though CLL knew that its CASPERLABS trademark application (for virtually identical services) had proceeded through substantive examination at the USPTO without encountering any significant hurdles to registration. SAC ¶ 134. CLL told Zamfir that its General Counsel, Varun Gupta, would lead the process of obtaining the Casper mark for Zamfir; Gupta later confirmed that CLL was "handling" it. Those statements were fraudulent: CLL filed a trademark application for the Casper mark in its own name, submitting screenshots of the CasperLabs website as evidence of its putative use of the CASPER mark in commerce. SAC ¶ 135. Zamfir did not learn about CLL's registrations until January 2021. *Id*. ¶ 67.

### C.  Consumer Confusion and Damages

CLL initially named its protocol specification the "Highway Protocol," but began referring to both its blockchain protocol and token as "Casper" in anticipation of its network launch and coin sale scheduled for March 23, 2021. SAC ¶¶ 51, 52. As that date approached, CLL increased its efforts to rebrand to Casper, alone or in combination with other generic terms, such as "Casper network," "Casper protocol," "Casper Highway Protocol," and "Casper blockchain." *Id*. ¶ 54.

CLL's team knew that using the Casper name for its blockchain products and services would likely create confusion with Zamfir's prior work: in a Telegram message thread dating back to February 2019, a member of CLL's team noted that "Casper for the name of the protocol seems like it will lead to confusion or at least be hard to explain in the long run," and another team member responded "I agree, the name carries so much significance today. Vlad is the POS architect after all." SAC ¶ 74. Predictably, confusion has in fact resulted. *Id*. ¶¶ 57, 71.

Accordingly, CLL's use of the Casper mark to advertise and market its own blockchain technology, and to promote its blockchain network and coin, are causing and will continue to cause confusion as to the source of the products and services,

4

leading customers to mistakenly believe CLL's Casper blockchain products and services are endorsed by or associated with Zamfir. *Id*. ¶ 69. Zamfir's name has already been associated with CLL's Casper-branded blockchain products in a way harmful to his reputation, especially since Zamfir has no control over them. *Id.* ¶ 70. Zamfir is regularly contacted by people who are confused about his affiliation with CLL's Casper-branded token sale and mainnet launch, and people falsely assume that Zamfir's ongoing Casper research is for CLL. *Id*. Zamfir has also had trouble seeking funding from an existing client, the Ethereum Foundation, because of industry confusion caused by the false association. SAC, ¶¶ 79-80. Because of CLL's unlawful actions, "people falsely assume that Mr. Zamfir's ongoing Casper research is for CasperLabs instead of being independent or for Ethereum," and "are given a false impression that Mr. Zamfir's research is being financed by some relationship with CasperLabs and that the fundamental research for the ecosystem that CBC Casper represents is funded, making it harder for him to secure funding." *Id*. ¶ 72.

## III.   ARGUMENT AND AUTHORITIES

A motion under Rule 12(b)(6) tests the legal sufficiency of the claims asserted in a complaint, which is only required to set forth a "short and plain statement of the claim showing that the pleader is entitled to relief," and "give the defendant fair notice of what the … claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "On a motion to dismiss, the Court accepts as true all facts alleged in the complaint and draws all reasonable inferences in favor of the plaintiff and determines whether the complaint alleges facts to state a claim that is plausible on its face." *Upper Deck Co. v. Panini Am., Inc.*, 469 F. Supp. 3d 963, 973 (S.D. Cal. 2020).

### A.   The SAC (Still) Adequately Alleges Infringement of Zamfir's Casper Mark (Counts 2 and 3)

CLL's Motion to dismiss Counts 2 and 3 must be denied. There can be no real question that the SAC adequately states a claim for trademark infringement: the Court's order so holding is the law of the case. Order at 7-8. Even if it were not, CLL's

arguments once again fail to persuade.

### 1. CLL's Motion to Dismiss Zamfir's Trademark Infringement Claims Is Barred by the Law of the Case

The Court's February 15, 2022 Order denied CLL's motion to dismiss Zamfir's second and third causes of action for trademark infringement, specifically holding that his allegations sufficiently alleged the "use in commerce" element of the claims. Order at 5-8, 13. Under the "law of the case" doctrine, "a court is generally precluded from reconsidering an issue previously decided by the same court" when the issue in question was "decided explicitly or by necessary implication in [the] previous disposition." *United States v. Lummi Indian Tribe*, 235 F.3d 443, 452 (9th Cir. 2000) (citations omitted); *Ticketmaster L.L.C. v. Prestige Ent. W., Inc.*, 315 F. Supp. 3d 1147, 1166 (C.D. Cal. 2018) (invoking law of the case doctrine to deny defendant's motion to dismiss claim an amended complaint that "[the] Court, in its prior Order, found … stated a claim[.]"). As relevant here, a court may decline to apply the law of the case doctrine if: the first decision was clearly erroneous; an intervening change in the law occurred; other changed circumstances exist; or a manifest injustice would otherwise result. *Lummi Indian Tribe*, 235 F.3d at 452-53 (citation omitted). CLL does not even attempt to argue that any exceptions apply, and plainly, none do.

### 2. CLL's Repackaged Arguments Are an Improper Request for Reconsideration of the Court's Prior Order

Even if the Court were inclined to consider CLL's repackaging of already-rejected arguments as a belated request for reconsideration—albeit a meritless, procedurally improper, and untimely[1] one—it should deny it. Under the Local Rules, if a motion "has been made to any judge and has been refused in whole or in part … and a subsequent motion … is made for the same relief in whole or in part[,]" the party or attorney seeking such relief must provide a sworn statement or certification explaining, *inter alia*, "what new or different facts and circumstances are claimed to exist which

---

[1] Any motion for reconsideration was required to be submitted within twenty-eight days after entry of the February 15th Order. CivLR 7.1.i.1.

did not exist, or were not shown, upon such prior application." CivLR 7.1.i.1. Absent

such explanation, it strongly appears that the Motion is, at least with respect to these

two claims, "presented for an[ ] improper purpose… to harass, cause unnecessary delay,

or needlessly increase the cost of litigation." Fed. R. Civ. P. 11(b)(1).

