DAVID L. KIRMAN (S.B. #235175)
dkirman@omm.com
DAVID MARROSO (S.B. # 211655)
dmarroso@omm.com
VISION WINTER (S.B. # 234172)
vwinter@omm.com
O'MELVENY & MYERS LLP
1999 Avenue of the Stars, 8th Floor
Los Angeles, California 90067-6035
Telephone:  (310) 553-6700
Facsimile:   (310) 246-6779

GINA DURHAM (S.B. #295910)
gina.durham@dlapiper.com
MICHAEL FLUHR (S.B. #277372)
michael.fluhr@dlapiper.com
DLA PIPER LLP
555 Mission Street, Suite 2400
San Francisco, California 94105-2933
Telephone:  (415) 836-2500
Facsimile:   (415) 836-2501

*Attorneys for Defendant CasperLabs, LLC*

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VLAD ZAMFIR,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>CASPERLABS, LLC,<br><br>　　　　　　Defendant. | Case No. 3:21-cv-474-TWR-AHG<br><br>**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT OF PLAINTIFF VLAD ZAMFIR**<br><br>Complaint filed: March 17, 2021<br><br>Hearing Date:  August 18, 2022<br>Hearing Time:  1:30 p.m.<br><br>Judge:  Hon. Todd W. Robinson<br>Courtroom: 3A |

**TABLE OF CONTENTS**

Page

I.  THE SAC FAILS TO STATE A CLAIM FOR FALSE ASSOCIATION UNDER LANHAM ACT 43(A) AND UNFAIR COMPETITION LAW (COUNTS 1 AND 4). ................................................. 1

    A.  Zamfir Fails to Allege Specific Harm, a Requirement Zamfir Does Not Dispute. ........................................................................................ 1

    B.  Zamfir Cannot Dispute That the Allegedly Confusing Associations Are True, Not False. ........................................................ 2

II.  THE SAC FAILS TO STATE A CLAIM FOR TRADEMARK CANCELLATION (COUNTS 5 AND 6) OR FOR TRADEMARK INFRINGEMENT (COUNTS 2 AND 3). ................................................................. 3

III.  THE SAC FAILS TO STATE A CALIFORNIA UCL CLAIM (COUNT 8). ................................................................................................. 5

    A.  Zamfir's General Allegations of CasperLabs's Place of Business Do Not Establish Standing to Assert His UCL Claim. ......................... 5

    B.  Zamfir's UCL claim fails Because He Does Not Allege UCL Damages. .................................................................................................. 6

IV.  THE SAC FAILS TO STATE A CLAIM FOR INTENTIONAL MISREPRESENTATION (COUNT 7). ....................................................... 7

    A.  Zamfir Lacks Standing to Bring His Fraud Claim Because He Cannot Identify an Injury Separate and Distinct from That to CoorTech. ................................................................................................. 7

    B.  The SAC Fails to Meet The Legal Standard for Pleading Fraud. .......... 8

V.  CONCLUSION ................................................................................................. 10

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Acad. of Motion Pictures Arts & Scis. v. GoDaddy.com, Inc.*,
   2010 WL 11463697 (C.D. Cal. Sept. 20, 2010) ............................................. 7

*Archi's Acres, Inc. v. Whole Foods Market Service, Inc.*,
   No. 19-2478, 2021 WL 424286 (S.D. Cal. Feb. 8, 2021) ............................... 3

*Beach v. Briganti*,
   2014 WL 5141651 (Cal. Ct. App. Oct. 14, 2014) .......................................... 8

*Gross v. Symantec Corp.*,
   2012 U.S. Dist. LEXIS 107356 (N.D. Cal. July 31, 2012) ............................ 5

*Hilliard v. Harbour*,
   12 Cal. App. 5th 1006 (Cal. Ct. App. 2017) ................................................. 8

*In re Mattel, Inc.*,
   588 F. Supp. 2d 1111 (C.D. Cal. 2008) ......................................................... 6

*Keane v. Fox Television Stations, Inc.*,
   297 F. Supp. 2d 921 (S.D. Tex. 2004) ........................................................... 5

*Laks v. Coast Fed. Sav. & Loan Assn's*,
   60 Cal. App. 3d 885 (Cal. Ct. App. 1976) ................................................... 10

*Marco Bicego S.P.A. v. Kantis*,
   2017 WL 2651985 (N.D. Cal. June 20, 2017) ............................................... 2

*Millennium Dental Techs. Inc. v. Terry*,
   2018 WL 5094965 (C.D. Cal. July 16, 2018) ................................................ 7

