1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VLAD ZAMFIR,<br><br>                              Plaintiff,<br><br>v.<br><br>CASPERLABS, LLC,<br><br>                              Defendant. | Case No.:  21-CV-474 TWR (AHG)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS**<br><br>(ECF No. 64) |

Presently before the Court is Defendant CasperLabs, LLC's Motion to Dismiss Plaintiff Vlad Zamfir's Second Amended Complaint ("Motion," ECF No. 64), as well as Plaintiff's Opposition to the Motion ("Opp'n," ECF No. 65) and Defendant's Reply in support of the Motion ("Reply," ECF No. 66).   The Court heard oral argument on August 18, 2022.  (*See* ECF No. 69.)   Having carefully reviewed Plaintiff's Second Amended Complaint ("SAC," ECF No. 56), the Parties' arguments, and the law, the Court **GRANTS IN PART AND DENIES IN PART** Defendant's Motion.

## BACKGROUND

Zamfir is a researcher in blockchain technology and adopted the name "Casper" for his correct-by-construction ("CBC") proof-of-stake ("PoS") blockchain consensus protocol.  (*See* SAC ¶ 1.)  Zamfir brings this action in response to CasperLabs' activities, beginning on or about August 2020, where they used the name "Casper" to describe their

1

PoS protocol and filed to register the CASPER mark. (*See id*.) Zamfir alleges eight causes of action: (1) False Designation of Origin in violation of Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A) ("Count 1"); (2) Unfair competition/Trademark Infringement in violation of Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A) ("Count 2"); (3) Trademark Infringement under California Common Law ("Count 3"); (4) Unfair Competition under California Common Law ("Count 4"); (5) Cancellation of U.S. Trademark Registration No. 6202402 ("Count 5"); (6) Cancellation of U.S. Trademark Registration No. 6131157 ("Count 6"); (7) Fraud by Intentional Misrepresentation under California Civil Code §§ 1709, 1710 ("Count 7"); and (8) Unlawful and Unfair Business Practices and False Advertising under California Business & Professions Code § 17200 ("Count 8"). (*See generally* SAC.)

At its core, a blockchain is a distributed protocol that stores transactional records as a chain of "blocks." (*See id*. ¶ 12.) Each block contains a cryptographic fingerprint, called a hash, of the previous block; a timestamp; and other data. (*See id*.) Certain types of blockchain applications, such as those used for cryptocurrency exchanges, rely on consensus protocols to validate the operation of the transaction. (*See id*. ¶ 14.) Historically, these blockchain-based cryptocurrencies have relied on a "proof of work" ("PoW") consensus mechanism to secure the network. (*See id*.) PoW requires a tremendous amount of computational and electrical energy, resulting in issues with the sustainability and workability of this consensus mechanism. (*See id*.) Therefore, much of the technical development in the blockchain industry has been devoted to the development of an alternative consensus mechanism, namely, PoS. (*See id*. ¶ 15.) PoS aims to eliminate the computational waste inherent in PoW by using digital resources as opposed to computational resources to create barriers to an attack on the blockchain network. (*See id*.)

In 2014, Zamfir began researching and developing a new PoS blockchain protocol design in conjunction with Vitalik Buterin and the Ethereum Foundation. (*See id*. ¶ 18.) Zamfir and Buterin took their research in two separate directions. (*See id*. ¶ 20.) Buterin's branch of research is now marketed under the name "Ethereum 2.0." (*See id*.) Zamfir's

branch of research was called "CBC Casper," which refers to CBC software design methodology, currently known and referred to throughout the industry as "Casper." (*See id.*)

Zamfir has been continuously conducting research and development under the Casper name in the United States and internationally since at least March 2015.  (*See id.* ¶ 21.)  Zamfir uses the CBC Casper and Casper names exclusively when communicating his work on PoS and distributed systems to the wider public via Twitter, Github, and his personal blogs.  (*See id.* ¶ 22.)  By 2017, Zamfir used the Casper mark in commerce in connection with distributing downloadable Casper CBC software and specifications under open-source licensing agreements in the United States.  (*See id.* ¶ 26.)

Zamfir has substantially benefitted from the creation and distribution of the CBC Casper software, specification, and protocol under open-source licenses throughout the United States, including generating market shares, promoting international recognition, and obtaining free improvements to CBC Casper.  (*See id.* ¶ 30.)  Since 2015, Zamfir has used the Casper trademark in the United States when providing blockchain technology consulting services and marketing his CBC Casper development and consulting services at seminars, conferences, workshops, and lectures on blockchain research in the United States.[1]  (*See id.* ¶¶ 29, 30– 31.)  Zamfir received compensation for several of his presentations on Casper, and Zamfir's research on PoS protocols has received significant coverage in various media outlets.  (*See id.* ¶ 35.)

/ / /

---

[1]     By March 2017, Zamfir published the first formal verification of CBC Casper on GitHub, which was and remains downloadable by anyone in the United States at https://github.com/pirapira/cbc_casper and https://github.com/vladzamfir/cbc_casper.  (*See* SAC ¶ 27.)  By November 2017, Zamfir and the Ethereum research group released a software prototype of Casper on GitHub, which was and remains downloadable by anyone in the United States at https://github.com/ethereum/cbccasper/releases.  (*See* SAC ¶ 28.)  On December 18, 2017, Zamfir uploaded to GitHub a draft CBC Casper protocol specification titled "Casper the Friendly Ghost A 'Correct-by-Construction' Blockchain Consensus Protocol."  (*See* SAC ¶ 29.)  The paper notes that "[e]arly prototypes of both Casper the Friendly Binary Consensus and Casper the Friendly Ghost have been implemented," and cites to the source code available for download at GitHub at https://github.com/ethereum/cbc-casper.  (*See* SAC ¶ 29.)

In 2018, CasperLabs asked Zamfir to collaborate on developing a new blockchain. (*See id.* ¶ 37.)  In exchange for Zamfir's contribution, CasperLabs made Zamfir (1) the lead consensus protocol architect, and (2) the governance committee liaison to outside investors to present the protocol.  (*See id.* ¶¶ 38, 40.)

On February 14, 2019, on behalf of himself and his company, Coordination Technology, Ltd. ("CoorTech"), Zamfir entered into a Research Agreement with CasperLabs, under which he would provide research, analysis, and advice to integrate CBC Casper into CasperLabs' proposed blockchain.  (*See id.* ¶ 39.)  On the same day, on behalf of CoorTech, Zamfir entered into a Licensing Agreement with CasperLabs, granting CasperLabs limited rights in the use of his name and image to promote the collaboration in exchange for CasperLabs helping to fund Zamfir's work on CBC Casper.  (*See id.* ¶ 40.)

Within a few months, Zamfir believed that CasperLabs was doing too little to support his research. (*See id.* ¶ 41.)  Zamfir grew concerned that CasperLabs was misappropriating his name and taking advantage of his reputation to mislead investors. (*See id.* ¶ 42.)  Zamfir sent notice to CasperLabs that he intended to terminate both the Research and License Agreements on September 11, 2019.  (*See id.* ¶ 44.)  Zamfir subsequently terminated his License Agreement in October 2019, and the Research Agreement on November 2, 2019.  (*See id.*)

Even though Zamfir no longer had any research or business relationship with CasperLabs,[2]  CasperLabs continued to associate CasperLabs' Casper products and services with Zamfir and his Casper products and services. (*See id.* ¶¶ 46–47.)  Further, although Zamfir told CasperLabs that the name "Casper" should not be used in connection with blockchain releases that were developed because of their collaboration, CasperLabs did so anyway.[3]  (*See id.* ¶¶ 50–67.)

