UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VLAD ZAMFIR,<br><br>                            Plaintiff,<br>v.<br><br>CASPERLABS, LLC,<br><br>                            Defendant. | Case No.: 21-CV-474 TWR (AHG)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS THIRD AMENDED COMPLAINT**<br><br>(ECF No. 75) |

Presently before the Court is Defendant CasperLabs, LLC's Motion to Dismiss Plaintiff Vlad Zamfir's Third Amended Complaint (ECF No. 75, "Mot."). The Court has also received and reviewed Plaintiff's Opposition to (ECF No. 76, "Opp'n") and Defendant's Reply in Support of (ECF No. 77, "Reply") the Motion. On January 26, 2023, the Court held a Motion Hearing and took the matter under submission. (ECF No. 78.) After carefully considering the Parties' arguments, the relevant law, and the Third Amended Complaint (ECF No. 74, "TAC"), the Court **GRANTS IN PART AND DENIES IN PART** Defendant's Motion to Dismiss.

## BACKGROUND

The Court previously set forth the factual and procedural background of this action in detail in two prior Orders on Motions to Dismiss. (*See* ECF No. 50; ECF No. 71, "Order.") The Court provides a succinct account of that background information below.

I.     Facts

Plaintiff Vlad Zamfir is a prominent researcher in blockchain technology who currently resides in Canada. (*See* TAC ¶¶ 1, 5.) Plaintiff is known for his proof-of-stake ("PoS") protocol, which has created more secure blockchain networks and solved widely recognized mining issues in the cryptocurrency industry. (*See id.* ¶¶ 1, 6.) Plaintiff spent considerable time, effort, and money developing his PoS protocol and has benefitted financially from its creation and distribution. (*See id.* ¶¶ 6, 30.) He has also received significant media coverage for his work. (*See id.* ¶ 35.)

In March 2015, Plaintiff adopted the name "Casper" for the research and development of his PoS protocol. (*See id.* ¶ 1.) Since then, Plaintiff has continuously conducted research under the Casper name. (*See id.* ¶ 21.) In November 2017, Plaintiff developed the first version of his Casper correct-by-construction ("CBC") PoS protocol, and in December 2018, the PoS protocol was published. (*See id.* ¶ 5.) Plaintiff exclusively uses the CBC Casper and Casper names when communicating his work to the public, distributing and marketing his PoS software, and providing blockchain consulting services. (*See id.* ¶¶ 22, 26, 29–31.) Accordingly, Plaintiff is often credited as being the "face of Casper." (*See id.* ¶ 1.)

Defendant CasperLabs, LLC is a blockchain technology company engaged in the development of an open-source PoS network. (*See id.* ¶ 8.) Defendant is incorporated in Wyoming and maintains its principal place of business in San Diego, California. (*See id.* ¶ 7.) In late 2018, Defendant approached Plaintiff about adopting the CBC Casper PoS protocol and collaborating on the research and development of a new blockchain. (*See id.* ¶¶ 37–38.) In February 2019, Plaintiff, on behalf of himself and his company, Coordination Technology, Ltd. (CoorTech), entered into research and licensing agreements with Defendant. (*See id.* ¶¶ 39–40.) In the research agreement, Plaintiff agreed to advise Defendant on how to integrate Plaintiff's CBC Casper protocol into Defendant's blockchain. (*See id.* ¶ 39.) In the licensing agreement, Plaintiff gave Defendant a limited right to use Plaintiff's name and image in exchange for fundraising to support Plaintiff's

research. (*See id.* ¶ 40.) Still, Plaintiff refused to allow Defendant to use the Casper name to refer to Defendant's blockchain network. (*See id.* ¶ 59.)

In July 2019, Defendant's officers and agents—Scott Walker, Varun Gupta, Medha Parlikar, and Steven Nerayoff—told Plaintiff and his agent that they would register the Casper trademark for CoorTech on Plaintiff's behalf. (*See id.* ¶¶ 60–61.) Walker, Gupta, and Parlikar were California residents at the time they made these representations. (*See id.* ¶¶ 64–66.) In reliance on this representation, Plaintiff did not register the Casper trademark himself. (*See id.* ¶ 63.) Unbeknownst to Plaintiff, Defendant filed two trademark applications to register the Casper mark in its own name rather than Plaintiff's name. (*See id.* ¶¶ 70–71.) The first trademark application was approved in November 2020 and the second is still pending. (*See id.*)

Over time, Plaintiff grew concerned that Defendant was misappropriating his name, using his reputation to mislead investors, and violating the terms of the research and licensing agreements. (*See id.* ¶¶ 41–42.) Consequently, on September 11, 2019, Plaintiff gave Defendant notice of his intent to terminate the agreements, and both were terminated shortly thereafter. (*See id.* ¶ 44.) Since the termination of the agreements, Plaintiff has had no business relationship with Defendant. (*See id.* ¶ 47.)