### 3.    CLL's "New" Arguments Lack Merit

CLL's motion to dismiss Zamfir's trademark infringement claims simply

repeats its earlier, failed arguments, in many cases practically word for word:

| Motion to Dismiss SAC | Previous Motion to Dismiss FAC[2] |
|---|---|
| "… not once does [Zamfir] allege that he called his services 'Casper.'" (Mot. 11:19) | "Zamfir does not allege his services were ever called 'Casper.'" (ECF 37.1 at 10) |
| "Just as Zamfir has no services called 'Casper,' he likewise has no trademarkable goods bearing that name." (Mot. 15:5-6) | "Zamfir … has not released—or even scheduled the release of—software products using th[e] ['Casper'] name." (ECF 37.1 at 7:3-5). |
| "Without a product or service called Casper, Zamfir cannot establish ownership of a trademark and cannot support a claim for trademark cancellation or infringement." (Mot. 11:21-22) | "Without a product [using the name 'Casper'], Zamfir cannot establish ownership of a trademark and so cannot support his claim for trademark infringement." (ECF 37.1 at 7:3-6) |
| "At most, Zamfir's allegations and exhibits show that he collaborated with others to help incorporate his underlying research ideas into a product called RChain, not Casper." (Mot. 16:21-23) | "At most, Zamfir's allegations and exhibits—attached without context or explanation—show that he helped incorporate his underlying research ideas into a product called RChain, not Casper." (ECF 37.1 at 10:13-14) |
| "Zamfir's claim to a trademark … makes particularly little sense here because Zamfir alleges that famed Ethereum developer Vitalik Buterin has been conducting similar research and has also | "His assertion of a trademark right from research alone makes particularly little sense here because Vitalik Buterin has been conducting similar research and has also used the name 'Casper' for that |

---

[2] CLL's prior arguments were extensively addressed in Zamfir's Opposition to CLL's previous Motion to Dismiss. ECF 46.

| | |
|---|---|
| used the name 'Casper' for that research. SAC ¶ 16. Zamfir fails to explain why he, not Buterin, would own such a mark." (Mot. 17:5-9) | research. FAC ¶ 20. Zamfir fails to explain why he, not Buterin, would own such a mark." (ECF 37.1 at 7:25-28) |

As the Court has already explained, "[w]hether the service is *called* 'Casper' is not the question… the 'real inquiry is whether the trademark was used *in connection* with a sale of goods or services.'" Order at 7 (*quoting Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672, 677 (9th Cir. 2005).[3] CLL's response is to insist *even more strenuously* that because "Zamfir's … consulting services were ***about*** Casper ***but not called*** 'Casper'[,]" this "doom[s] his … [trademark] infringement claims." Mot. 11:14-15, (emphasis in original). This is very nearly the opposite of what the Court has already held, but CLL doubles down, ignoring the Court's holding and black-letter law to insist, at length and incorrectly, that a service mark cannot be valid unless the service itself is "called" the mark or "named" the mark. *See, e.g.*, Mot. 11:14-15, 11:18-23, 12:15-16, 13:6-7, 14:1-2, 15:5-6. It attempts to support its rejected theory by citing and quoting cases (including cases that the Court has already informed it *do not apply*) that merely stand for the unremarkable proposition that a service mark must be used to "***identify***" the service. *See* Mot. 12:18, 12:21 (emphasis Defendant's). *See* Order at 7:25 (rejecting arguments based on *In re DSM Pharmaceuticals*, 87 U.S.P.Q.2d 1623 (T.T.A.B. 2008), and *In re Universal Oil Prods. Co.*, 476 F.2d 653 (C.C.P.A. 1973)).

CLL's claim that "the USPTO has repeatedly confirmed that services about a named product but not called by that name cannot support a service mark," Mot. 14, is flatly wrong: its cited cases merely state that a service mark must be used in commerce to "identify" the specified services. Not only are all of these cases procedurally and factually distinguishable, but they are entirely consistent with this Court's holding that Zamfir need only show commercial use "in connection with" his goods and services,

---

[3] The Lanham Act is to the same effect, defining a "service mark" as a mark "*used* in the sale or advertising of services to *identify* the services of one person and distinguish them from the services of others." 15 U.S.C. § 1127 (emphases added).

rather than that the services were "called" Casper. Order at 13-14. *See Dep't of Parks & Rec. for State of Cal. v. Bazaar Del Mundo Inc.*, 448 F.3d 1118, 1126 (9th Cir. 2006) (finding no likelihood of success on the merits because the evidence relied upon was "not evidence of commercial use of the marks by the State *in connection with* … [its] tourism and recreational activities") (emphasis added); *In re Nicklaus Co. LLC*, 2010 WL 2513869, at *1 (T.T.A.B. 2010) (addressing whether evidence demonstrated service mark use at all, and confirming that "[s]ervice mark use includes use of the mark in rendering the service"); *In re Moody's Investor Service Inc.*, 13 U.S.P.Q.2d 2043, at *5 (T.T.A.B. 1989) (mark was not associated with the financial services, but rather a symbol used to designate risk). None of these authorities warrant alteration of the Court's prior holding, based on the same allegations, that Zamfir's trademark infringement claims are adequately pled.

There is no more merit to CLL's extended arguments, rehashing the same allegations that the Court has already found sufficient, that Zamfir fails to show any "sale or distribution of a good marked 'Casper'," or that his alleged use was merely an "idea," or that he "collaborated with others." *See* Mot. 14:23-17:16. As the Court has already explained: "evidence of actual sales, or lack thereof, is not dispositive in determining whether a party has established 'use in commerce.'" Order at 5.[4] The complaint alleges more than "just an idea," *id.* at 7, and Zamfir actually used the Casper mark in commerce in the open source and blockchain communities prior to CLL, sufficiently establishing "use in commerce" in the industry, *id.* at 8 (citing FAC ¶ 31, which is re-alleged verbatim in SAC ¶ 31). As a matter of elementary logic, the Court's holding is not undermined by Zamfir's pleading of *additional, entirely consistent* facts.

Finally, CLL's convoluted theory that the SAC's allegations somehow "confirm" an "acknowledgment" that CLL was the first to use "Casper" as a mark does not withstand scrutiny. Its conclusory, unsupported claim appears to be that Zamfir's fraud

---

[4] Thus, CLL's argument that "Zamfir never had a finished good or service *called* 'Casper'" "misses the point." *Id.* at 6 (emphasis added).

allegations somehow undermine his trademark infringement and cancellation claims—but a straightforward reading of the SAC demonstrates that this is not the case.