*Parks v. Eastwood Ins. Servs., Inc.*
   2002 WL 34370244 (C.D. Cal. July 29, 2002) .............................................. 6

*Storm Manufacturing Group. Inc. v. Weather Tec Corp.*,
   2013 WL 5352698 (C.D. Cal. Sept. 23, 2013) ............................................... 7

*Sutter v. Gen. Petroleum Corp*,
   28 Cal. 2d 525 (1946) ................................................................................... 8

*Van Steenwyk v. Van Steenwyk, No.*
   2021 WL 4815212 (C.D. Cal. Mar. 23, 2021) ........................................... 7, 8

*White v. J.P. Morgan Chase, Inc.*,
   167 F. Supp. 3d 1108 (E.D. Cal. 2016) ......................................................... 9

*White v. JPMorgan Chase & Co.*,
   702 F. App'x 642 (9th Cir. 2017) ................................................................ 10

Zamfir's Opposition does not save his deficient claims. In it, he neither persuasively distinguishes CasperLabs's ample legal authority nor cites persuasive, analogous cases of his own. Instead, Zamfir offers vague allegations, inapposite and distinguishable cases, and arguments about undisputed propositions. None of this changes the key facts here: Zamfir never released a blockchain protocol of his own and cannot establish a false association, harm, or trademark rights connected to CasperLabs's successful protocol. And Zamfir cannot stand in the shoes of non-party CoorTech to enforce vague and unenforceable "promises" about trademark registration. All of his claims fail, and the Court should dismiss them.

## I. The SAC Fails to State a Claim for False Association Under Lanham Act 43(a) and Unfair Competition Law (Counts 1 and 4).

### A. Zamfir Fails to Allege Specific Harm, a Requirement Zamfir Does Not Dispute.

Zamfir still fails to allege specific harm from the alleged association between himself or his ideas and CasperLabs. Mot. 6-10. The Court acknowledged that failure, and the SAC's new allegations do not correct it.

In opposition, Zamfir points to new allegations, asserted on information and belief, that the Ethereum Foundation discontinued funding and promoting Zamfir and CoorTech (not a party here) as a result of CasperLabs's acts. Opp. 13-14. But these allegations barely differ from prior insufficient allegations, adding only the name—on information and belief—of the alleged funder. Compare FAC ¶ 77 ("Mr. Zamfir has faced difficulties securing funding for further research, development, and adoption of CBC Casper due to industry confusion between CasperLabs and Mr. Zamfir . . . ."), with SAC ¶ 79 ("Upon information and belief, existing clients, including the Ethereum Foundation, forewent providing additional funding to Mr. Zamfir and CoorTech because of industry confusion caused by CasperLabs."). Contrary to Zamfir's assertion that these lightly amended allegations constitute a "specific instance" of harm, Opp. 13-14, the allegations

remain too vague to support his claim. *See, e.g.*, *Marco Bicego S.P.A. v. Kantis*, 2017 WL 2651985, at*4 (N.D. Cal. June 20, 2017) (dismissing claim for failure to plausibly allege commercial injury). Zamfir fails to explain what funding the Ethereum Foundation would have provided, for what purpose, why a naming dispute would hold up that funding, or why he even believes these allegations to be true. The other allegations Zamfir adds are likewise materially similar to those the Court already rejected. Compare Opp. 14 (offering allegations of harm such as damage to "the value of his reputation in the industry"), with Mot. 7 (damages allegations already deemed insufficient include "reputational harm related to his blockchain work" and "having trouble obtaining funding").

Unable to address these weaknesses, Zamfir builds a strawman, citing *Stahl* and *Maine Springs* to argue that he is not required to show injury as "an actual competitor" under a false-association theory. Opp. 14-15. But CasperLabs never argued for a competitive-injury requirement. Instead, it cited *Stahl* and *Maine Springs* (as well as *Marco Bicego* and *AllChem*) for a proposition that Zamfir does not dispute: that Lanham Act §43(a) requires pleading of facts that make the existence or likelihood of commercial injury more than pure speculation. Mot. 9-10. Zamfir also argues that the court in *Maine Springs* held that injury had been adequately pleaded, but he ignores the court held that one alleged injury was pleaded too speculatively to survive a motion to dismiss. Opp. 14-15; Mot. 9-10.

Finally, Zamfir claims that CasperLabs's "other cited cases [*Jack Russell*, *Marco Bicego*, and *AllChem*] are readily distinguishable," though Zamfir neither explains how nor cites to cases he believes are factually analogous. Opp. 15.