---

[2]    CoorTech still maintains some beneficial ownership in CasperLabs "due to a lack of credible selling opportunities," but Zamfir has no control of the company or their actions.  (*See* SAC ¶ 48.)

[3]    Zamfir requested that "Casper" only be used technically to refer to his PoS consensus protocol research.  (*See* SAC ¶ 51.)  After Zamfir objected to calling the token "Casper," CasperLabs used "CLX" as a placeholder for the name of the token with ongoing discussions about a new name.  (*See id.*)  As part

On February 13, 2019, Defendant filed to register the CASPERLABS mark in its own name, (U.S. Trademark Application Serial No. 88300598).  (*See id*. ¶ 63.)  The mark was approved for publication on July 19, 2019.  (*See id*.)

During the summer of 2019, Zamfir had several discussions with CasperLabs concerning its use and registration of the CASPER mark.  (*See id.* ¶¶ 61–64.)  On July 19, 2019, CasperLabs represented that it would register the CASPER mark on Zamfir's behalf, and, accordingly, Zamfir never sought registration of the CASPER mark.  (*See id*. ¶¶ 61−62.)

On September 4, 2019, however, CasperLabs, LLC filed two trademark applications to register the CASPER mark in its own name for services related to cryptocurrency.  (*See id*. ¶ 66.)  The first of the two is U.S. Trademark Application Serial No. 88/979132 registered as Registration No. 6202402 on November 17, 2020, bearing a date of first use on September 4, 2019, and a date of first use in commerce on August 12, 2020.  (*See id*. ¶ 66.)  The second is Trademark Application Serial No. 88603814, which is still pending. (*See id*.)

CasperLabs never informed Plaintiff of its registrations of the CASPER or CASPERLABS trademarks.  (*See id*. ¶ 67.)  Even though Zamfir continued to inquire about the status of the CASPER trademark application CasperLabs represented it would file on his behalf, Zamfir did not learn that CasperLabs had registered the CASPER mark until January 25, 2021.  (*See id*.  ¶¶ 64, 68−69.)  As of the date of its Motion, CasperLabs has not assigned U.S. Trademark Registration No. 6202402 or U.S. Trademark Application Serial No. 88603814 to either Zamfir or CoorTech.  (*See id*. ¶ 70.)

On March 23, 2021, CasperLabs launched its initial coin offering ("ICO"), or token sale, of its "CSPR" coin on CoinList.  (*See id*. ¶ 81.)  The Casper Network Mainnet

---

of their rebranding strategy, during Zamfir's involvement, the protocol was called "CasperLabs Highway Protocol," and then "Casper Highway Protocol".  (*See id*. ¶ 52.)  By August 2020, however, in anticipation of its upcoming network launch and coin sale scheduled for March 23, 2021, CasperLabs began referring to its blockchain protocol and token as "Casper."  (*See id*. ¶ 53.)  On August 31, 2020, CasperLabs' website announced the network launch and token sale, referring to its offering as "[t]he Casper public network and token sale" and referring to its blockchain network simply as "Casper." (*See id*. ¶ 54.)

subsequently launched on March 31, 2021.  (*See id.*)  CasperLabs engaged in four rounds of initial coin offerings and launched its blockchain network and cryptocurrency using the Casper name for the token and blockchain.  (*See id.* ¶ 83−84.)  Zamfir is neither affiliated with nor endorses CasperLabs' blockchain network and cryptocurrency.  (*See id.*).

Zamfir alleges that CasperLabs' use of the Casper name to advertise and market its own blockchain technology products and services and to promote its blockchain network and coin are causing and will continue to cause confusion as to the source of the products and services.  (*See id.* ¶ 71.)  The confusion will lead customers to mistakenly believe CasperLabs' products and services are Zamfir's work or are otherwise associated with him or his company CoorTech.  (*See id.*)  However, CasperLabs' protocol never met Zamfir's advertised design requirements for CBC Casper and, due to the confusing use of the CASPER mark, any performance issues in the technology underlying the Casper Network are likely to be falsely associated with Zamfir's research and life's work.  (*See id.* ¶¶ 82, 84.)

CasperLabs' use of the CASPER mark also interferes with Zamfir's use of the Casper name in research and development because it requires resolving ambiguity and phrasing communications to avoid unintentionally promoting CasperLabs, making it harder for Zamfir to market the genuine products of his research.  (*See id.* ¶ 71.)  Zamfir is regularly contacted by people who are confused about his affiliation with CasperLabs' Casper-branded token sale and Mainnet launch, and people falsely assume that Zamfir's ongoing Casper research is for CasperLabs.  (*See id.* ¶ 72.)

Because of industry confusion caused by the false association, Zamfir has also had trouble retaining funding and promotion from an existing client, the Ethereum Foundation.  (*See id.* ¶¶ 79−80.)  Generally, securing funding for further research, development, and adoption of CBC Casper has become more difficult due to the alleged confusion in the marketplace.  (*See id.* ¶ 78.)

CasperLabs moved to dismiss Zamfir's original Complaint on May 10, 2021, (*see generally* ECF No. 32), following which Zamfir filed his First Amended Complaint on

June 1, 2021.  (*See generally* ECF No. 34.)  On July 15, 2021, CasperLabs moved to dismiss Zamfir's First Amended Complaint.  (ECF No. 37.)  On February 15, 2022, this Court issued an order granting in part and denying in part CasperLabs' motion to dismiss and granting Zamfir leave to amend.  ("Order," ECF No. 50.)

The Second Amended Complaint asserts the same six causes of action as Zamfir's First Amended Complaint and adds two claims for (1) Fraud by Intentional Misrepresentation under Cal. Civ. Code §§ 1709, 1710; and (2) Unlawful and Unfair Business Practices and False Advertising California Business & Professions Code § 17200.  (*Compare* ECF No. 34, with ECF No. 56.)  Presently before the Court is CasperLabs' Motion to Dismiss Zamfir's Second Amended Complaint.  (ECF No. 64.)

## LEGAL STANDARD

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)).  "A district court's dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is proper if there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" *Id*. at 1242 (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)).

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)).  "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  Id. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  In other words, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Id*. (quoting *Twombly*, 550 U.S. at 555).

/ / /

Federal "Rule [of Civil Procedure] 9(b) requires that, when fraud is alleged, 'a party must state with particularity the circumstances constituting fraud.'" *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (quoting Fed. R. Civ. P. 9(b)). "Rule 9(b) demands that the circumstances constituting the alleged fraud be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." *Id.* (alteration in original) (internal quotation mark omitted) (quoting *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001)). "Averments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged." *Id.* (internal quotation marks omitted) (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2)).

"If a complaint is dismissed for failure to state a claim, leave to amend should be granted 'unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'" *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)). "A district court does not err in denying leave to amend where the amendment would be futile." *Id.* (citing *Reddy v. Litton Indus.*, 912 F.2d 291, 296 (9th Cir. 1990), cert. denied, 502 U.S. 921 (1991)).

/ / /

/ / /

21-CV-474 TWR (AHG)

# ANALYSIS

CasperLabs moves to dismiss each of Zamfir's claims, which the Court addresses in turn.