Yet Defendant has continued to promote its products and services using Plaintiff's name and CBC Casper protocol. (*See id.* ¶¶ 46–47.) Over Plaintiff's objections, Defendant released a series of new blockchain products using the Casper name, including a Casper public network, Casper token, and Casper highway protocol. (*See id.* ¶¶ 51–57, 88–89.) Although Plaintiff continuously expressed concern about Defendant's ongoing use of the Casper name, Defendant never informed Plaintiff of its trademark applications. (*See id.* ¶¶ 72–73.) Plaintiff did not learn of Defendant's trademark registration until January 25, 2021. (*See id.*) As of the date of Plaintiff's Third Amended Complaint, Defendant has not assigned the trademark application or registration to Plaintiff. (*See id.* ¶ 74.)

Plaintiff claims Defendant's misrepresentations have deprived him of his exclusive property, nationwide rights in his Casper mark, and the benefits and advantages of federal

trademark registration. (*See id.* ¶¶ 75–76.) Plaintiff also contends Defendant's ownership of the Casper trademark has caused the value of Plaintiff's own Casper mark to diminish. (*See id.* ¶ 77.) Additionally, Defendant's use of the Casper name to advertise its own blockchain products has allegedly caused confusion as to Plaintiff's involvement with the products, thereby harming Plaintiff's reputation and goodwill. (*See id.* ¶¶ 78–80, 82.) For example, Defendant released its highway protocol using the Casper name after Plaintiff's departure, but the protocol suffered from performance issues and never met the design requirements that Plaintiff had previously advertised when working with Defendant on the product. (*See id.* ¶¶ 89, 91.)

Finally, Plaintiff claims that Defendant's continued use of the Casper name has caused potential investors to falsely assume that Plaintiff is still conducting research for Defendant, making it more difficult for Plaintiff to secure independent research funding and product promotion. (*See id.* ¶¶ 79, 85–87.) In sum, Plaintiff asserts that he has suffered irreparable harm because of Defendant's actions and will continue to suffer such harm absent court intervention. (*See id.* ¶¶ 49, 82.)

## II.   Procedural History

On March 17, 2021, Plaintiff filed his initial Complaint. (ECF No. 1.) Shortly thereafter, Defendant filed a Motion to Dismiss, (ECF No. 32), and Plaintiff filed a First Amended Complaint pursuant to Federal Rule of Civil Procedure 15(a)(1)(B), (ECF No. 34). Defendant again filed a Motion to Dismiss, (*see* ECF No. 37), which the Court granted in part and denied in part, (*see* ECF No. 50). Plaintiff then filed a Second Amended Complaint, (ECF No. 56, "SAC"), and Defendant filed another Motion to Dismiss, (ECF No. 64), which the Court again granted in part and denied in part, (Order). In its most recent Order, the Court dismissed four of Plaintiff's eight remaining claims and granted leave to amend. (*See generally id.*)

On November 15, 2022, Plaintiff filed his Third Amended Complaint, abandoning two of the dismissed claims and amending the other two. (*See generally* TAC.) Plaintiff now brings six claims: (1) Unfair Competition and Trademark Infringement in violation of

15 U.S.C. § 1125(a)(1)(A); (2) Trademark Infringement under California common law; (3) Cancellation of U.S. Trademark Registration No. 6202402; (4) Cancellation of U.S. Trademark Registration No. 6131157; (5) Fraud by Intentional Misrepresentation in violation of California Civil Code §§ 1709 and 1710; and (6) Unlawful and Unfair Business Practices and False Advertising under California Business and Professions Code § 17200. (*See generally id*.)  The Court previously dismissed claims five and six, (*see generally* Order), so Plaintiff's Third Amended Complaint has added new allegations to support each, (*see generally* TAC).