"This is not a case where the trademark bears 'no reference to, or association with' the consulting service at issue." Order at 8. There has been no change in the facts or the law, and CLL's newly-cited (but inapposite) cases were available before CLL filed its original motion to dismiss the FAC. CLL's Motion should be denied as to Counts 2 and 3 for the same reasons articulated in the Court's prior order, including because, as the Court previously held, "Zamfir has alleged enough to show that he used 'Casper' for his consulting *services*." Order at 7 (emphasis in original).

### B.   The SAC's Claims for Cancellation of CLL's Trademark Registrations (Counts 5 and 6) Are Well Pleaded

This Court has the authority to cancel CLL's trademark registrations, on "'any ground that would have prevented registration in the first place…,' including that there exists a 'likelihood of confusion between the mark sought to be canceled and a mark for which the party seeking cancellation can establish either prior use or prior registration.'" *Pinkette Clothing, Inc. v. Cosmetic Warriors Ltd.*, 894 F.3d 1015, 1021 (9th Cir. 2018); *see* 15 U.S.C. §§ 1064, 1119.

Because Zamfir's trademark cancellation claims under Lanham Act § 2(d)[5] mirror his allegations for trademark infringement, they are also sufficient to adequately plead claims for trademark cancellation. CLL's arguments to the contrary are tied to, and identical with, its arguments against Zamfir's trademark infringement claims (Counts 2 and 3). But as discussed above, those claims have already survived one motion to dismiss, and are sufficiently pled. As the Court previously held, Zamfir has

---

[5] Zamfir's FAC alleged two separate grounds for cancellation of CLL's trademark registrations: (1) Zamfir has prior use in commerce, and concurrent use by both entities is likely to cause confusion, *i.e.*, Lanham Act § 2(d); and (2) CLL's use in commerce of the Casper name falsely suggests a connection with Zamfir in violation of 15 U.S.C. § 1052(a), *i.e.*, Lanham Act § 2(a).  CLL's motion to dismiss the FAC was limited to § 1052(a).  It had not contested Zamfir's cancellation claims based on § 1052(d), and thus the Court's order granting the motion to dismiss counts 5 and 6 of the FAC likewise only addressed the parties' § 1052(a)—but not § 1052(d)—arguments.

sufficiently pled prior use and likelihood of confusion in the market.[6] *See supra* §§ III.A.1, 3; Order at 8. Where this is the case, "[a] party with prior use of a trademark may ask a court to cancel a subsequent trademark on the ground that the mark is confusingly similar to the challenger's mark." *Monster Daddy, LLC v. Monster Cable Prods., Inc.*, 2011 WL 494626, at *2 (D.S.C. Feb. 7, 2011). The test for likelihood of confusion is the same for both trademark infringement and registration, *B&B Hardware, Inc. v. Hargis Indus., Inc.*, 135 S. Ct. 1293, 1307 (2015), and likelihood of confusion is the most common ground for cancellation. *See Monster Daddy,* 2011 WL 494626, at *2 (citing 3 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 20:53 (4th ed. updated Nov. 2010)).

Courts routinely cancel trademark registrations as a remedy in cases like this one under Lanham Act 2(d). *See, e.g.*, *Henderson v. Lindland*, 13 WL 1181957, at *8 (C.D. Cal. Mar. 21, 2013) (granting motion to cancel trademark registrations); *Mystique, Inc. v. 138 Intern., Inc.*, 601 F. Supp. 2d 1320, 1326 (S.D. Fla. 2009) (finding that "[a]s a matter of law, there is more than a sufficient basis to cancel Defendant's trademark registration"); *Central Mfg. Co. v. Brett*, 2005 WL 2445898, at *14 (N.D. Ill. Sept. 30, 2005), *aff'd*, 492 F.3d 876, 883 (7th Cir. 2007); (granting motion to cancel). CLL's Motion to Dismiss Counts 5 and 6 should be denied.

## C.    The SAC's False Association Claims Are Well Pleaded (Counts 1, 4)

To prevail on a claim of false association or false designation of origin, a plaintiff must show: "(1) defendant uses a designation (any word, term, name, device, or any combination thereof) or false designation of origin; (2) the use was in interstate commerce; (3) the use was in connection with goods or services; (4) the designation or

---

[6] CLL's conclusory, uncited representation that "Zamfir acknowledges that he failed to plead that he used the 'Casper' name in commerce before CasperLabs," Mot. 12:5-6, is frivolous. Zamfir alleges he has "provided blockchain technology consulting services using the Casper trademark in the United States" "since at least 2015, and continuously through [the] present day[.]" SAC ¶ 31; *see also id.* ¶¶ 33-36. CLL filed its fraudulent CASPER applications in September 2019 on an intent-to-use basis (i.e. before it had used the mark in commerce), and claims to have first used CASPER in commerce on August 12, 2020. SAC ¶ 66.

false designation is likely to cause confusion, mistake, or deception as to (a) the affiliation, connection, or association of defendant with another person, or (b) as to the origin, sponsorship, or approval of defendant's goods, services, or commercial activities by another person; and (5) the plaintiff has been or is likely to be damaged by these acts." *United Tactical Sys., LLC v. Real Action Paintball, Inc.*, 143 F. Supp. 3d 982, 1015 (N.D. Cal. 2015); *Obesity Rsch. Inst., LLC v. Fiber Rsch. Int'l, LLC*, 165 F. Supp. 3d 937, 949 (S.D. Cal. 2016). Here, the first three factors are easily met based on facts CLL does not dispute. *Zamfir v. CasperLabs, LLC*, 2021 WL 1164985, at *4 (S.D. Cal. Mar. 26, 2021). The remaining two factors are also met under this Court's prior rulings, which held Zamfir had adequately alleged "that CasperLabs' use of the name 'Casper' has caused confusion and association with Zamfir—independent of his work with CasperLabs." Order at 11. As already discussed, CLL provides no reason for the Court to deviate from its decision. And, in response to the Court's concern that Zamfir pointed to "no specific instance in which he had difficulty seeking funding as a result of the purported affiliation with Defendant," *id*. at 12, Zamfir added specific allegations, including that an existing client forewent providing additional funding due to industry confusion, and of additional damages flowing from CLL's unlawful actions. SAC ¶¶ 79-80, 91-97. Accordingly, Zamfir's claims for false association are well pleaded.