### B. Zamfir Cannot Dispute That the Allegedly Confusing Associations Are True, Not False.

Zamfir's false-association claims also fail because he alleges substantial and real connections between himself and his technology on one hand and CasperLabs and the Casper Network and token on the other. Mot. 10. While Zamfir argues that

1  CasperLabs's cases do not apply because the allegations in those cases "linked the
2  confusion to the previous association," Opp. 12, Zamfir's allegations do exactly
3  that. *See* SAC ¶ 73 (quoting various third parties expressing confusion stemming
4  from the actual association, including: "Can u pls clear wat Vlads role was in
5  Casper. I knew he had his research on Casper."; "i thought Vlad Zamfir was a
6  major part of Casper labs"; "I thought he was working with you guys."; "Why is
7  Vlad not your adviser anymore?").

8  Zamfir also refuses to acknowledge that he has not alleged anything false
9  about the CasperLabs website that would create a false association. Opp. 13. In
10 response, he offers an allegation in the SAC that "Defendant has not adequately
11 deployed Mr. Zamfir's CBC Casper protocol," Opp. 13. But Zamfir does not
12 explain how this allegation could show the falsity of the website statements, which
13 are consistent with Zamfir's own allegations in the SAC. *Compare* SAC ¶ 45 *with*
14 ¶ 46; Mot. 10-11; *see Archi's Acres, Inc. v. Whole Foods Market Service, Inc.*, No.
15 19-2478, 2021 WL 424286, at *4 (S.D. Cal. Feb. 8, 2021) (true statements about
16 association between parties do not support false association).

17 **II.  The SAC Fails to State a Claim for Trademark Cancellation (Counts 5
       and 6) or for Trademark Infringement (Counts 2 and 3).**
18

19 Courts consistently hold that activities like those alleged by Zamfir do not
20 confer mark ownership. Mot. 11-17. In opposition, Zamfir cites only this Court's
21 prior opinion and not a single other case to the contrary. Opp. 5-10.

22 Zamfir argues that the "law of the case" doctrine resolves CasperLabs's
23 motion. Opp. 6-7. Not true. Zamfir concedes this doctrine does not apply if
24 "changed circumstances exist," Opp. 6, which is the case. New allegations in his
25 SAC confirm that Mr. Zamfir's services were *not* provided under the Casper name.
26 *See* SAC ¶ 96 ("existing clients forewent promoting Mr. Zamfir's Casper products
27 and services under the name Casper, and minimized references to Mr. Zamfir's
28 Casper products and services on their roadmaps and documentation under the name

1   Casper"); Mot. 11. The Court's prior holding that Zamfir "has alleged enough to
2   show that he used 'Casper' for his consulting service," is directly refuted by this
3   startling and crucial admission. Mot. 11. Zamfir also labels CasperLabs's motion as
4   a request for reconsideration under Local Rule 7.1, Opp. 6-7, but cites no authority
5   that this rule applies to a motion attacking a new complaint with new claims based
6   on new allegations.

7         In its motion, CasperLabs cited overwhelming authority—including the
8   Lanham Act, federal appellate opinions, USPTO rulings, and an authoritative
9   treatise—confirming that services *about* a named product but not *called* by that
10  name do not confer a service mark. Mot. 12-15. Zamfir does not and cannot cite a
11  single case to the contrary, besides this Court's opinion. Instead, he argues he must
12  only show that his use of "Casper" was "in connection with a sale of goods or
13  services." Opp. 8. But for this he cites the inapposite *Bosley Med. Inst., Inc. v.*
14  *Kremer*, which did not address the use required for trademark *ownership*—the issue
15  here—but rather the separate issue of use required for trademark *infringement*, a
16  different and lower standard. 403 F.3d 672, 677 (9th Cir. 2005). Zamfir seeks
17  support from the Lanham Act definition of "service mark," but he quotes text
18  requiring a higher standard: that the use "identify the services." Opp. 8-9. While
19  cases use varying language to describe requirements for trademark ownership, Mot.
20  12 n.5, each shows that, regardless of how the test is framed, services *about* a
21  named product but not *called* that name do not confer a service mark. Mot. 12-14.