## I.   Counts 1 and 4: False Association Under Lanham Act § 43(a) and Unfair Competition Under California Common Law

CasperLabs moves to dismiss Zamfir's claims for false association under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and unfair competition under California common law.  (*See* Mot. at 6–11.)  Section 43(a) of the Lanham Act prohibits the use of false designations of origin, false descriptions, and false representations in the advertising and sale of goods and services.  *See Smith v. Montoro*, 648 F.2d 602, 603 (9th Cir. 1981). To survive a motion to dismiss on a claim for false designation of origin under Section 43(a)(1)(A) and its corollary for unfair competition under California law, Zamfir must adequately allege the following five elements:

(1)   defendant uses a designation (any word, term, name, device, or any combination thereof) or false designation of origin;

(2)   the use was in interstate commerce;

(3)   the use was in connection with goods or services;

(4)   the designation or false designation is likely to cause confusion, mistake, or deception as to (a) the affiliation, connection, or association of defendant with another person[;] or (b) as to the origin, sponsorship, or approval of defendant's goods, services, or commercial activities by another person; and

(5)   the plaintiff has been or is likely to be damaged by these acts.

*United Tactical Sys., LLC v. Real Action Paintball, Inc.*, 143 F. Supp. 3d 982, 1015 (N.D. Cal. 2015).

In its prior Order, the Court dismissed without prejudice Zamfir's false association and unfair competition claims.  (*See* Order at 12–13.)  The Court concluded that, although Zamfir "adequately allege[d] [in his First Amended Complaint] that CasperLabs' use of the name 'Casper' ha[d] caused confusion and association with Zamfir—independent of

his work with CasperLabs," Zamfir had not provided sufficient factual allegations to support his alleged harm and, thus, had failed to meet all elements of the false association standard.  (*Id*.)  As before, CasperLabs argues that Zamfir does not meet the last two elements of the standard by failing "to establish, (1) any likelihood of confusion, or (2) any actual or likely damages because of CasperLabs' use of the Casper Name."  (*See* Mot. at 6.)  The Court finds that the "likelihood of confusion" element is adequately pled in Zamfir's Second Amended Complaint.  The Court agrees, however, with CasperLabs' claim that Zamfir has failed to sufficiently allege he suffered a cognizable harm.

### A.    False Association

CasperLabs argues that Zamfir's claims should be dismissed because: (1) Zamfir does not allege that CasperLabs' representations were false, and (2) the allegations of confusion arise from Zamfir's previous association with CasperLabs.  (*See* Mot. at 10–11.) The Court finds again, however, that Zamfir adequately alleges his false association claim.

The Second Amended Complaint provides additional facts not alleged in the First Amended Complaint regarding the alleged false representations by CasperLabs, including statements on CasperLabs' website, stating that:

- "*The consensus protocol is built on Vlad Zamfir's correct-by-construction (CBC) Casper work*."

- "Casper is an open-source Proof-of-Stake blockchain network *built off the CBC (Correct-by-Construction) Casper specification originally established by early Ethereum developers*."

- "Casper operates using a Proof-of-Stake consensus mechanism per the Highway Protocol, *which is a specification of Correct-by-Construction Casper (CBC Casper)*."

(SAC ¶ 46 (emphasis in the original).)

First, CasperLabs' argument that Zamfir has not provided facts to support false designation fails.  (*See* Mot. at 10–11.)  The statements in the Second Amended Complaint can be read to mean CasperLabs' protocol not only parallels Zamfir's CBC Casper

protocol, but also meets Zamfir's standards for the CBC Casper Protocol.  (*See* SAC ¶ 46.)  Zamfir also specifically alleges that he has "no confidence that the products of CasperLabs will meet his technical standards in PoS economics or in distributed system performance and correct-by-construction design." (*See id.* ¶ 77.)  Any assertion that Zamfir's CBC Casper is the process behind CasperLabs' protocol would be false, as Zamfir does not believe the process implemented by CasperLabs follows CBC Casper specifications.  (*See id.*)

Second, CasperLabs' argument that the confusion arises from the prior relationship with Zamfir and not the use of the mark is also unpersuasive.  (*See* Mot. at 10–11.)  Zamfir provides several tweets that suggest public confusion due to CasperLabs' use of the name "Casper" and not the prior relationship with CasperLabs.  (*See* SAC ¶ 73.)  In particular, Zamfir provides tweets stating that CasperLabs should try to "distinguish themselves and perhaps change their name[], it just confuses people" and that a consumer had seen emails from CoinList and wrote, "I am an example of how CasperLabs' marketing material easily confused investors." (*See id.*)  In response, CasperLabs points to posts provided in the Second Amended Complaint that illustrate that the confusion some individuals have experienced was based on Zamfir's prior relationship with CasperLabs and argues that if the confusion is based on their partnership rather than the use of the mark, then it is not actionable.  (*See* Reply at 3; *see also* SAC ¶ 73.)

CasperLabs cites to two cases, both previously cited in their prior motion to dismiss, to support their argument.  (*See* Mot. at 10.)  For the same reasons discussed in the Court's prior Order, (*see* ECF No. 50 at 10–13), both cases remain inapposite.  *See Varsity News Network, Inc. v. Carty Web Strategies, Inc.*, No. CV 17-2574 PSG (EX), 2018 WL 6137189 at *4 (C.D. Cal. Feb. 13, 2018) (finding plaintiff failed to allege likelihood of confusion under the Lanham Act because allegations themselves tied confusion to prior relationship and not unauthorized use of mark); *Archi's Acres, Inc. v. Whole Foods Market Serv., Inc.*, No. 19-CV-2478 JLS (MSB), 2021 WL 424286, at *4 (S.D. Cal. Feb. 8, 2021) (dismissing plaintiff's false association claim because article forming basis of claim did not mislead

consumers about plaintiffs' and defendants' association because article's information was truthful).  This case is unlike *Varsity News*, in which the plaintiff *did not* attribute the likelihood of confusion to the unauthorized use of their mark, because Zamfir specifically points to the use of the CASPER mark as the basis of confusion.  *See* 2018 WL 6137189 at *4; (*see also* SAC ¶ 71−74).  *Archi's Acres* is also distinguishable because the article at issue in that case was both truthful and reflected the current partnership between the parties, meaning there was no possibility of confusion.  *See* 2021 WL 424286, at *4−5.  Here, by contrast, Zamfir alleges that CasperLabs' website's use of the CASPER mark is misleading and does not comport with their prior agreements and communications.  (*See e.g.*, SAC ¶ 59 ("Zamfir was not willing to compromise on his refusal to allow "Casper" to be used as a name for CasperLabs' blockchain network.").)  It is clear from the Second Amended Complaint that the alleged confusion stems from the use of the mark and not the prior relationship.  Thus, CasperLabs has not provided an appropriate basis for the Court to deviate from its prior ruling.  The Court once again finds that Zamfir has adequately alleged a likelihood of confusion based on CasperLabs' use of the CASPER mark.