On November 29, 2022, Defendant filed the instant Motion to Dismiss, which seeks dismissal of Plaintiff's fifth and sixth claims pursuant to Federal Rule of Civil Procedure 12(b)(6). (*See* Mot.)  Plaintiff filed a Response in Opposition to the Motion, (*see* Opp'n), Defendant filed a Reply in support of it, (*see* Reply), and the Court held a Motion Hearing, (*see* ECF No. 78).

## LEGAL STANDARD

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)).  "A district court's dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is proper if there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" *Id.* at 1242 (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)).

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)).  "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  In other words, "[a] / / /

pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

Federal "Rule [of Civil Procedure] 9(b) requires that, when fraud is alleged, 'a party must state with particularity the circumstances constituting fraud.'" *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (quoting Fed. R. Civ. P. 9(b)). "Rule 9(b) demands that the circumstances constituting the alleged fraud be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." *Id*. (alteration in original) (internal quotation mark omitted) (quoting *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001)). "Averments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged." *Id*. (internal quotation marks omitted) (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2)).

"If a complaint is dismissed for failure to state a claim, leave to amend should be granted 'unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'" *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)). "A district court," however, "does not err in denying leave to amend where the amendment would be futile." *Id.* (citing *Reddy v. Litton Indus.*, 912 F.2d 291, 296 (9th Cir. 1990)).

## ANALYSIS

Defendant moves to dismiss two of Plaintiff's six remaining claims: (1) Fraud by Intentional Misrepresentation, Cal. Civ. Code §§ 1709–1710, and (2) Unfair Business Practices, Cal. Bus. & Prof. Code §§ 17200 *et. seq.* The Court addresses the sufficiency of each claim in turn.

### I. Count 5: Fraud by Intentional Misrepresentation Under California Civil Code §§ 1709 and 1710

Defendant moves to dismiss Plaintiff's claim for Fraud by Intentional Misrepresentation ("fraudulent misrepresentation") under California Civil Code §§ 1709 and 1710. (*See* Mot. at 7–10.) To bring a fraudulent misrepresentation claim, a plaintiff must suffer "actual monetary loss," *see All. Mortg. Co. v. Rothwell*, 10 Cal. 4th 1226, 1240 (1995), or "pecuniary damage or injury by reason of having been put in a position worse than he would have occupied had there been no fraud," *see R.D. Reeder Lathing Co. v. Cypress Ins. Co.*, 3 Cal. App. 3d 995, 999 (1970). "Deception which does not cause loss is not fraud in the legal sense." *Hill v. Wrather*, 158 Cal. App. 2d 818, 825 (1958).

The Court previously dismissed Plaintiff's fraudulent misrepresentation claim without prejudice because the Second Amended Complaint failed to "provide sufficient factual allegations to support [Plaintiff's] alleged harm." (Order at 20.) Plaintiff broadly alleged that he suffered commercial injury—which may constitute actual monetary loss—but failed to explain the financial impact or significance of the alleged harm to his commercial relationships. (*See* Order at 25; *see also id.* at 13–14.) Consequently, the Court dismissed Plaintiff's fraudulent misrepresentation claim for failure to provide the specificity required under Rule 9(b)'s heightened pleading standard. (*Id.* at 20.)

In the Third Amended Complaint, Plaintiff makes three new allegations regarding the harm caused by Defendant's fraudulent misrepresentation:

> 133. Plaintiff has been, is now and will be irreparably harmed by Defendant's aforementioned misrepresentations regarding the registration of the CASPER Mark which have deprived Plaintiff of his exclusive property and presumed nationwide rights in the CASPER Mark.

> 134.  Plaintiff has been, is now and will be irreparably harmed by Defendant's aforementioned misrepresentations regarding the registration of the CASPER Mark which have deprived him of the benefits and advantages of Federal registration.
>
> 135.  Plaintiff has been, is now and will be irreparably harmed by Defendant's aforementioned misrepresentations regarding the registration of the CASPER Mark by lessening the value of his CASPER Mark by virtue of not having a federal registration.

(TAC ¶¶ 133–135.)  In sum, Plaintiff now alleges Defendant deprived him of property in the form of the Casper trademark registration and caused his unprotected Casper mark to diminish in value.  (*See generally id*.)

Defendant moves to dismiss Plaintiff's fraudulent misrepresentation claim because the new allegations do not describe any "loss of sales, lost profits, lost market share, or harm to [] goodwill."  (Mot. at 8.)  Such information would be necessary to state a claim for monetary loss based on commercial injury, (*see* Order at 13), but here, Plaintiff's claim is now premised on a loss of property and property value, (*see* TAC ¶¶ 133–135).  Accordingly, the factual details identified by Defendant are not required.  (*See* Opp'n at 7 n.3.)  Because Plaintiff now relies on a different theory of monetary loss, the Court must assess the sufficiency of his damages allegations anew.