### 1.    The SAC Adequately Alleges CLL's Ongoing Use of a False Designation of Origin

The SAC maintains the same allegations of confusion, mistake, and deception based on CLL's unlawful ongoing use of the name "Casper" years after the parties' relationship ended that this Court previously addressed. As this Court held, the SAC "adequately alleges that CasperLabs' use of the name 'Casper' has caused confusion and association with Zamfir—independent of his work with CasperLabs." Order at 11. Once again, CLL cites to cases that are "inapposite" because in "those cases, the court found that the allegations themselves linked the confusion to the previous association between the plaintiff and defendants." Order at 11; *see Varsity News Network, Inc. v.*

*Carty Web Strategies, Inc.*, 2018 WL 6137189, at *4 (C.D. Cal. Feb. 13, 2018) (allegations themselves tied confusion to the prior relationship); *Archi's Acres, Inc. v. Whole Foods Mkt. Serv., Inc.*, 2021 WL 424286, at *4 (S.D. Cal. Feb. 8, 2021) (claim was based on truthful article regarding prior association between the parties).

Moreover, CLL is incorrect that the SAC does not allege that the representations on CLL's website, *see* SAC ¶ 46, are false. Mot. 10-11. The immediately preceding paragraph—unchanged from the FAC—states that "the Defendant has not adequately deployed Mr. Zamfir's CBC Casper protocol." SAC ¶ 45. New Paragraph 46 simply expands on examples of how the website continues to falsely associate "CasperLabs' Casper products and services with Zamfir and his Casper products and services"—the former of which Zamfir alleges has not been adequately developed and should not be associated with Zamfir's Casper.

CLL fails to present a compelling reason for this Court to deviate from its prior ruling on this point, and Zamfir has adequately alleged its ongoing use of a false designation of origin.

### 2. The SAC Adequately Alleges Concrete and Particularized Harm Caused by the False Association

In response to the Court's Order, noting that "Plaintiff points to no specific instance in which he had difficulty seeking funding as a result of the purported affiliation with Defendant, nor does he identify any present impact on the credibility of his research in anything other than generalized terms," Order at 12, Zamfir alleges a specific instance where he had trouble seeking funding from the Ethereum Foundation because of industry confusion caused by the false association:

> 79. Upon information and belief, existing clients, including the Ethereum Foundation, forewent providing additional funding to Mr. Zamfir and CoorTech because of industry confusion caused by CasperLabs.
>
> 80. Upon information and belief, existing clients including the Ethereum Foundation forewent promoting Mr. Zamfir's Casper products and services under the Casper name by minimizing references to Casper products and services on their roadmaps and documentation

under the Casper name, because of industry confusion caused by CasperLabs.

SAC, ¶¶ 79-80. Zamfir has further alleged damages caused by CLL's unlawful actions, in the form of, *inter alia*, lessening of "the marketable value of his reputation and goodwill in the industry," "the value of his reputation in the industry," "the value of the Casper name in the industry;" loss of "the ability to control his own reputation;" and being "forced to let go of contractors, and thereby delay the production of promised protocols under the Casper name." *Id.* ¶¶ 91-97; *see also* SAC ¶¶ 20, 22-30, 72, 76.

Simply put, the SAC alleges in detail that CLL's false association with Zamfir's Casper products and services has caused him concrete and particularized commercial injury, including a specific instance where a client forewent funding and promotion of Zamfir's products and services because of the false association. Accordingly, the SAC more than satisfies the general pleading standards for Article III standing, as well as the statutory requirements of Section 43(a), by pleading "an injury to a commercial interest in sales or business reputation proximately caused by the defendant's [conduct]." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 140 (2014).[7]

The cases cited in the Motion do not address an analogous scenario where, as here, Zamfir has alleged a specific loss of funding and promotion from a client due to the false association of CLL's Casper products and services with Zamfir's. *Stahl Law Firm v. Judicate West* addressed whether a plaintiff had standing to assert a false advertising claim using a test that the Supreme Court's *Lexmark* decision unanimously rejected, under which "only … an actual competitor" could bring suit. 2013 WL 6200245 (N.D. Cal. Nov. 27, 2013). Zamfir is not required to plead or prove that he is in direct competition with CLL. In *Maine Springs, LLC v. Nestle Waters N. Am., Inc.*, another false advertising case, the Court found that an alleged "injury—a rejection of

---

[7] Zamfir assumes for purposes of this motion that *Lexmark*'s requirements apply. *But see Swift Harvest USA, LLC v. Boley Int'l HK Ltd.*, 2020 WL 7380148, at *13 (C.D. Cal. Sept. 22, 2020) ("False association claims under section 1125(a)(1)(A) do not require an allegation of an injury to a commercial interest in reputation or sales.").

supply proposals—[wa]s concrete and particularized, and is a sufficient injury" at the pleading stage, but that the claim ultimately failed the causation requirement because there was "nothing to connect the only concrete and particularized injury… to the allegedly false and misleading advertising[.]" 2015 WL 1241571, at *1-2 (D. Maine Mar. 18, 2015). Here, by contrast, the SAC alleges a concrete and specific injury caused by the false association. SAC ¶¶ 79-80.

CLL's other cited cases are also readily distinguishable. *See Jack Russell Terrier Network of N. Ca. v. Am. Kennel Club, Inc.*, 407 F. 3d 1027, 1037 (9th Cir. 2005) (no standing for § 1125(a)(1)(B) false advertising claim under pre-*Lexmark* standard where parties were not competitors); *Marco Bicego S.P.A. v. Kantis*, 2017 WL 2651985, at *3 (N.D. Cal. June 20, 2017) ("Plaintiffs do not allege how [a] private inter-party letter caused any lost sales or damage to their brand, nor … articulate how the letter used a trademark deceptively."); *AllChem Performance Prods., Inc. v. Oreq Corp.*, 2013 WL 12131737, at *4 (C.D. Cal. Nov. 5, 2013) (allegation that Defendants' labeling violated federal regulations did not explain the "specific nature of the asserted confusion" for false association claim, and was an improper use of  the Lanham Act as "a private vehicle for enforcing" the regulations.") (citation omitted).