22        CasperLabs also cited myriad cases holding that the types of promotional
23  activity and prototype publication that Zamfir alleges do not confer a trademark.
24  Mot. 15-16. Again, Zamfir cites no case to the contrary and instead cites only the
25  Court's opinion, which did not resolve whether Zamfir held a trademark by virtue
26  of these activities. Opp. 9; Order 6-7. Zamfir also offers another straw man, arguing
27  that lack of actual sales is not dispositive in determining trademark rights. Opp. 9.
28  But CasperLabs has never disputed this and has instead argued only that the types

of activities in which Zamfir did engage in do not confer a trademark.

CasperLabs raised two other arguments that Zamfir does not even attempt to counter, both of which require dismissal. It questioned how Zamfir can own a source-identifying trademark while simultaneously alleging that Vitalik Buterin made the exact same use as Zamfir, an argument Zamfir simply ignores. Mot 17; *see, e.g., Keane v. Fox Television Stations, Inc.*, 297 F. Supp. 2d 921, 936 (S.D. Tex. 2004) (first to both appropriate and use mark in trade is owner). And CasperLabs argued that the alleged plan for it to register CASPER assumes that CasperLabs owned the mark in the first place, as only a mark owner can register and only on its own behalf. Mot. 17. While Zamfir labels this theory "convoluted," he does not actually take on the argument substantively, essentially conceding that CasperLabs, not Zamfir, is the owner of the mark. Opp. 9-10.

### III.   The SAC Fails to State a California UCL Claim (Count 8).

#### A.   Zamfir's General Allegations of CasperLabs's Place of Business Do Not Establish Standing to Assert His UCL Claim.

Zamfir is not a California resident and does not allege the conduct at issue occurred in California, so he cannot bring a California UCL claim. Zamfir concedes that non-California residents cannot pursue UCL claims unless a defendant's allegedly wrongful conduct "*occurred in* California." Opp. 15.

Zamfir, who, according to the SAC, lives in Canada, never explains how CasperLabs's conduct toward him occurred in California. Zamfir's claim that CasperLabs's "principal place of business is in California" (Opp. at 16) is irrelevant because Zamfir makes *no* claims about what actions CasperLabs purportedly took in California. *See Gross v. Symantec Corp.*, 2012 U.S. Dist. LEXIS 107356, at *26-*28 (N.D. Cal. July 31, 2012) (allegation that defendant was headquartered in California "not enough to create a plausible inference that the [defendant's] unlawful conduct emanated from that location"). Likewise, Zamfir's assertion that "key CCL officers and personnel resided in the state at relevant times" (Opp. 16) is

1 | not supported by any pleaded facts.

2 |     Zamfir's cases prove that general allegations about a defendant's place of business must be paired with additional allegations of conduct occurring in California to establish standing. *In re Mattel, Inc.*, 588 F. Supp. 2d 1111 (C.D. Cal. 2008); *Parks v. Eastwood Ins. Servs., Inc.,* 2002 WL 34370244 (C.D. Cal. July 29, 2002). In *Parks*, the defendant's headquarters was just one of many factors the court considered when it analyzed whether the plaintiff had standing to bring a UCL claim. And in *Mattel*, the location of the defendant's corporate headquarters was only relevant to the plaintiff's standing because the "reports, company statements, and advertising" at issue in that case were "reasonably likely to have come from or been approved by Mattel corporate headquarters." *Id.* Indeed, in *Mattel*, the plaintiffs devoted *seven paragraphs* of detailed factual allegations that Mattel's conduct was centered in California. Second Amended Complaint, *In re Mattel, Inc.*, 2008 WL 2843542 at ¶ 159-165. Here, Zamfir alleges *no* facts to suggest the allegedly wrongful conduct was "reasonably likely" to have come from California. He does not allege that any CasperLabs decision makers are in California, and he does not complain of any reports, company statements, or advertising created or approved in California. Accordingly, the Court should dismiss his UCL claim.

### B.    Zamfir's UCL Claim Fails Because He Does Not Allege UCL Damages.

    The Court should also dismiss Zamfir's UCL claim because, as explained in the Motion, Zamfir cannot allege a legal or ownership interest in money or property allegedly lost as a result of CasperLabs's conduct. Mot. 18-19. Zamfir concedes that "economic injury" is required for standing, (Opp. 17), but has not adequately alleged such injury. Where a plaintiff alleges a loss "without alleging any specific facts as to what was lost and how," courts dismiss unfair-competition claims as "insufficient to satisfy even the minimal pleading burden under Rule 8." *Acad.*

Case 3:21-cv-00474-TWR-AHG   Document 66   Filed 08/04/22   PageID.1457   Page 10 of 14

*of Motion Pictures Arts & Scis. v. GoDaddy.com, Inc.,* 2010 WL 11463697, at *10 (C.D. Cal. Sept. 20, 2010).