### B.   Damages

The Court previously granted CasperLabs' motion to dismiss Count 1 and Count 4 because Zamfir failed to allege damages.  (*See* Order at 12.)  The Court reasoned that "Plaintiff points to no specific instance in which he had difficulty seeking funding as a result of the purported affiliation with Defendant, nor does he identify any present impact on the credibility of his research in anything other than generalized terms."  (*Id.*)

In the Second Amended Complaint, Zamfir describes his damages due to the false association as: (1) having trouble seeking funding from the Ethereum Foundation and other potential investors; (2) lessening of "the marketable value of his reputation and goodwill in the industry;" and (3) being forced to let go of contractors, and thereby delay the production of promised protocols under the Casper name."  (*See* SAC ¶¶ 91–97.)  Zamfir adds two specific instances to his Second Amended Complaint where he had trouble seeking funding from the Ethereum Foundation because of industry confusion:

79.    Upon information and belief, existing clients, including the Ethereum Foundation, forewent providing additional funding to Mr. Zamfir and CoorTech because of industry confusion caused by CasperLabs.

80.    Upon information and belief, existing clients including the Ethereum Foundation forewent promoting Mr. Zamfir's Casper products and services under the Casper name by minimizing references to Casper products and services on their roadmaps and documentation under the Casper name, because of industry confusion caused by CasperLabs.

(SAC ¶¶ 79–80.)  CasperLabs argues that the Second Amended Complaint does not cure the defects in Zamfir's First Amended Complaint because the only damages alleged by Zamfir are "conclusory labels . . . [in] generalized terms."  (Mot. at 7).  The Court agrees.

The damage requirements under Section 43(a) are met when a plaintiff pleads "an injury to a commercial interest in sales or business reputation proximately caused by the defendant's [conduct]."  *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 140 (2014); *see also Jack Russell Terrier Network of N. Cal. v. Am. Kennel Club, Inc.*, 407 F.3d 1027, 1037 (9th Cir. 2005) (holding for "false association" damages "a plaintiff need only allege commercial injury based upon the deceptive use of a trademark or its equivalent").  And those allegations must be specific: "formulaic recitations" and "naked assertions" devoid of factual enhancement do not satisfy this obligation.  *See Iqbal*, 556 U.S. at 678; *Marco Bicego*, 2017 WL 2651985, at *4 (dismissing claim where "[p]laintiffs do not allege how the [challenged action] caused any lost sales or damage to their brand").

Here, Zamfir again fails to allege sufficient facts to proceed to discovery.  Plaintiff's allegations are generalized, identifying no specific instance in which he had difficulty seeking funding due to the purported association with Defendant or any present impact on the credibility of his research.  Even considering the additional allegations in the Second Amended Complaint regarding Ethereum's investments, Zamfir provides no facts as to the significance of the loss of investment or what funding the investors would have provided.  Further, Zamfir fails to allege the impact of the lessened market value or goodwill in the

/ / /

13

industry that he alleges CasperLabs' use and registration of the mark has caused.  (*See generally* SAC.)

Because Zamfir does not provide sufficient factual allegations to support his alleged harm, the Court **GRANTS** CasperLabs' Motion to Dismiss Counts 1 and 4.

## II.   Counts 2 and 3: Trademark Infringement Under 15 U.S.C. § 1125(a) and California Common Law.

Zamfir asserts trademark infringement claims under both federal and state law.  (*See* SAC ¶¶ 101–13.)  The Court previously found that Zamfir sufficiently pled his trademark infringement claims in his First Amended Complaint because he alleged that he used the CASPER mark for his consulting services before CasperLabs, thus satisfying the "use in commerce" test.  (*See* Order at 7).  The Second Amended Complaint asserts the same facts as the First Amended Complaint, and CasperLabs' arguments remain largely the same.  The Court therefore reaffirms its prior ruling and **DENIES** CasperLabs' Motion to Dismiss Counts 2 and 3.  Because a considerable amount of briefing was devoted to these claims and to provide Parties with a clear record of the Court's reasoning, however, the Court briefly addresses those arguments again.

"The Lanham Act grants trademark protection only to marks that are used to identify and to distinguish goods or services in commerce—which typically occurs when a mark is used in conjunction with the actual sale of goods or services."[4]  *Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1051 (9th Cir. 1999).  "A party claiming mark ownership typically must be the first to use it "in the sale of good or services."  *Id*. at 1051.  Mere invention of a mark does not confer ownership.  *Id*. at 1047.  Neither does mere preparation to use a mark.  *Id*. at 1052.  To confer ownership, "a party pursuing a trademark claim must meet a threshold 'use in commerce' requirement."  *Rearden LLC v. Rearden Commerce, Inc*., 683 F.3d 1190, 1203 (9th Cir. 2012).  Importantly, "evidence of actual

---

[4]   "The purpose of a trademark is to help consumers identify the source, but a mark cannot serve a source-identifying function if the public has never seen the mark and thus is not meritorious of trademark protection until it is used in public in a manner that creates an association among consumers between the mark and the mark's owner."  *Brookfield Commc'ns*, 174 F.3d at 1051.

sales, or lack thereof, is not dispositive in determining whether a party has established 'use in commerce.'"  *Id.* at 1205.

A court therefore must examine the "totality of the circumstances" to determine whether a service mark falls within "the protection of the Lanham Act."  *See Chance v. Pac-Tel Teletrac Inc.*, 242 F.3d 1151, 1159 (9th Cir. 2001).  "The [totality of circumstance] approach turns on evidence showing first, adoption, and second, [u]se in a way sufficiently public to identify or distinguish the marked goods in an appropriate segment of the public mind."  *See Rearden*, 683 F.3d at 1205.  In so doing, the court considers factors such as the "genuineness and commercial character of the activity, the determination of whether the mark was sufficiently public to identify or distinguish the marked service in an appropriate segment of the public mind as those of the holder of the mark, the scope of the non-sales activity relative to what would be a commercially reasonable attempt to market the service, the degree of ongoing activity of the holder to conduct the business using the mark, [and] the amount of business transacted."  *See Chance*, 242 F.3d at 1159.  Since "non-sales activities such as solicitation of potential customers may be taken into account as part of the 'totality of the circumstances' inquiry, the initial sale of a service may not establish "prior use of the contested mark" based on the opponent's "prior non-sales activities."  *See Rearden*, 683 F.3d at 1205–06.  "[A] state law trademark infringement claim . . . is subject to the same legal standards as their Lanham Act trademark claim."  *Id.* at 1221; *see also Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 632 (9th Cir. 2008).

As an initial matter, CasperLabs argues that Plaintiff's "burden is higher when attacking a registered mark holder like CasperLabs, which is entitled to a rebuttable presumption of ownership."  (Mot. at 12 (citing *Levy v. Adidas AG*, No. 18-6542, 2020 WL 1934977, at *3 (C.D. Cal. Mar. 24, 2020)).)  Although CasperLabs is correct that federal registration of the mark is prima facie evidence that the registrant is the owner of the mark, the non-registrant can rebut this presumption by showing that the registrant had not established valid ownership rights in the mark at the time of registration.  *See Sengoku Works Ltd. v. RMC Int'l, Ltd.*, 96 F.3d 1217, 1220 (9th Cir.), *as modified*, 97 F.3d 1460

(9th Cir. 1996).  "[I]n other words, if the non-registrant can show that he used the mark in commerce first, then the registration may be invalidated."  *Id*.

First, CasperLabs contends that Zamfir's allegations "demonstrate that his consulting services were ***about*** Casper ***but not called*** 'Casper,' dooming his trademark-cancellation and infringement claims."  (*See* Mot. at 11 (emphasis in original).)  In support of this argument, CasperLabs cites several cases standing for the proposition that services about a named product but not called by that name cannot support a service mark.  (*See id.* at 12−14.)