First, Plaintiff claims Defendant deprived him of "his exclusive property" and the "benefits and advantages" of such property ownership by registering the Casper trademark for itself.  (TAC ¶¶ 133–134.)  A trademark is indeed a "limited property right," *New Kids on the Block v. News Am. Pub., Inc.*, 971 F.2d 302, 306 (9th Cir. 1992), and plaintiffs can suffer actual monetary loss when they give up property, *see All. Mortg. Co.*, 10 Cal. 4th at 1240–41.  A plaintiff can also suffer actual monetary loss when they lose something of value.  See *Meram v. MacDonald*, No. 06CV1071-L(AJB), 2006 WL 8456253, at *4–5 (S.D. Cal. Oct. 23, 2006).  In a similar fraudulent misrepresentation case, another court in this District held that the mere loss of the plaintiff's time could satisfy the monetary loss requirement.  *See id*; *see also In re Nissan N. Am., Inc. Odometer Litig.*, 664 F. Supp. 2d

873, 889–90 (M.D. Tenn. 2009) (applying California's fraudulent misrepresentation law and finding diminished "resale values on plaintiffs' cars" sufficient). Here, Plaintiff alleges his own unprotected Casper mark lost value because of Defendant's trademark registration. (TAC ¶ 135.) By alleging a depreciation in the value of his unprotected Casper mark and a deprivation of the Casper trademark, Plaintiff has sufficiently stated a claim for monetary loss.

Defendant, however, mounts two challenges to Plaintiff's claims. First, Defendant asserts Plaintiff has not yet suffered any damage "because his alleged rights to [the Casper] mark have yet to be determined by the U.S. Patent and Trademark office." (Mot. at 9.) Although Plaintiff did not yet own the Casper trademark at the time of the fraudulent misrepresentation, (*see* TAC ¶ 63), he suffered actual monetary loss because he "had a viable opportunity which he let go," *see Anderson v. Lumbermens Mut. Cas. Co.*, 220 F. App'x 739, 741 (9th Cir. 2007); *see also Express, LLC v. Fetish Grp.*, 464 F. Supp. 2d 965, 974 (C.D. Cal. 2006) (finding the "deprivation of an opportunity to mitigate [] a loss" sufficient). Here, Plaintiff forfeited a viable opportunity to establish a valuable property right when he gave up the ability to apply for a trademark registration. The viability of such an opportunity is underscored by Defendant's own successful registration of the trademark, which demonstrates that Plaintiff likely would have secured at least one trademark had he retained the ability to apply. (*See* TAC ¶ 131.)

Next, Defendant argues Plaintiff has failed to plead "damage causation" with the necessary particularity. (Mot. at 9.) Specifically, Defendant challenges the assertion that Defendant "caused [Plaintiff] to forego an application for the 'Casper' trademark." (Mot. at 10.) Although Defendant frames this as a "damage causation" argument, it in fact relates to justifiable reliance—a different element of fraudulent misrepresentation. *See All. Mortg. Co.*, 10 Cal. 4th at 1239. Justifiable reliance exists when a defendant's misrepresentation was "an immediate cause of the plaintiff's conduct" without which the plaintiff likely would not have incurred harm. *See id.*

/ / /

Defendant forgets, however, that the Court previously analyzed the justifiable reliance element of Plaintiff's fraudulent misrepresentation claim in its Order on the Second Amended Complaint and determined that Plaintiff "adequately allege[d] that he did not protect his intellectual property in reliance on CasperLabs' statements and assurances that it would register the Casper mark under his or CoorTech's name." (*See* Order at 24.) Plaintiff adequately pled justifiable reliance in his Second Amended Complaint, and the Third Amended Complaint contains the exact same allegations. (*Compare* TAC ¶¶ 61–62, 129–131, *with* SAC ¶¶ 61, 63, 139–141.) Defendant has provided no explanation for why the Court should now revisit the justifiable reliance element, and the Court declines to do so under the pretense of a "damages causation" analysis.

Ultimately, the facts alleged by Plaintiff in the Third Amended Complaint are sufficient to state a claim for actual monetary loss. Therefore, the Court **DENIES** Defendant's Motion insofar as it seeks dismissal of Plaintiff's fraudulent misrepresentation claim under California Civil Code §§ 1709 and 1710.