Accordingly, the SAC sufficiently alleges damages; any factual dispute is inappropriate for resolution at this stage.

**D.    The SAC Adequately Pleads a Violation of California's Unfair Competition Law, Bus. & Prof. C. § 17200 *et seq.* ("UCL") (Count 7)**

CLL misstates *two* separate legal standards to argue that Zamfir lacks standing for his UCL claim. Neither argument survives scrutiny.

### 1.    The SAC Readily Meets the UCL's Territoriality Requirement

CLL baldly misrepresents the standing requirement for California's UCL to the Court, arguing that Zamfir must "allege he was injured within California" to state a claim. Mot. 17. But as CLL's own cited cases show, such claims are viable when "the alleged misconduct … *occurred in* California[,]" regardless of where the misconduct

had its ultimate effect. *Churchill Village, L.L.C. v. General Elec. Co.*, 169 F. Supp. 2d 1119, 1126 (N.D. Cal. 2000) (emphasis added); *Tidenberg v. Bidz.com, Inc.*, 2009 WL 605249, at *4 (C.D. Cal. Mar. 4, 2009) (noting UCL claim "may be invoked by out-of-state parties when they are harmed by wrongful conduct occurring in California[,]" quoting *Nw. Mortgage, Inc. v. Sup. Ct.*, 72 Cal. App. 4th 214, 224-25 (1999)); *see, e.g.*, *In re iPhone 4S Consumer Litig.*, 2013 WL 3829653, at *7 (N.D. Cal. July 23, 2013) (collecting cases where a defendant's *conduct* within California was sufficient to establish standing of non-California plaintiffs).

Also contrary to CLL's argument, allegations that a corporate defendant and/or its principals reside and transact business in California *suffice* to establish UCL standing when the alleged misconduct is "reasonably likely to have come from or been approved by [the defendant's] corporate headquarters in California[.]" *See, e.g.*, *In re Mattel, Inc.*, 588 F. Supp. 2d 1111, 1119 (C.D. Cal. 2008) (non-California plaintiffs had standing under the UCL when they alleged misrepresentations, which were "reasonably likely to have come from or been approved by [the defendant's] corporate headquarters in California[.]").[8] Similarly, in *Parks v. Eastwood Ins. Servs., Inc.*, it sufficed to allege that defendant maintained its headquarters, and 23 of its 40 offices, in California, and that its officers "directed, authorized, ratified, and or/participated in the conduct that [gave] rise to the claims[.]" 2002 WL 34370244, at *2 (C.D. Cal. July 29, 2002). Because Zamfir sufficiently alleges (and CLL concedes) that CLL's principal place of business is in California, SAC ¶¶ 7, 11, and because key CLL officers and personnel resided in the state at relevant times, this element is adequately pled.

CLL's reliance on two inapposite class action decisions, *Tidenberg* and *Churchill Village*, is misplaced. Mot. 18:7-11. *Tidenberg* merely stands for the unremarkable proposition that a *class action* complaint must allege "significant contact or a significant aggregation of contacts to the claims asserted *by each member* of the plaintiff class" to

---

[8] For another defendant, it sufficed to allege that "many of [the company's] executives, including its Vice President of Consumer Products, [we]re located in California." *Id.*

1   ensure that application of state law does not offend the Constitution. 2009 WL 605249

2   at *4 (emphasis added). *Churchill Village* is still less relevant, because in that case *all*

3   the alleged conduct of the defendant—a New York corporation based in Connecticut—

4   occurred *outside* California. 169 F. Supp. 2d at 1127. Neither decision concerns

5   anything like the conduct alleged here, where there is no real question that CLL's

6   alleged misconduct was "reasonably likely to have come from or been approved by"

7   CLL in California. *See, e.g.* SAC ¶¶ 7, 41, 42, 45, 46, 50, 61, 63-69.

8       Zamfir's allegations are sufficient under *Mattel*, *Parks*, and a host of other

9   decisions, to establish Zamfir's standing. CLL's *pro forma* argument to the contrary

10  attempts to elevate form over substance, seeking dismissal based on the absence of the

11  magic words "… in California." Notably, CLL does not even attempt to argue—it could

12  not truthfully do so—that it did *not* make the alleged statements, and engage in the

13  alleged conduct, "in California." Should the Court nonetheless find that more fulsome

14  allegations are required, it should grant leave to amend. *See Tidenberg* at *9 (granting

15  plaintiff leave to file third amended complaint amending its UCL claim).

### 2.   The SAC Adequately Alleges Damages Under the UCL

17      A person has standing under the UCL who "has suffered injury in fact and … lost

18  money or property as a result of the unfair competition." Cal. Bus. & Prof. C. § 17204.

19  There are "innumerable ways in which economic injury from unfair competition may

20  be shown[,]" including—among others—"hav[ing] a present or future property interest

21  diminished… [being] deprived of money or property to which [the plaintiff] has a

22  cognizable claim; or … be[ing] required to enter into a transaction, costing money or

23  property, that would otherwise have been unnecessary[.]" *Kwikset Corp. v. Sup. Ct.*, 51

24  Cal. 4th 310, 323 (2011). "[A] specific measure of the amount of this loss is not

25  required. It suffices that a plaintiff can allege an 'identifiable trifle' of economic injury."

26  *Id.* n.15 (citation omitted). On a motion to dismiss, the court "presume[s] that general

27  allegations embrace those specific facts that are necessary to support the claim."

28  *Kwikset*, 51 Cal. 4th at 328; *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1104 n.4 (9th Cir.

17

2013) ("At the pleading stage, of course, allegations of economic injury suffice.")