While Zamfir cites to a raft of cases in which he contends that conclusory allegations about damages suffice—effectively conceding that his allegations are mere conclusions—these cases only show the difference between well-pleaded allegations and the deficient ones Zamfir brings here.[1] While a plaintiff may rely on an allegation that their property interest has lost value, the SAC lacks any non-conclusory allegation that the value of the Casper mark has actually fallen. *See* SAC ¶ 93 (alleging in only conclusory fashion that CasperLabs's products are of an "inferior quality to products advertised by Mr. Zamfir" and therefore "lessen[] the value of the Casper name in the industry").

## IV. The SAC Fails to State a Claim for Intentional Misrepresentation (Count 7).

### A. Zamfir Lacks Standing to Bring His Fraud Claim Because He Cannot Identify an Injury Separate and Distinct from That to CoorTech.

As Zamfir's own cited authority provides, a plaintiff can bring a direct action only if the alleged injury is to "a right the plaintiff 'possessed as an individual, separate and distinct from the injury to the value of the [corporation].'" *Van Steenwyk v. Van Steenwyk, No.* 2021 WL 4815212, at *4 (C.D. Cal. Mar. 23, 2021) (citations omitted). Here, Zamfir does not—and cannot—argue that any injury he suffered was separate and distinct from an injury to CoorTech. His core allegation of fraud is that Scott Walker told him that CasperLabs was "trying to get 'Casper' trademark set up and done for **CoorTech**." SAC ¶ 61 (emphasis added). His

---

[1] Zamfir's cited cases are distinguishable. For example, in *Storm Manufacturing Group. Inc. v. Weather Tec Corp.*, 2013 WL 5352698 (C.D. Cal. Sept. 23, 2013), the plaintiff had specific customers and distributors that the defendant attempted to solicit to sever their relationship with the plaintiff. 2013 WL 5352698, at *8. Likewise in *Millennium Dental Techs. Inc. v. Terry*, 2018 WL 5094965 (C.D. Cal. July 16, 2018), there were specific clients of the plaintiff to whom the defendant disseminated false and misleading information, causing the plaintiff to lose clients. *Id.* at *2-3. Here, in contrast, Zamfir alleges only, *upon information and belief*, that "existing clients, including the Ethereum Foundation, forewent additional funding" because of the alleged industry confusion.

- 7 -   REPLY MEMO OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION TO DISMISS SAC
CASE NO. 3:21-CV-474-TWR-AHG

subsequent allegation that the assignment was to be made to "Vlad/CoorTech" (SAC ¶¶ 62, 64) only serves to highlight that any harm allegedly suffered by Zamfir was purely incidental to that of the company.

Zamfir's cases are readily distinguishable. In both Zamfir's cited cases, the individual who brought suit did so against another member of the company. In *Van Steenwyk*, the court held a majority shareholder's breach of fiduciary duty to a minority shareholder did individual harm to the minority shareholder, separate from any harm to the company. 2021 WL 4815212, at *4-5. Similarly, in *Beach v. Briganti*, 2014 WL 5141651, at *10 (Cal. Ct. App. Oct. 14, 2014) the court acknowledged that a company founder's claim against a cofounder for breach of his employment contract was "separate and distinct from any injury to the value of the [company]" as a result of an alleged breach of fiduciary duty. In contrast, any alleged harm here to Zamfir was coterminous with and not separate or distinct from harm to CoorTech. *See also Sutter v. Gen. Petroleum Corp,* 28 Cal. 2d 525 (1946) (fraud in inducing plaintiff to form corporation distinct from harm to corporation since it occurred prior to incorporation); *Hilliard v. Harbour*, 12 Cal. App. 5th 1006, 1013-15 (Cal. Ct. App. 2017) (distinguishing *Sutter*).

Zamfir also suggests that the Court should allow his claims to proceed because he may enforce the contract between CasperLabs and CoorTech as a third-party beneficiary. *See* Opp. 20, n.10. But Zamfir does not allege a breach of contract. Indeed, Zamfir is precluded from bringing such an action in this Court, as both of the relevant agreements contain exclusive jurisdiction and venue provisions that require all disputes relating to those parties to be brought only in the Courts of England and pursuant to English Law.