As the Court has already explained, however, "[w]hether the service is called 'Casper' is not the question . . . .  [T]he 'real inquiry is whether the trademark was used in connection with a sale of goods or services.'"  (*See* Order at 7 (quoting *Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672, 677 (9th Cir. 2005)).)  Zamfir did offer consulting services using the CASPER mark.  (*See* SAC ¶ 31.)  Zamfir alleges that he used the name "Casper" in connection with the "sale or advertising of consulting services," namely, to "support the implementation of the Casper CBC protocol in commercial products and services offered in the United States."  (*See id.*)  Each case provided by CasperLabs to support their argument demonstrate that a service mark must be used in commerce: (1) directly identify the specified service, and (2) "sufficiently public[ly] to identify or distinguish the marked goods in an appropriate segment of the public mind."  *See Rearden*, 683 F.3d at 1205; *see also Dep't of Parks & Rec. v. Bazaar Del Mundo Inc.*, 448 F.3d 1118, 1126 (9th Cir. 2006) (affirming denial of the plaintiff's common law trademark rights where plaintiff provided no evidence showing that it adopted and commercially used the marks "to identify or distinguish" its services "in an appropriate segment of the public mind as activities conducted by the State"); *In re Moody's Invs. Serv. Inc.*, 13 U.S.P.Q.2d 2043 (T.T.A.B. 1989) (affirming denial of applicant's registration where the mark was not associated with applicant's financial services, but rather a symbol used to designate risk in their financial services, meaning applicant failed to show that "that [the mark was] used in such a manner that it would be readily perceived as identifying [applicant's] services"); *In re Universal*

*Oil Prods. Co.*, 476 F.2d 653, 655 (C.C.P.A. 1973) (affirming denial of applicant's registration where applicant only used the marks to identify certain processes used in their services and not to identify the engineering services for which registration was sought); *In re Nicklaus Cos.*, No. SERIAL 77511461, 2010 WL 2513869, at *1 (June 4, 2010) (affirming denial of registrant's registration, where "record d[id] not show the mark sought to be registered [was used in connection with] golf course design and consulting services," but rather golf courses); *In re DSM Pharms.*, 87 U.S.P.Q.2d 1623, at *1 (2008) (affirming denial of applicant's registration where mark was used in applicant's brochure to refer only to specific software and not to service for which applicant sought registration).

The Second Amended Complaint alleges that Zamfir named his formal specification for a consensus protocol CBC Casper, which is currently known and referred to throughout the industry and consuming public as "Casper." (*See* SAC ¶ 20.) "Since at least 2015, and continuously through present day, [Zamfir] has provided blockchain technology consulting services using the Casper trademark in the United States." (*See id.* ¶ 31.) Further, Zamfir used the CASPER mark in commerce in connection with distributing downloadable Casper CBC software and specifications under opensource licensing agreements in the United States. (*See id.* ¶ 26.) Zamfir has also marketed his CBC Casper development and consulting services using the Casper trademark in connection with seminars, conferences, workshops, and lectures on blockchain research in the United States. (*See id.* ¶ 33.) This is not a case where the trademark bears "no reference to, or association with" the consulting service at issue; rather, Zamfir's use of CASPER is in direct connection to the service he is providing. *See In re DSM Pharms.*, 87 U.S.P.Q.2d, at *1. The CASPER mark is not merely incidental to Zamfir's service, but rather, the core identifier of his service. (*See* SAC ¶¶ 21−49.)

Second, CasperLabs argues that the prototypes published by Zamfir are evidence of mere preparation for using the mark rather than actual usage of the mark. (*See* Mot. at 10.) This argument is weakened by the implementation of Zamfir's protocol as a consensus mechanism in a blockchain platform named RChain, thus establishing that the protocol is

17

not a stale process, but one actually used in the marketplace.  (*See* SAC ¶¶ 31−32.)  In any event, Zamfir's prototypes—and the fact that there is no evidence of any downloads of the prototypes—are irrelevant to the Court's analysis.  (*See* Mot. 15−16; SAC ¶¶ 26−29.)  The Court finds that Zamfir used the Casper mark in commerce in the open source and blockchain communities prior to CasperLabs, sufficiently establishing "use in commerce" in the industry.

CasperLabs cites to several cases finding that the plaintiffs use of the contested mark was too minimal to justify "use of commerce."  (*See* Mot. at 15 (citing *Brookfield*, 174 F.3d at 1051, 1052; *Levy*, 2020 WL 1934977, at \*4; *Lucent Info. Mgmt., Inc. v. Lucent Techs., Inc.*, 186 F.3d 311, 317 (3d Cir. 1999); *Windows User, Inc. v. Reed Business Pub. Ltd.*, 795 F. Supp. 103, 109 (S.D.N.Y. 1992); *Future Domain Corp. v. Trantor Sys. Ltd.*, No. 93-812, 1993 WL 270522, at \*4–5 (N.D. Cal. May 3, 1993); *Ghomeshi v. StrongVolt, Inc.*, 851 F. App'x 193, 199–200 (Fed. Cir. 2021); *Nexsan Techs., Inc. v. EMC Corp.*, 260 F. Supp. 3d 68, 76 (D. Mass. 2017).  That, however, is not the case here.  Zamfir has come to be associated with the term Casper and uses the mark in his consulting services and implementations of his protocol.  (*See* SAC ¶¶ 21−49.)  Zamfir provides many examples to demonstrate that the CASPER mark was used extensively to promote and implement his protocol. (*See id.*)  Therefore, the Court **DENIES** CasperLabs' motion to dismiss Counts 2 and 3.

## III.   Counts 5 and 6: Cancellation of CasperLabs' Trademarks

Zamfir's Second Amended Complaint requests cancellation of two of CasperLabs' trademarks of the CASPER mark, U.S. Trademark Registration Nos. 6202402 and 6131157, under Section 2(d) of the Lanham Act, 15 U.S.C. § 1052(d).  (*See* SAC ¶¶ 118−31.)  Zamfir's First Amended Complaint also sought cancellation of CasperLabs' trademark registrations based on CasperLabs' use in commerce of the Casper name falsely suggesting a connection with Zamfir in violation of Section 2(a) of the Lanham Act, 15 U.S.C. § 1052(a).  (*See generally* ECF No. 34.)  Because CasperLabs' prior motion to dismiss was limited to Section 2(a), (*see generally* ECF No. 37), so was the Court's prior

Order dismissing Counts 5 and 6 of the First Amended Complaint.  (*See generally* Order.)  Here, the Court finds that Zamfir's cancellation claims are adequately pled under Section 2(d) of the Lanham Act.

Under Section 2(d) of the Lanham Act, the test for trademark registration uses the same "likelihood of confusion" standard as the test for trademark infringement.  *Tillamook Country Smoker, Inc. v. Tillamook Cty. Creamery Ass'n*, 465 F.3d 1102, 1111 (9th Cir. 2006); *see also B&B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 144 (2015).  The Court has the authority to cancel CasperLabs' trademark registrations on "'any ground that would have prevented registration in the first place . . . ,' including that there exists a 'likelihood of confusion between the mark sought to be canceled and a mark for which the party seeking cancellation can establish either prior use or prior registration.'"[5]  *Pinkette Clothing, Inc. v. Cosmetic Warriors Ltd.*, 894 F.3d 1015, 1021 (9th Cir. 2018); *see also* 15 U.S.C. § 1052(d).  Zamfir has adequately alleged that a likelihood of confusion exists, *see supra* Section I.A, and thus his trademark cancellation claims survive CasperLabs' Motion.