## II. Count 6: Unlawful and Unfair Business Practices and False Advertising Under California Business and Professions Code § 17200

Defendant next moves to dismiss Plaintiff's claim for Unfair Business Practices under California Business and Professions Code § 17200. (*See* Mot. at 10–14.) The Court previously dismissed this Unfair Competition Law ("UCL") claim because Plaintiff failed to plead a connection to California or provide sufficient factual support for Plaintiff's alleged injury. (*See* Order at 25–28.) Plaintiff endeavored to address both deficiencies in his Third Amended Complaint, (*see* TAC), and Defendant has again challenged the UCL claim on both grounds, (*see* Mot.). The Court addresses each challenge in turn.

### A. Standing

The UCL provides a private cause of action against any person who engages in unfair competition in California. *See Churchill Vill., L.L.C. v. Gen. Elec. Co.*, 169 F. Supp. 2d 1119, 1126 (N.D. Cal. 2000) (describing Cal. Bus. & Prof. Code § 17200), *aff'd*, 361 F.3d

566 (9th Cir. 2004). "With respect to the UCL specifically, section 17200 does not support claims by non-California residents where none of the alleged misconduct or injuries occurred in California." *See id*. Because Plaintiff is a Canadian resident, he only has standing to bring a UCL claim if a portion of the alleged misconduct or injury occurred in California. (*See* TAC ¶ 5.) Although Plaintiff's Second Amended Complaint asserted that Defendant's principal place of business is in California, (SAC ¶ 7), it did not allege that the purportedly unfair business practices occurred in California, (*see generally* SAC). "Without any allegations suggesting that Defendant's alleged wrongdoing took place in California, the Court [could not] conclude [Plaintiff] adequately allege[d] standing for his UCL claim." (Order at 27.) The UCL claim was therefore dismissed without prejudice. (*Id*. at 28.)

Plaintiff's Third Amended Complaint now alleges "[o]n information and belief, CasperLabs' conduct and false statements . . . occurred in California, and CasperLabs' officers and agents residing within California ratified and participated in CasperLabs' conduct . . . ." (TAC ¶ 139.) Specifically, Plaintiff claims that CasperLabs employees Walker, Gupta, and Parlikar resided in of Irvine, Dublin, and San Diego, respectively, "at the time [they] made the false representations to Plaintiff on behalf of Defendant." (*See id*. ¶¶ 64–66.) A plaintiff need only allege that the conduct constituting unfair competition was "reasonably likely to have come from or been approved by [the defendant's] corporate headquarters in California." *See, e.g., In re Mattel, Inc*., 588 F. Supp. 2d 1111, 1119 (C.D. Cal. 2008). Based on Plaintiff's allegations, it is reasonably likely that the alleged fraudulent misrepresentation occurred, at least in part, in California.

Yet, Plaintiff's UCL claim is not premised on acts of fraudulent misrepresentation, as Defendant correctly points out. (Mot. at 13.) Rather, Plaintiff's UCL claim explicitly alleges, "[Defendant's] conduct constitutes unlawful and unfair business acts or practices in that [Defendant] has engaged in unfair competition *under Section 43(a) of the Lanham Act*, 15 U.S.C. § 1125(a)." (TAC ¶ 138 (emphasis added).) Nowhere under the UCL claim does Plaintiff allege that Defendant's conduct constitutes unlawful or unfair business acts

in that Defendant engaged in fraudulent misrepresentation under California Civil Code §§ 1709 and 1710. (*See generally id.* ¶¶ 136–141.) Therefore, Plaintiff's allegation that the fraudulent misrepresentation occurred in California is irrelevant to his UCL claim as currently pled.

Because Plaintiff's UCL claim is solely premised on Defendant's alleged violation of Section 43(a) of the Lanham Act, the Court must determine whether the conduct undergirding that claim is reasonably likely to have occurred in California. In its prior Order, the Court dismissed Plaintiff's false association claim under Section 43(a) of the Lanham Act, (Order at 9–14), but found Plaintiff's trademark infringement claim adequately pled under the same Act, (*id.* at 14–18). Plaintiff did not reallege the false association claim in his Third Amended Complaint. (*See generally* TAC.) Thus, Plaintiff's trademark infringement claim is the only surviving Lanham Act claim in the Third Amended Complaint, (*see id.* ¶¶ 93–100)—the adequacy of which Defendant does not challenge, (*see generally* Mot.). Accordingly, Plaintiff must allege that the acts constituting federal trademark infringement occurred at least in part in California.