Numerous courts have held that the "[d]evaluation of … intellectual property or intangible business assets is sufficient to meet the injury requirements under § 17200." *Rise Basketball Skill Dev., LLC v. K Mart Corp.*, 2017 WL 2775030, at *5 (N.D. Cal. June 27, 2017) (collecting cases); *In re Qualcomm Litig.*, 2017 WL 5985598, at *5 (S.D. Cal. Nov. 8, 2017)*Qualcomm*, 2017 WL 5985598, at *5 (noting "loss of business to a competitor as a result of unfair competition is a paradigmatic, and indeed the original, variety of loss contemplated by the UCL" and collecting cases). *See also, e.g., Jerome's Furniture Warehouse v. Ashley Furniture Indus., Inc.*, 2021 WL 1541649, at *8 (S.D. Cal. Apr. 20, 2021) (allegations "such as lost sales and damage to [a plaintiff's] goodwill with former, existing and potential customers… satisfy the [UCL's] standing requirements."); *Am. Soc'y of Anesthesiologists v. BevMD, LLC*, 2016 WL 4257448, at *5 (S.D. Cal. Mar. 31, 2016) ("Courts have found the diminution to a trademark's value to be a valid economic injury under the UCL"); *Storm Mfg. Grp. Inc. v. Weather Tec Corp.*, 2013 WL 5352698, at *7 (C.D. Cal. Sept. 23, 2013) (UCL standing requirement met by allegations that defendants' misstatements caused plaintiff "to lose customers, damage[d] plaintiff's goodwill, and diminish[ed] the value of plaintiff's products."); *Millennium Dental Techs. Inc. v. Terry*, 2018 WL 5094965, at *15 (C.D. Cal. July 16, 2018) (allegations of harm in the form of "lost sales, lost profits, lost market share, and harm to the goodwill associated with [the plaintiff's] products and trademark" was sufficient to state claim under § 17200).

CLL argues (incorrectly) that UCL standing requires "prior possession" or a "vested legal interest" in money or property. Mot. 18:28-19:3 (citing *Walker v. USAA Cas. Ins. Co.*, 474 F. Supp. 2d 1168, 1172 (E.D. Cal. 2007)). The California Supreme Court's 2011 *Kwikset* decision expressly repudiated this theory.[9] *Compare Walker* at

---

[9] Even before *Kwikset*, other courts had recognized that *Walker* was incorrectly decided. *See, e.g., Max. Availability Ltd. v. Vision Sols., Inc.*, 2010 WL 11508471, at *5 (C.D. Cal. Sept. 20, 2010) (rejecting *Walker* as "inconsistent with" California law and collecting cases).

1172 (construing 'loss of money or property' for UCL *standing* under § 17204 as "identical[ ] to" the standard for *restitution* under § 17203) *with Kwikset*, 51 Cal. 4th at 335–36, 337 ("As we recently have noted, however, the standards for establishing standing under section 17204 and eligibility for restitution under section 17203 are wholly distinct[.]"). For the same reason, there is no merit to CLL's argument that Zamfir's alleged "injury is speculative" merely because it fails to satisfy *Walker*'s flawed "prior possession of a vested legal interest" test. Mot. 19:9-12.

The SAC easily establishes Zamfir's UCL standing by alleging precisely the kinds of loss, including injury to property interests, that court have found sufficient. *See, e.g.*, SAC ¶¶ 36, 90-92, 97. These and similar allegations readily suffice to establish the "'identifiable trifle' of economic injury" that is all the UCL requires. "Because the issue here is only the threshold matter of standing… a specific measure of the amount of [the alleged] loss is not required." *Hinojos*, 718 F.3d at 1105.

### E.    The SAC Adequately Pleads Fraud (Count 8)

CLL argues that Zamfir lacks standing and fails to plead multiple elements of the fraud claim with the particularity required by FRCP 9(b), namely falsity; knowledge or intent; reliance; and damages. None of these arguments withstands scrutiny.

### 1.    Zamfir Has Standing to Bring His Fraud Claim

There is no merit to CLL's argument that Zamfir lacks standing because non-party CoorTech *also* suffered an injury and Zamfir lacks standing to sue "on [its] behalf." Mot. 20:10-13. "[T]he mere presence of an injury to [a] corporation does not … negate the simultaneous presence of an individual injury." *Van Steenwyk v. Van Steenwyk*, 2021 WL 4815212, at *5 (C.D. Cal. Mar. 23, 2021) (citation omitted); *see, e.g.*, *Beach v. Briganti*, 2014 WL 5141651, at *10 (Cal. App. Oct. 14, 2014) holding that "the same act of misconduct may give rise to both an individual and derivative suit" and rejecting argument that stockholder's breach of fiduciary duty claim could "only be brought as a derivative action"). Indeed, the single case CLL relies on contradicts its own argument and supports Zamfir's standing: in *Sutter v. Gen. Petroleum Corp.*, the

19

California Supreme Court rejected an argument that the plaintiff lacked standing merely because his company was also injured. 28 Cal. 2d 525, 530 (1946) (explaining that "[i]f the injury is one to the plaintiff as a stockholder and to him individually… [such as] on *a fraud affecting him directly*, it is an individual action." *Id.* (emphasis added). Because Zamfir alleges CLL's fraudulent conduct "directly and individually injured" him, he has standing. *See, e.g.*, SAC ¶¶ 49, 59, 71-73.[10]

### 2. The SAC Meets the Legal Standard for Pleading Fraud

CLL argues that Zamfir fails to plead, with the required specificity, CLL's misrepresentations; that they were false when made; Zamfir's reliance on them; and resulting damages. Mot. 20-21. Notwithstanding CLL's repeated misstatements of the applicable legal standards, Zamfir adequately alleges each of those elements.

### (a) The SAC Adequately Alleges CLL's Knowledge

Preliminarily, CLL's statement that Zamfir must "plead … CasperLabs' knowledge or intent with particularity[,]" Mot. 21:11-13 (capitalization normalized) is incorrect as a matter of literal black letter law because knowledge may be "alleged generally." FRCP 9(b). Such allegations are sufficient if they "set out sufficient factual matter from which a defendant's knowledge … might reasonably be inferred." *U.S. ex rel. Anita Silingo v. WellPoint, Inc.*, 904 F.3d 667, 679–80 (9th Cir. 2018); *Ashcroft v. Iqbal*, 556 US 662, 686 (2009) ("Rule 9 … excuses a party from pleading … intent under an elevated pleading standard."). As the Ninth Circuit has repeatedly recognized, "[w]hen a complaint alleges with particularity the circumstances constituting fraud, as required by [Rule 9(b)], then generally *it will also have set forth facts* from which an inference of scienter could be drawn[.]" *Cooper v. Pickett*, 137 F. 3d 616, 628 (9th Cir.