### B. The SAC Fails to Meet The Legal Standard for Pleading Fraud.

*Zamfir Cannot Identify Allegations Supporting an Inference that CasperLabs Intended to Defraud Zamfir at the Time of the Statements at Issue.*

Zamfir contends that Rule 9(b) only requires him to generally plead knowledge and

intent. Opp. 20-21. But as Zamfir's own cited authority reveals, a plaintiff must "*set forth facts* from which an inference of scienter [can] be drawn." *Id.* The SAC pleads no such facts, and Zamfir's opposition thus cites no specific allegation supporting the inference that CasperLabs intended to defraud Zamfir or knew the challenged statements were false when made. Zamfir alleges that CasperLabs, by registering CASPERLABS, demonstrated that it never intended to transfer the CASPER mark or registration to CoorTech. (SAC ¶¶ 135-137). But Zamfir never explains how registration of one mark speaks to CasperLabs's plans for a different mark. Zamfir also points to CasperLabs's registration of CASPER to support scienter, but Zamfir alleges that CasperLabs promised to register the CASPER trademark then transfer it to CoorTech, so the registration itself does not show scienter. Similarly, Zamfir contends that CasperLabs's successful trademark of CASPERLABS demonstrates falsity of the statement that CASPER would be difficult to trademark. *Id*. But Zamfir alleges no facts to suggest that CasperLabs didn't genuinely believe (rightly or not) that CASPER would be more difficult to register than CASPERLABS. Furthermore, there is no link between a prediction (accurate or otherwise) about the difficulty in registering CASPER and an alleged intent to register but not transfer.

*Zamfir Acknowledges that CasperLabs's Statements Were Precisely Those on Which Reliance Is Not Justifiable.* As Zamfir concedes in his opposition brief, Varun Gupta's statements that "steven was handling" the "Casper trademark application" and that he, Varun, was "not [handling the trademark]," are precisely the kind of statements upon which courts have found reliance to be unjustifiable. SAC ¶ 64. In these statements Mr. Gupta disclaimed knowledge of the matter and did not make any specific promise, let alone that the Casper mark would be obtained for CoorTech. *See, e.g.*, *White v. J.P. Morgan Chase, Inc.,* 167 F. Supp. 3d 1108 (E.D. Cal. 2016) (dismissing fraud claim with prejudice at the motion-to-dismiss stage, finding plaintiff had "failed to allege that their reliance was justified because the conditional promise was not sufficient to justify reliance."); *White v.*

*JPMorgan Chase & Co.*, 702 F. App'x 642, 643 (9th Cir. 2017) (affirming trial court's decision); *see also Laks v. Coast Fed. Sav. & Loan Assn's*, 60 Cal. App. 3d 885, 893 (Cal. Ct. App.1976) (before relying on the promise, the plaintiffs "should have resolved the ambiguities and obtained a finalized agreement"). Like in *White*, there was there no "finalized" deal here, and many events would have needed to occur to make it possible to assign the trademark to CoorTech. *See* Mot. 24. It is not reasonable for Zamfir to blame, and attempt to hold CasperLabs liable for, Zamfir's ***independent*** decision not to pursue the Casper trademark registration following the conditional statements he claims to have relied on.

Further, as detailed in CasperLabs's motion, any assignment of the CASPER mark and registration to CoorTech would have been an invalid "assignment in gross." Mot. 24-25. Zamfir's reliance on such an invalid promise is not justifiable.

***Zamfir Fails to Explain How CasperLabs Could Have Validly Assigned the Mark and Registration.*** Zamfir appears to concede that in order to be valid, an assignment of the mark and registration (or application therefor) must be accompanied by the associated goodwill. Opp. at 25. But it is not alleged anywhere in the SAC that CasperLabs would assign CoorTech such goodwill. Indeed, the SAC contains allegations that only cut against finding an assignment of goodwill. Mot. 24-25. Accordingly, any alleged promise of a trademark and registration assignment would have failed anyway, so such a promise caused him no harm. Zamfir's argument that he was separately harmed because he "did not separately seek registration of the CASPER mark," (Opp. 25) fails too, because he does not allege facts sufficient to support a finding that he would have been entitled to trademark registration or ownership. Accordingly, he is in no different a position than if CasperLabs had never made the alleged promise. Mot. 25.

## V.     CONCLUSION

For the reasons stated above, the Court should dismiss the Second Amended Complaint with prejudice.

Dated:  August 4, 2022

DAVID L. KIRMAN
DAVID MARROSO
VISION WINTER
O'MELVENY & MYERS LLP

GINA DURHAM
MICHAEL FLUHR
DLA PIPER LLP


By: */s/ Michael Fluhr*

Michael Fluhr
Attorneys for Defendant
CasperLabs, LLC