CasperLabs raises two additional arguments that the Court addresses briefly.  First, CasperLabs argues that Zamfir cannot allege ownership of a source-identifying trademark while simultaneously alleging that Buterin used the CASPER mark to represent his research.  (*See* Mot. at 17.)  CasperLabs, however, misquotes the Second Amended Complaint in stating that Buterin "has also used the name 'Casper' for that research."  (*See id.* (purportedly quoting SAC ¶ 16).)  In actuality, the Second Amended Complaint alleges that "the other lead researcher associated with Casper is Vitalik Buterin, founder of Ethereum."  (*See* SAC ¶ 16.)  In fact, rather than indicating that Buterin uses the Casper name to promote his services, Zamfir alleges that Buterin's protocol is separate from Zamfir's research and is marketed under the name "Ethereum 2.0," not "Casper."  (*See id.* ¶ 20.)  Second, CasperLabs argues that the alleged plan for it to register CASPER assumes

---

[5]     Petitions for cancellation are typically heard by the Trademark Trial and Appeal Board; but where, as here, an action brought in federal court involves a registered mark, the district court may order cancellation of the registration.  *See* 15 U.S.C. § 1119.

that CasperLabs owned the mark in the first place, as only an owner can register a mark and only on its own behalf. (*See* Mot. at 17.) Zamfir, however, contests CasperLabs' ownership of the mark. (*See generally* SAC.) Therefore, the Court **DENIES** CasperLabs' motion to dismiss Count 5 and 6.

## IV.   Count 7: Fraud by Intentional Misrepresentation Under California Civil Code §§ 1709 and 1710

Plaintiff alleges intentional misrepresentation based on the following two statements from a communication from Scott Walker on July 10, 2019: (1) "Varun is leading the follow up on trying to get 'Casper' trademark set up and done for CoorTech," and (2) "Casper is going to be very tough to trademark for numerous reasons." (*See* SAC ¶¶ 60–66; 132–44.) CasperLabs argues that Zamfir lacks standing and fails to plead multiple elements of a fraud claim with the particularity required by Federal Rule of Civil Procedure 9(b), namely: falsity, knowledge or intent, reliance, and damages. (*See* Mot. at 19.) The Court finds that Zamfir does not provide sufficient factual allegations to support his alleged harm and his claim therefore fails to meet Rule 9(b)'s heightened standard.

### A.   *Zamfir's Standing*

CasperLabs argues that Zamfir lacks standing because CasperLabs promised to register the "Casper" mark for CoorTech rather than for Zamfir himself. (*See* Mot. at 19.) Further, CasperLabs argues that CoorTech is a separate legal entity that is not a party to this action and Zamfir does not have standing to sue on CoorTech's behalf. (*Id*.)

However, "the mere presence of an injury to [a] corporation does not . . . negate the simultaneous presence of an individual injury." *Van Steenwyk v. Van Steenwyk*, No. 220CV02375FLAAFMX, 2021 WL 4815212, at *5 (C.D. Cal. Mar. 23, 2021) (citation omitted). For example, in *Sutter v. General Petroleum Corp.*, the California Supreme Court rejected an argument that the plaintiff lacked standing merely because his company was also injured, explaining that "[i]f the injury is one to the plaintiff as a stockholder and to him individually . . . [, such as] on a fraud affecting him directly, it is an individual action." *See* 28 Cal. 2d 525, 530 (1946). Here, as in *Sutter*, Zamfir alleges CasperLabs'

fraudulent conduct directly and individually injured him.  (*See* SAC ¶ 49.)  CasperLabs' promises of a trademark registration resulted in Zamfir not registering the CASPER mark himself, resulting in confusion in the marketplace and damage to Zamfir's personal research and development in the Blockchain ecosystem.  (*See id.* ¶¶ 49, 62, 72.)  Based on these allegations, Zamfir has standing.  (*See, e.g., id.* ¶ 49 ("There has been irreparable harm and damage to the Casper name and to Mr. Zamfir's and the broader blockchain research ecosystem due to CasperLabs' misappropriation and misuse of the Casper name."); *id.* ¶ 72 ("Mr. Zamfir's name has already been associated with CasperLabs in a way that has been harmful to his reputation . . . [where people] are given a false impression that Mr. Zamfir's research is being financed by some relationship with CasperLabs.").)

Zamfir has sufficiently alleged that his harm is independent of any harm to CoorTech; however, for the same reasons discussed above, *see supra* Section I.B, Zamfir does not provide sufficient factual allegations to support his alleged harm.

## B.  *Zamfir Fails to Plead the Elements of Fraud with Particularity*

For claims based on fraud, Rule 9(b) applies and imposes a heightened pleading standard.  *See Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 964 (9th Cir. 2018). Under Rule 9(b), a plaintiff must state with "particularity the circumstances constituting the fraud or mistake."  Fed. R. Civ. P. 9(b).  Thus, a plaintiff must state the "who, what, when, where, and how' of the misconduct charged."  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (citation omitted).  The plaintiff must also state "what is false or misleading about the purportedly fraudulent statement, and why it is false." *Davidson*, 889 F.3d at 964 (citations omitted).  Under Rule 9(b), knowledge may be "pleaded generally," such allegations are sufficient if they "set out sufficient factual matter from which a defendant's knowledge … might reasonably be inferred."  *United States ex rel. Silingo v. WellPoint, Inc.*, 904 F.3d 667, 679–80 (9th Cir. 2018); *see also Iqbal*, 556 U.S. at 686 ("Rule 9 . . . excuses a party from pleading . . . intent under an elevated pleading standard.").  As the Ninth Circuit has recognized, "[w]hen a complaint alleges with particularity the circumstances constituting fraud, as required by [Rule 9(b)], then generally

it will also have set forth facts from which an inference of scienter could be drawn[.]" *Cooper v. Pickett*, 137 F. 3d 616, 628 (9th Cir. 1997).

Here, since Plaintiff's claims are rooted in fraud, Rule 9(b) applies. CasperLabs argues that Zamfir fails to plead with the required specificity (1) that CasperLabs' statements were false when made, (2) Zamfir's reliance on those statements, and (3) resulting damages. (*See* Mot. at 20–21.) Based on the factual allegations in the Complaint, the Court agrees that Plaintiff fails sufficiently to allege resulting damages from the alleged fraud, thereby falling short of the heightened Rule 9(b) standard.

### 1.   *Misrepresentation and Knowledge of Misrepresentation*

To state a claim for intentional misrepresentation, the complaint must allege facts showing that the challenged statement was made with actual knowledge of falsity. *See Madden v. Independence Bank*, 771 F. Supp. 1506, 1509 (C.D. Cal. 1991.) At the motion to dismiss stage of litigation, under Rule 9(b), knowledge may be "pleaded generally" and such allegations suffice if they "set out sufficient factual matter from which a defendant's knowledge . . . might reasonably be inferred." *See Anita Silingo*, 904 F.3d at 679–80.

The fraud allegation reads as follows:

> On [] July 10th, 2019, following further discussion, [then Managing Director of CasperLabs] Mr. Walker represented to [Plaintiff's agent and consultant] Mr. Daliana on the same communication chain, that Defendant would try to get the Casper trademark "set up and done for CoorTech." Specifically, Mr. Walker said that "Varun", referring to Varun Gupta[,] CasperLabs' General Counsel, was leading the efforts to secure the CASPER trademark for CoorTech, Zamfir's company, although he cautioned that "Casper is going to be very tough to trademark for numerous reasons."