Plaintiff asserts that "Defendant's use in commerce of the Casper name . . . in connection with similar goods and services . . . constitute[s] unfair competition and trademark infringement in violation of Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A)." (TAC ¶¶ 95–96.) Yet nowhere in Plaintiff's Lanham Act claim does he allege that Defendant used the Casper name in commerce *in California*. (*See id.* ¶¶ 93–100.) The same is true of Plaintiff's UCL claim, which alleges that the fraudulent misrepresentation occurred in California but says nothing of the alleged trademark infringement. (*See id.* ¶ 139.) Although Plaintiff's UCL claim broadly alleges that "CasperLabs' conduct . . . occurred in California," this factual allegation is not sufficiently specific to support the assumption that the trademark infringement occurred in California. For the foregoing reasons, Plaintiff has failed to adequately allege that the conduct constituting unfair competition occurred in California.

/ / /

**B. Damages**

In order to bring a UCL claim, a plaintiff must have "suffered injury in fact and ha[ve] lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204; *see also Kwikset Corp. v. Superior Ct. of Orange Cnty.*, 51 Cal. 4th 310, 322 (2011). "The plain import of this is that a plaintiff [] must demonstrate some form of economic injury." *Kwikset Corp.*, 51 Cal. 4th at 323. This injury requirement is more restrictive than the federal injury in fact requirement because it encompasses fewer types of injuries, but it is not intended to be quantitatively more difficult to satisfy.[1] *Id.* at 324.

In the Second Amended Complaint, Plaintiff broadly alleged that he had been "irreparably injured and damaged" by Defendant's unfair competition and would in the future "suffer further harm to [his] CASPER name, and associated reputation, and goodwill." (*See* SAC ¶ 147.) Because UCL claims require a loss of money or property, the Court found "some detail as to the general value of the alleged injury [was] still necessary." (Order at 28.) Plaintiff's allegation that his name, reputation, and goodwill were harmed did not, without more, support the assumption that Plaintiff lost money or property. (*See id.*)

According to Defendant, Plaintiff's UCL claim should again be dismissed because the Third Amended Complaint "did not amend or supplement the damages allegations." (*See* Mot. at 11; *see also id.* at 9.) Defendant is correct that the section of Plaintiff's Third Amended Complaint that discusses his UCL claim contains no new information about his alleged injury. (*Compare* SAC ¶¶ 145–48, *with* TAC ¶¶ 136–141.) Plaintiff has, however, supplemented the injury allegations in the general Facts Section of the Third Amended Complaint, (TAC ¶¶ 75–77), which "Plaintiff repeats and re-alleges" under his UCL

///

---

[1] In *Kwikset*, the court identified various types of injuries that would not satisfy the UCL's economic injury requirement, including recreational, aesthetic, and environmental harms. *See Kwikset Corp.*, 51 Cal. 4th at 324 n.6.

claim, (*id.* ¶ 136). The Court will therefore consider these new allegations as part of the UCL claim.

Plaintiff makes three new allegations regarding his purported injury:

> 75. CasperLabs' misrepresentations regarding the trademark registration of the CASPER Mark have deprived Mr. Zamfir of his exclusive property and presumed nationwide rights in his CASPER Mark, thereby damaging Mr. Zamfir.
>
> 76. CasperLabs' misrepresentations regarding the trademark registration of the CASPER Mark have damaged Mr. Zamfir by depriving him of the benefits and advantages of Federal trademark registration.
>
> 77. CasperLabs' misrepresentations regarding the trademark registration of the CASPER Mark have damaged Mr. Zamfir by lessening the value of his CASPER Mark by virtue of not having a Federal trademark registration.

(*id.* ¶¶ 75–77.) Notably, each alleged injury was purportedly caused by Defendant's "misrepresentations regarding the trademark registration." (*Id.*) These alleged misrepresentations form the basis for Plaintiff's fraudulent misrepresentation claim. (*See id.* ¶¶ 119–132.) Yet, as discussed in Section II.A, Plaintiff has explicitly and exclusively premised his UCL claim on Defendant's alleged acts of trademark infringement. (*See id.* ¶ 138 ("CasperLabs has engaged in unfair competition under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).").) Thus, any harm caused by Defendant's fraudulent misrepresentation is irrelevant to Plaintiff's UCL claim as currently pled. Because Plaintiff premises his UCL claim on trademark infringement alone, he must allege that Defendant's use of the Casper Mark in commerce caused a loss of money or property. He has not done so. (*See generally* TAC.)