---

[10] Zamfir would also have standing as a third-party beneficiary of CLL's agreement. "[A] third party may enforce a contract if he can show he is a member of a class for whose benefit it was made." *KnowledgePlex, Inc. v. Placebase, Inc.*, 2008 WL 5245484, at *6 (N.D. Cal. Dec. 17, 2008) (quoting *Prouty v. Gores Tech. Grp.*, 121 Cal. App. 4th 1225, 1233 (2004)). That Zamfir was an intended third-party beneficiary is shown by the parties' discussions concerning "the Casper trademark application *and its assignment to Vlad/Coortech*," SAC ¶ 64 (emphasis added).

1    1997) (citation omitted, emphasis added).

2          For the same reason, it is nonsense to argue that the SAC fails to adequately allege

3    Mr. Walker "contemporaneously knew that CasperLabs would not try to get the

4    trademark set up for CoorTech[.]" Mot. 21:25-27.[11] First, the SAC need only allege

5    such knowledge "generally" under Rule 9(b). *See* SAC ¶¶ 61, 63-68, 134-138. Second,

6    CLL did not just say that it would "try" to get the trademark "set up"—which was itself

7    false—but piled falsehood on falsehood by initially misrepresenting that it would be

8    "very tough" to do so, later misrepresenting that its agent was "handling that," *and*

9    continuing to conceal its fraudulent conduct for months. Finally, even if it ultimately is

10   shown that Walker did not know this single statement was false at the moment he made

11   it—though the SAC's well pled allegations are to the contrary—that would not negate

12   scienter. In *Black v. Shearson, Hammill & Co.*, the court rejected this very argument

13   when defendants appealed a fraud verdict on the basis that the person who had made

14   the false statements "did not know of the falsity … at the time [each statement] was

15   made," holding that "irrespective of whether [he] knew that each of the statements was

16   false when made, the evidence is clear that he permitted them to stand after he learned

17   the truth and before respondents relied on them." 266 Cal. App. 2d 362, 367 (1968).

18   Here, at the bare minimum the SAC's detailed allegations give rise to a reasonable

19   inference that CLL knew its statements were false. Rule 9(b) does not require more.

20          **(b)    The SAC Adequately Alleges CLL's Deceit**

21         The SAC easily meets the standard for alleging specific misrepresentations that

22   CLL made, in which it stated or suggested, as facts, "that which [wa]s not true," without

23

---

24   [11] CLL's halfhearted argument that Zamfir has "at most" a breach of contract claim
     for CLL's failure to "try" to secure the trademark is nonsense: the basis for Zamfir's

25   fraud claim is that CLL *intentionally misled* Zamfir by falsely promising to secure the
     mark *for Zamfir's benefit*; *intentionally misrepresenting* that doing so would be "very

26   tough"; and leveraging Zamfir's predictable *reliance* on its falsehoods to secure the
     mark *for itself instead*. "[W]here a defendant fraudulently induces the plaintiff to enter

27   into a contract[,]" the plaintiff's claim "does not depend upon whether the defendant's
     promise is ultimately enforceable as a contract[.]" *Lazar*, 12 Cal. 4th at 638 ("[i]f [the

28   agreement] is enforceable, the plaintiff has a cause of action in tort as an alternative at
     least… to his cause of action on the contract.") (cleaned up).

believing the statements to be true. Cal. Civ. C. § 1710 (1), (2). *See, e.g.*, SAC ¶¶ 50-51, 59, 60, 65-69. Even if CLL's misrepresentations were not literally false (they were), the statute requires not literal falsity, but a "deceit" or "misrepresentation." *Lazar v. Superior Ct.*, 12 Cal. 4th 631, 638 (1996) (citations omitted); Cal. Civ. C. § 1709 (providing liability for "[o]ne who willfully deceives another…"). The required "misrepresentation" may consist of a "false representation, concealment, or nondisclosure[.]" *Id.* "[F]alse representations made recklessly and without regard for their truth in order to induce action by another are the equivalent of misrepresentations knowingly and intentionally uttered." *Engalla v. Permanente Med. Grp., Inc.*, 15 Cal. 4th 951, 974 (1997) (citation omitted); *and see, e.g. United States v. Manion*, 339 F.3d 1153, 1157 n.2 (9th Cir. 2003) (noting that a criminal scheme to defraud may "exist[ ] even if the statements involved in the scheme were not literally false, but were 'misleading and deceptive,' based on 'half-truths and concealment of material facts.'").

CLL unconvincingly tries to excuse *one* of its false statements—that registering the Casper mark would be "very tough"—as "puffery," a mere "expression of opinion," whose truth or falsity "depends entirely on the speaker's point of view[.]" Mot. 22. In vain: "[w]herever a party states a matter which might otherwise be only an opinion… but affirms it as an existing fact material to the transaction, so that the other party may reasonably treat it as a fact and rely and act upon it as such, then the statement clearly becomes an affirmation of fact." 5 Witkin, Summary 11th Torts § 894 (2022) (discussing cases); *see*, *e.g.*, *Jolley v. Chase Home Fin., LLC*, 213 Cal. App. 4th 872, 892–93 (2013) ("[W]hen one of the parties possesses, or assumes to possess, superior knowledge or special information regarding the subject matter of the representation, and the other party is so situated that he may reasonably rely upon [that] … a representation … [that] might be regarded as but the expression of an opinion if made by any other person, is not excused if it be false.") (cleaned up). In any event, "where there is a reasonable doubt as to whether a particular statement is an expression of opinion or the affirmation of a fact, the determination rests with the trier of the facts."

*Id.* (quoting *Willson v. Municipal Bond Co.*, 7 Cal. 2d 144, 151 (1936)); *In re Ferrero Litig.*, 794 F. Supp. 2d 1107, 1115–16 (S.D. Cal. 2011) (where statements "contribute to the deceptive context[,]" claims relying on them "should not be dismissed" even if they would arguably constitute puffery "standing on their own"); *Franklin Fueling Sys. v. Veeder–Root Co.*, 2009 WL 2462505, at *7 (E.D. Cal. 2009) ("[W]here at least some actionable statements have been pled, a claim cannot be dismissed on the ground that some statements constitute mere puffery.") CLL's cited cases are not to the contrary. *Oregon Pub. Empl. Ret. Fund v. Apollo Group*, a securities fraud action, concerned statements of opinion that "were subjective and preceded by qualifiers, such as 'We believe[,]'" which "would not induce the reliance of a reasonable investor[.]" 774 F.3d 598, 606 (9th Cir. 2014). *Grossman v. Norvell*, another securities fraud action, was decided on the same "reasonable investor" standard. 120 F.3d 1112, 1119 (10th Cir. 1997). Neither case bears the slightest resemblance to the facts here.