(SAC ¶ 61.) CasperLabs argues that Zamfir has not alleged facts suggesting that Walker knew that CasperLabs would not trademark the CASPER mark for CoorTech or that it was even possible for CasperLabs to do so. (*See* Mot. at 21.)

As to Walker's knowledge, however, Zamfir need only allege such knowledge "generally" under Rule 9(b). *See Anita Silingo*, 904 F.3d at 679–80; (*see also* SAC ¶¶ 61, 63–68, 134–38.) Here, CasperLabs affirmatively represented that they would try to register

Zamfir's mark.  (*See* SAC ¶ 61.)  On August 20, 2019, Gupta, CasperLabs' general counsel, deferred to another member of the team when asked about the status of Zamfir's trademark application, stating that "Steven was handling."  (*See id.* ¶ 64.)  Thereafter, on September 4, 2019, CasperLabs filed two trademark applications to register the CASPER mark in its own name for services related to cryptocurrency.  (*See id.* ¶ 66.)  As of the date of the Second Amended Complaint, CasperLabs had not assigned either U.S. Trademark Registration to Zamfir or CoorTech.  (*See id.* ¶ 70.)

Based on these facts, it is reasonable to assume that the general counsel for CasperLabs had knowledge of the company's trademark applications and potentially withheld this information from Zamfir when Zamfir asked about the progress of the trademark application CasperLabs represented it would be filing on his behalf. Accordingly, Zamfir has "set out sufficient factual matter from which a defendant's knowledge . . . might reasonably be inferred."[6]  *See Anita Silingo*, 904 F.3d at 679–80.

### 2.   Reliance

A fraud claim is subject to dismissal when a plaintiff fails to plead facts showing his reliance.  *See Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964, 974 (N.D. Cal. 2008); *see also Hearn v. R.J. Reynolds Tobacco Co.*, 279 F. Supp. 2d 1096, 1114–16 (D. Ariz. 2003).  "[I]f the conduct of the complaining party in the light of his own intelligence and information, or ready availability of information, was manifestly unreasonable, he will be denied recovery."  *Kahn v. Lischner*, 128 Cal. App. 2d 480, 489 (1954); *see also Soliman v. Phillip Morris, Inc*., 311 F. 3d 966, 975 (9th Cir. 2002).  However, "[e]xcept in the rare case where the undisputed facts leave no room for a reasonable difference of opinion, the question of whether a plaintiff's reliance is reasonable is a question of fact."  *All. Mortg.*

---

[6]      CasperLabs argues that the language Zamfir is referring to is only "puffery."  (*See* Mot. at 22.)  To assess whether a statement is puffery, courts look to whether "an allegedly misleading statement [is] capable of objective verification."  *See Or. Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 606 (9th Cir. 2014). For example, "puffing"—expressing an opinion rather than a knowingly false statement of fact—is not misleading.  *Id.*  This is not the case here.  The relevant statements from Gupta were not merely sharing an opinion, but rather asserting that he would try to trademark Casper on Zamfir's behalf.

*Co. v. Rothwell*, 10 Cal. 4th 1226, 1239 (1995). "Whether a party's reliance was justified may be decided as a matter of law if reasonable minds can come to only one conclusion based on the facts." *Id.* at 1239. Here, Zamfir's claims are not unreasonable.

CasperLabs argues that Zamfir does not, and cannot, allege facts establishing that he justifiably relied on CasperLabs' communications with him regarding the registration of the Casper mark. (*See* Mot. at 23.) The relevant allegation in Zamfir's Second Amended Complaint, from a communication dated July 10, 2019, reads as follows:

> Varun is leading the follow up on trying to get Casper trademark set up and done for CoorTech. He will be in touch with you[] via email so you (and of course Vlad) can see the real time updates on what they can and cannot do. (Casper is going to be very tough to trademark for numerous reasons).

(*See* SAC ¶ 61.) Zamfir alleges that he "relied upon Defendant's representation that it would register the CASPER mark on his behalf and, as a consequence of those representations, did not separately seek registration of the CASPER mark." (*See id.* ¶ 62.) Adding further support to Zamfir's reliance, CasperLabs assured Zamfir "that [it] would not use the CASPER mark to refer to [its] blockchain and/or blockchain token." (*See id.* ¶ 141.) Zamfir adequately alleges that he did not protect his intellectual property in reliance on CasperLabs' statements and assurances that it would register the Casper mark under his or CoorTech's name.

### 3. Damages

Zamfir alleges he was harmed because, in reliance of CasperLabs' misrepresentations, he "did not separately seek registration of the CASPER mark." (*See* SAC ¶ 62.) CasperLabs argues that Zamfir's fraud claim fails as he cannot plead resulting damages because: (1) the trademark assignment that Zamfir alleges CasperLabs promised him would have failed anyway as an invalid "assignment in gross;" and (2) Zamfir had no bona fide intent to use the mark in a way that could support his trademark registration or ownership, so he is in no different of a position than if CasperLabs had never made the alleged promise in the first place. (*See* Motion at 24–25); *see also* 15 U.S.C. §1051(b) (registration of mark under intent-to-use application requires bona fide intent to use); 15

U.S.C. §1060(a)(1) (registration of mark shall be assignable only with the goodwill of the business).

The Court does not find CasperLabs' arguments to be persuasive.[7]  However, as discussed above, Zamfir does not provide sufficient factual allegations to support his alleged harm from CasperLabs' alleged wrongdoing.  *See supra* Section I.B.  Zamfir therefore has not adequately alleged damages, and the Court **GRANTS** CasperLabs' Motion to Dismiss Count 7.

## V.   Count 8: Claim Under California's Unfair Competition Law, Business and Professions Code § 17200

Zamfir claims that CasperLabs violated the California's Unfair Competition Law ("UCL") by "using a false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)."  (*See* SAC ¶ 147.)  CasperLabs argues that Zamfir fails to state a UCL claim because he does not plead any particular connection to California and fails to show he suffered any injury.  (*See* Mot. at 17.)  The Court agrees with both of CasperLabs' arguments.

The UCL provides a private cause of action for injunctive relief against any person who engages in unfair competition in California.  *See* Cal. Bus. & Prof. Code § 17200.  To bring a claim under the UCL, a plaintiff must "(1) establish a loss or deprivation of money

---

[7]    Indeed, CasperLabs admits that it is possible to assign a trademark application or registration if the applicant also assigns "the underlying business and products accompanying the mark." (*See* Mot. at 24–25 (discussing 15 U.S.C. §1060(a)(1)).)  Even if an assignment of the associated goodwill was impossible, however, the claim is based on Zamfir's reliance on CasperLabs' statement that it would register or assign the trademark to Zamfir or CoorTech. (*See* SAC ¶ 61.)  The resulting damage is that Zamfir was unable to register his CASPER mark. (*See id.* ¶ 62.)  CasperLabs' argument is especially questionable because its General Counsel Varun Gupta, a member of the California bar, asserted that the trademark would be registered and transferred, and that Steven Nerayoff, another attorney, was "handling" this registration. (*See id.*)  Even if obtaining a trademark on Zamfir's or CoorTech's behalf would be invalid, it would be reasonable for Zamfir to expect that Gupta and Nerayoff would be privy to that information and would not promise a legal impossibility.  Zamfir relied on the prior promises of registration from CasperLabs' attorneys when deciding not to apply to register his mark. (*See id.* ¶ 64.)  The argument that Zamfir has "no bona fide intent to use the mark that could support his trademark registration or ownership" also fails because, as explained above, *see supra* Section II, Zamfir's allegations of "use of commerce" of the mark are sufficient at the pleading stage.

or property sufficient to qualify as injury in fact, i.e., economic injury[;] and (2) show that the economic injury was the result of, i.e., caused by, the unfair business practice or false advertising that is the gravamen of the claim." *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 322 (2011). A plaintiff must also establish that he has "personally suffered such harm." *Id*. at 323. The economic injury must be an invasion of a legally protected interest which is "concrete and particularized" and "actual or imminent," not "conjectural or hypothetical." *Id*. at 322. "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice." *Id*. (citation omitted).