Even if the UCL claim had been premised on fraudulent misrepresentation rather than trademark infringement, Defendant argues Plaintiff's damages allegations would still be insufficient. (*See* Mot. at 11–12.) The Court disagrees. "There are innumerable ways in which economic injury from unfair competition may be shown. A plaintiff may (1) surrender in a transaction more, or acquire in a transaction less, than he or she otherwise

would have; (2) have a present or future property interest diminished; (3) be deprived of money or property to which he or she has a cognizable claim; or (4) be required to enter into a transaction, costing money or property, that would otherwise have been unnecessary." *Kwikset Corp.*, 51 Cal. 4th at 323; *see also Ehret v. Uber Techs., Inc.*, 68 F. Supp. 3d 1121, 1132–33 (N.D. Cal. 2014). "[L]oss in value[] or loss of usefulness" also constitutes economic injury. *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., & Prod. Liab. Litig.*, 754 F. Supp. 2d 1145, 1169 (C.D. Cal. 2010). And a mere "identifiable trifle" of injury is sufficient. *Kwikset Corp.*, 51 Cal. 4th at 324–25 (quoting *Danvers Motor Co. v. Ford Motor Co.*, 432 F.3d 286, 294 (3d Cir. 2005)).

Here, Plaintiff asserts that Defendant's fraudulent misrepresentation caused Plaintiff's Casper mark to lose value. (*See* TAC ¶ 77.) While Plaintiff does not approximate how much the value of his mark diminished, "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice." *Kwikset Corp.*, 51 Cal. 4th at 322 (citation omitted). Plaintiff also alleges Defendant "deprived [him] of his exclusive property" by taking the Casper trademark registration. (*See* TAC ¶ 75; *see also* Opp'n at 19.) The deprivation of a future property interest or property to which a plaintiff has a cognizable claim can constitute economic injury. *See Kwikset Corp.*, 51 Cal. 4th at 323. Consequently, if Plaintiff's UCL claim had been premised on acts of fraudulent misrepresentation, the harm alleged by Plaintiff would satisfy the UCL's economic injury requirement.

Yet, as currently pled, Plaintiff's UCL claim fails for two reasons: (1) it is based on trademark infringement, not fraudulent misrepresentation and (2) it does not allege that the trademark infringement occurred in California or caused economic injury. Therefore, the Court **GRANTS** Defendant's Motion to Dismiss Plaintiff's Unfair Competition claim under California Business and Professions Code § 17200.

### III. Leave to Amend

Federal Rule of Civil Procedure 15(a)(2) provides that "[t]he court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). Still, a court may

deny leave to amend due to "repeated failure to cure deficiencies," "undue delay," "undue prejudice to the opposing party," or "futility." *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)); *see also DeSoto*, 957 F.2d at 658. The Court previously dismissed Plaintiff's First and Second Amended Complaints in part and granted leave to amend. (*See* ECF Nos. 50, 71.) The Court now grants Plaintiff leave to amend again; however, given Plaintiff's prior opportunities to amend, the Court cautions Plaintiff that further failure to cure the deficiencies identified by the Court may result in dismissal of Plaintiff's claims without leave to amend.

## CONCLUSION

In light of the foregoing, the Court **GRANTS IN PART AND DENIES IN PART** Defendant's Motion to Dismiss the Third Amended Complaint (ECF No. 75). Specifically, the Court **DENIES** Defendant's Motion to Dismiss Plaintiff's claim for Fraud by Intentional Misrepresentation under California Civil Code §§ 1709 and 1710 and **GRANTS WITHOUT PREJUDICE** the Motion to Dismiss Plaintiff's Unlawful and Unfair Business Practices claim under California Business and Professions Code § 17200. Plaintiff **MAY FILE** an amended complaint curing the above-identified deficiencies within <u>twenty-one (21) days of the electronic docketing of this Order.</u> *Should Plaintiff decline to timely file an amended complaint, this action will proceed as to Plaintiff's surviving causes of action.*

**IT IS SO ORDERED.**

Dated: March 8, 2023

Honorable Todd W. Robinson
United States District Judge