As the SAC's detailed allegations show, CLL was well aware when it made the statement that it would not be "tough" to register the Casper mark.[12] There is at least a reasonable doubt as to whether the statement was one of opinion or fact—and there can be no doubt that CLL *stated* it as a fact. In any event, Zamfir's fraud claim "cannot be dismissed" on the basis that just *one* statement (out of many) was arguable puffery.

### (c) The SAC Adequately Alleges Zamfir's Justifiable Reliance on CLL's Misrepresentations

CLL states (it does not actually argue) that Zamfir's makes only "conclusory" allegations that he relied on CLL's misrepresentations. Not so: the SAC amply alleges that Zamfir "relied upon CLL's representation that it would register the CASPER mark on his behalf[,]" SAC ¶¶ 62, 140, "in light of the nature of the parties' business

---

[12] Contrary to CLL's claim, Mot. 22:23-26, the USPTO did not "reject[ ]" its CASPERLABS mark, but merely issued an Office Action informing CasperLabs of a wording issue with the application, *and* suggesting alternative, acceptable language (which CLL adopted *verbatim*). SAC ¶ 63, 136. Even if CLL had completely failed to respond, the USPTO would have simply deleted the objectionable language, and the application would have "proceed[ed] with all other goods and services … specified in the application[.]" *See* SAC Ex. O (at p.109).

relationship at the time and based upon CasperLabs' numerous assurances to Plaintiff that they would not use the CASPER mark to refer to their blockchain and/or blockchain token[,]" ¶ 141. No more is required to show reliance where, as here, a party's fraud was intended to (and did) induce *inaction*, not action. "Lies which deceive and injure do not become innocent merely because the deceived continue to do something rather than begin to do something else. Inducement is the substance of reliance; the form of reliance—action or inaction—is not critical to the actionability of fraud." *Small v. Fritz Cos., Inc.*, 30 Cal. 4th 167, 175 (2003); *see id.* 174-75 (collecting cases).

Absurdly, CLL attempts to argue that Zamfir's reliance was unreasonable by pointing to a *second* misrepresentation by CLL, which built on and compounded the first one. CLL tries to make much of the fact that five weeks after its Managing Director said that General Counsel Varun Gupta "[wa]s leading the follow-up" to obtain the CASPER mark for Zamfir's benefit, Gupta said that he "was not" handling the trademark. CLL's highly misleading account of this exchange omits that Gupta *confirmed* that "steven"[13] "was handling" the "Casper trademark application and its assignment to Vlad/Coortech[.]" SAC ¶ 64. Far from "contradict[ing]" or "disavow[ing]" that CLL was trying to "get [the] Casper trademark set up and done for CoorTech," this confirmed it. CLL's attempt to blame Zamfir for failing to "raise … concerns, or follow up" is absurd in light of its own delaying tactics, including its lie that registration would be "very tough, for multiple reasons."

As CLL's own cited authority makes clear, "[e]xcept in the rare case where the undisputed facts leave no room for a reasonable difference of opinion, the question of whether a plaintiff's reliance is reasonable is a question of fact." *Alliance Mortgage Co. v. Rothwell*, 10 Cal. 4th 1226, 1239 n.4 (1995) (in bank.) (citation omitted). And CLL itself concedes that courts may only decide this issue as a matter of law "if reasonable minds can come to only one conclusion based on the facts." *Id.* (citation omitted); Mot.

---

[13] Presumably Steven Nerayoff, former Chair of CasperLabs' parent. *See* SAC ¶ 60.

23 (quoting *Rothwell*, *op. cit.*). This is not such a case, and the Motion should be denied.

### (d)   The SAC Adequately Alleges Damages

CLL's specious argument that because its fraudulent promise of a trademark assignment "would have failed anyway," Zamfir could not have been harmed, need not detain the Court for long. First, it is simply false: as CLL itself acknowledges, it is perfectly permissible to assign a trademark application or registration, if the applicant also assigns "the underlying business and products accompanying the mark." Mot. 24:25-28; *see* 15 U.S.C. §1060(a)(1). It is of no moment that Zamfir has criticized CLL for mismanagement and shoddy implementation: if anything, it shows that CLL *should have* (it clearly *could have*) transferred the mark and any associated goodwill to him. Moreover, if it is true that the promised assignment "would have failed anyway," it is inexplicable why CLL's General Counsel Varun Gupta, a member of California's bar, would have led non-lawyer Zamfir to believe that CLL *was* "handling" this supposedly invalid matter through its agent Steven Nerayoff—another attorney. *See* SAC ¶ 64. CLL's argument, if taken at face value, would raise serious questions about its attorneys' competence and ethics.

Second, the harm to Zamfir did not flow only from CLL's failure to assign the CASPER mark "to Vlad/CoorTech." Instead, Zamfir alleges he was harmed because, in reliance on CLL's misrepresentations, he "did not separately seek registration of the CASPER mark," and CLL was able to leverage its fraudulent misrepresentations to improperly register the mark for itself. SAC ¶¶ 62, 59. These allegations are sufficient to show that Zamfir was harmed by CLL's misconduct.

Finally, CLL's specious argument that Zamfir had "no bona fide intent to use the mark that could support his trademark registration or ownership," Mot. 25, fails because, as explained above, the Court has already held that Zamfir's allegations of *actual* use of the mark are sufficient at the pleading stage.

## IV.   CONCLUSION

For the foregoing reasons, the Court should deny Defendant's Motion.

Dated: July 21, 2022

/s/ Jennifer A. Golinveaux
Jennifer A. Golinveaux (SBN 203056)
WINSTON & STRAWN LLP
101 California Street, 35th Floor
San Francisco, CA 94111-5840
Telephone:      (415) 591-1000
Facsimile:      (415) 591-1400

Christopher Ott (SBN 235659)
16501 Los Barbos
Rancho Santa Fe, CA 92067
ROTHWELL FIGG ERNST &
MANBECK, P.C.
607 14th St., N.W., Suite 800
Washington, DC 20005
Phone: (202) 783-6040

*Attorneys for Plaintiff*