### A.   UCL Standing

"California law embodies a presumption against the extraterritorial application of its statutes." *See Diamond Multimedia Sys., Inc. v. Super. Ct.*, 19 Cal. 4th 1036, 1060 n.20 (1999). "With respect to the UCL specifically, section 17200 does not support claims by non-California residents where none of the alleged misconduct or injuries occurred in California." *Churchill Vill., L.L.C. v. Gen. Elec. Co.*, 169 F. Supp. 2d 1119, 1126 (N.D. Cal. 2000), *aff'd*, 361 F.3d 566 (9th Cir. 2004.)

Zamfir, a Canadian resident, alleges "that CasperLabs' principal place of business is in California and that it "conduct[ed] business" within California. (*See* SAC ¶ 11). Nonetheless, CasperLabs argues that Zamfir has failed to allege that any injury related to this action occurred in California. (*See* Mot. at 18.) Zamfir responds that an allegation that a corporate defendant and/or its principals reside and transact business in California is sufficient to establish UCL standing when the alleged misconduct is "reasonably likely to have come from or been approved by [the defendant's] corporate headquarters in California[.]" *See, e.g.*, *In re Mattel, Inc.*, 588 F. Supp. 2d 1111, 1119 (C.D. Cal. 2008) (non-California plaintiffs had standing under the UCL when they alleged misrepresentations that were "reasonably likely to have come from or been approved by [the defendant's] corporate headquarters in California"). In *Parks v. Eastwood Insurance Services, Inc.*, for example, the plaintiff sufficiently alleged standing because defendant maintained its headquarters, and 23 of its 40 offices, in California, and its officers

"directed, authorized, ratified, and or/participated in the conduct that [gave] rise to the claims[.]" *See* 2002 WL 34370244, at *2 (C.D. Cal. July 29, 2002).

Here, Zamfir sufficiently alleges that CasperLabs' principal place of business is in California. (*See* SAC ¶¶ 7, 11.) Yet alleging CasperLabs' principal place of business is not enough. Plaintiff also must allege conduct occurring in California to establish standing under UCL. *See e.g.*, *Tidenberg v. Bidz.com, Inc.*, No. CV-08-5553-PSG-FMOX, 2009 WL 605249, at *4 (C.D. Cal. Mar. 4, 2009) (dismissing UCL cause of action because the mere presence of defendant's principal place of business in California was insufficient to meet the "significant contact" with California standard and rejecting a presumption "that any false and misleading statements emanated from California" because the defendant's principal place of business was in California). Here, Zamfir argues that "[CasperLabs] does not even attempt to argue—it could not truthfully do so—that it did not make the alleged statements, and engage in the alleged conduct, in California." (*See* Opp'n at 17.) That may be true, but Plaintiff's standing is based on the allegations in his operative pleadings. Without any allegations suggesting that Defendant's alleged wrongdoing took place in California, the Court cannot conclude Zamfir adequately alleges standing for his UCL claim.

### B.   *Damages*

To seek relief under the UCL, Zamfir must demonstrate that he "has suffered injury in fact and has lost money or property as a result of the unfair competition." *See* Cal. Bus. & Prof. Code § 17204; *see also Kwikset Corp.*, 51 Cal. 4th at 322. "The 'lost money or property' requirement therefore requires a plaintiff to demonstrate 'some form of economic injury' as a result of [its] transactions with the defendant." *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1103–04 (9th Cir. 2013) (quoting *Kwikset*, 51 Cal. 4th at 323). CasperLabs argues that Zamfir's allegations of unspecified harm to his reputation, "difficulties securing funding for further research," and reduced "promotion" of his products and services do not meet this standard. (*See* Mot. at 18−19; *see also* SAC ¶¶ 72, 78, 80.)

/ / /

Numerous courts have held that the "[d]evaluation of . . . intellectual property or intangible business assets is sufficient to meet the injury requirements under § 17200." *See Rise Basketball Skill Dev., LLC v. K Mart Corp.*, No. 16-cv-04895-WHO, 2017 WL 2775030, at *5 (N.D. Cal. June 27, 2017); s*ee also Millennium Dental Techs. Inc. v. Terry*, No. SACV180348DOCKESX, 2018 WL 5094965, at *15 (C.D. Cal. July 16, 2018) (allegations of harm in the form of "lost sales, lost profits, lost market share, and harm to the goodwill associated with [the plaintiff's] products and trademark" were sufficient to state claim under § 17200); *Storm Mfg. Grp. Inc. v. Weather Tec Corp.*, No. CV 12-10849 CAS FFMX, 2013 WL 5352698, at *7 (C.D. Cal. Sept. 23, 2013) (finding UCL standing requirement met by allegations that the defendants' misstatements caused the plaintiff "to lose customers, damage[d] plaintiff's goodwill, and diminish[ed] the value of plaintiff's products").

While Zamfir cites to a number of cases establishing that "lost sales, lost profits, lost market share, and harm to the goodwill associated with [the plaintiff's] products and trademark" are sufficient to state claim under § 17200," *see e.g. Millennium Dental Techs.*, 2018 WL 5094965, at *15, the Second Amended Complaint lacks any non-conclusory allegation that the value of the Casper's service has decreased. (*See generally* SAC.) Although "the issue here is only the threshold matter of standing . . . [and] a specific measure of the amount of [the alleged] loss is not required," some detail as to the general value of the alleged injury is still necessary to allege damages under a UCL claim. *See Hinojos*, 718 F.3d at 1105.

Zamfir has failed to properly allege UCL's statutory standing requirements, and the Court therefore **GRANTS** CasperLabs' Motion to Dismiss Count 8.

## CONCLUSION

For the reasons set forth above, the Court **GRANTS IN PART AND DENIES IN PART** CasperLabs' Motion to Dismiss. Specifically, the Court **DENIES** CasperLabs' Motion to Dismiss Zamfir's second, third, fifth, and sixth causes of action and **GRANTS WITHOUT PREJUDICE** the Motion to Dismiss as to Zamfir's first, fourth, seventh, and

eighth causes of action.  Plaintiff **MAY FILE** an amended complaint curing the above-identified deficiencies within <u>twenty-one (21) days of the electronic docketing of this Order</u>.  *Should Plaintiff decline to file a timely amended complaint, this action will proceed as to Plaintiff's surviving causes of action.*

   **IT IS SO ORDERED.**

Dated:  October 25, 2022

          Honorable Todd W. Robinson
          United States District Judge